62-TR-CV-16-5

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

STATE OF MINNESOTA        DISTRICT COURT

COUNTY OF RAMSEY        SECOND JUDICIAL DISTRICT

In the Matter of the National Collegiate
Student Loan Trusts 2003-1, 2004-1,
2004-2, 2005-1, 2005-2 and 2005-3.

Case Type: Other

File No. **62-TR-CV-16-5**

## PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUSTS PURSUANT TO MINN. STAT. § 501C.0201

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

1. Petitioner U.S. Bank National Association ("U.S. Bank") files this petition (the "Petition") solely in its capacity as indenture trustee (the "Indenture Trustee") acting for the benefit of the holders of notes issued through certain securitization trusts (the "Indenture Trusts") in connection with the following Delaware Statutory Trusts: National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2005-3 (the "Issuers").

2. The Indenture Trustee seeks the Court's instruction regarding VCG Securities LLC's ("VCG") attempt to appoint Odyssey Education Resources LLC ("Odyssey") as a servicer or special servicer for each Issuer under a December 30, 2014 servicing agreement (the "Odyssey Agreement").[1] VCG holds all, or the majority, of the beneficial interest in each Issuer and is attempting to act through the owner trustee to (1) appoint Odyssey as servicer or special servicer and (2) direct

---
[1] A true and correct copy of the Odyssey Agreement is attached as Exhibit 1.

1

approximately $1.46 million in indenture trust funds to Odyssey.

3. The Indenture Trustee's rights and responsibilities are contained in an indenture entered into with each Issuer (the "Indentures"). Under the Indentures, the Indenture Trustee maintains certain trust accounts that hold funds for payments to Noteholders and other parties including servicers. In this case, the Indenture Trustee has been instructed to release trust funds to pay numerous invoices from Odyssey, but is concerned that payment of such funds may violate the terms of the Indentures and harm the Noteholders.

4. Among the Indenture Trustee's concerns is the fact that Odyssey does not appear to have actually performed any services to benefit the Noteholders. Additionally, Odyssey's appointment appears to alter the current servicing arrangements in a way that requires, at the very least, Rating Agency Confirmation and Noteholder consent. Lastly, the Odyssey Agreement grants Odyssey the power to purchase trust assets at below-market value, which creates a potential for self-dealing.

5. The Indenture Trustee seeks the Court's instruction on three issues. First, the Indenture Trustee seeks instruction regarding whether, under the Governing Agreements,[2] Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding, such that the Indenture Trustee should release funds necessary to compensate Odyssey for any future services performed.

6. Second, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding how to resolve certain conflicts between the Odyssey Agreement and the Governing Agreements.

---

[2] The "Governing Agreements" include, for each Issuer respectively, the Trust Agreement, Indenture, the Servicing Agreement, the Administration Agreement and the Special Servicing Agreement.

7. Third, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding whether to release the funds necessary to pay Odyssey's outstanding invoices, although Odyssey has not provided the Administrator or Indenture Trustee any evidence that it has performed any services for the Issuers, and the Indenture Trustee has not received any funds for forwarding to Noteholders generated by Odyssey's alleged servicing activities.

## Jurisdiction and Venue

8. The Indenture Trustee is a national banking association and has its principal corporate trust office in St. Paul, Minnesota. This Court has jurisdiction *in rem* over this Petition under Minn. Stat. § 501C.0201 because the Indenture Trusts' assets are administered by and through the Indenture Trustee's St. Paul corporate trust office.

9. This petition is properly venued in this Court pursuant to Minn. Stat. § 501C.0207(2)(ii).

## Issuance of Student Loan-Backed Notes

10. Each Issuer is a Delaware Statutory Trust for which Wilmington Trust Company acts as the current trustee (the "Owner Trustee").

11. The Issuers were created to facilitate the issuance and sale of notes (the "Notes") backed by private student loans (the "Loans") to investors (the "Noteholders"). To facilitate this process, each Issuer pledged its interest in the Loans to the Indenture Trustee under an Indenture.[3] The Notes entitle the Noteholders to a portion of the cash flows generated by repayment of the Loans.

12. Each Issuer also retained an interest in any residual cashflow generated

---

[3] A true and correct copy of the Indenture relating to National Collegiate Student Loan Trust 2005-3 is attached as Exhibit 2. The terms of the 2005-3 Indenture relevant to this Petition are substantially similar to those of the other Indentures.

3

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

by the Loans after the Notes are paid in full.

### Additional Relevant Parties

13. In addition to the Owner Trustee, the operations of each Issuer and Indenture Trust are carried out by numerous parties including the Indenture Trustee, Servicers, a Special Servicer, and an Administrator.

14. U.S. Bank is the Indenture Trustee of, and is responsible for administering, each Indenture Trust. This includes holding deposits received from the Servicers or Special Servicer, making distributions to Noteholders in accordance with reports received from the Administrator, and making reports or other information received from various parties available to Noteholders.

15. The Pennsylvania Higher Education Assistance Agency ("PHEAA") acts as the primary Servicer for each Issuer. Each Servicer collects principal and interest payments on the Loans from the borrowers and remits those payments to the Indenture Trustee for distribution to Noteholders.

16. First Marblehead Education Resources, Inc. ("First Marblehead") was the original Special Servicer and U.S. Bank was the back-up Special Servicer for each Issuer under the Special Servicing Agreement dated March 1, 2009 (the "Special Servicing Agreement").[4] When First Marblehead later resigned, U.S. Bank succeeded First Marblehead as Special Servicer. Under the Special Servicing Agreement, the Special Servicer provides certain services for Loans that are more than 30 days delinquent. U.S. Bank later contracted with Transworld Systems Inc. ("TSI") to act as Sub-Servicer and with Turnstile Capital Management, LLC ("TCM") to act as Special Sub-Servicer for each Issuer.

17. GSS Data Services Inc. ("GSSDS") acts as the Administrator for each Issuer (the "Administrator") under an Administration Agreement (collectively, the "Administration Agreements").[5] The Administrator performs certain duties under

---

[4] A true and correct copy of the Special Servicing Agreement is attached as Exhibit 3.
[5] A true and correct copy of the Administration Agreement relating to National Collegiate Student Loan

4

the Governing Agreements including directing payment of expenses of the Issuers and creating monthly reports to Noteholders.

18.     VCG holds all, or the majority, of the beneficial interest in each Issuer. As the Issuers' owner, VCG has instructed the Owner Trustee to take certain actions with respect to Odyssey and the Odyssey Agreement. Upon information and belief, VCG owns, controls, or is otherwise affiliated with Odyssey.

### The Odyssey Agreement

19.     On December 30, 2014, VCG directed the Owner Trustee to enter into the Odyssey Agreement, which purports to appoint Odyssey as a "Servicer" for each Issuer. Before this, neither the Administrator nor the Indenture Trustee was involved in or aware of the negotiation or execution of the Odyssey Agreement.

20.     While the Odyssey Agreement purports to appoint Odyssey as a "Servicer," the Odyssey Agreement allows Odyssey to perform certain collection and enforcement services with respect to Loans that are more than 30 days delinquent. The Special Servicing Agreement also provides for U.S. Bank as the Special Servicer to perform similar services with respect to Loans that are more than 30 days delinquent. As a result, it is unclear whether the Odyssey Agreement appoints Odyssey as a Servicer or replacement Special Servicer. This distinction is significant because the procedures for appointing a Servicer differ from those for appointing a replacement Special Servicer.

21.     A Servicer cannot be properly appointed unless 10 days' prior notice of the appointment is provided to the Rating Agencies and, during the 10 days, none of the Rating Agencies notify the Administrator or the Indenture Trustee in writing that the appointment will result in a reduction or withdrawal of the Notes' current rating.[6]

---

Trust 2005-3 is attached as Exhibit 4. The terms of the 2005-3 Administration Agreement relevant to this Petition are substantially similar to those of the other Administration Agreements.

[6] See, e.g., Ex. 2 at A-20, A-23 (defining "Rating Agency Condition" and "Servicer"). Additionally, to the extent the Odyssey Agreement would increase the amount of servicing fees being paid, the Indentures require that the Rating Agencies be given 10 days' prior notice and, during the 10 days, none of the

5

22. A replacement Special Servicer cannot be properly appointed without written confirmation from each Rating Agency (other than Fitch, Inc.) that the appointment will not result in a reduction or withdrawal of the Notes' current rating.[7] Here, to the extent Odyssey is able to service Loans pursuant to the Odyssey Agreement, it will effectively replace U.S. Bank as Special Servicer as to such Loans.[8]

23. On February 4, 2015, the Administrator received a letter from VCG requesting that the Administrator acknowledge the Odyssey Agreement.[9] This letter stated that "the Rating Agency Condition has been satisfied." This letter, however, did not attach or describe the purported notice and did not attach or describe any confirmation from the Rating Agencies that the appointment would not result in a rating reduction or withdrawal. Neither the Administrator nor the Indenture Trustee was involved in or aware of the purported satisfaction of the Rating Agency Conditions with respect to the Odyssey Agreement. Thus, it is unclear if the Rating Agency Conditions for appointment of Odyssey as a Servicer have been satisfied, much less the more stringent conditions for replacement of a Special Servicer.

24. The Odyssey Agreement also materially alters how Loans may be released from the Indentures. The Odyssey Agreement permits Odyssey to purchase defaulted Loans at below-market prices, which is not allowed by any of the other servicing agreements.

25. Another potential defect in Odyssey's appointment as Servicer is that Odyssey never obtained Noteholder consent of the appointment. To the extent that Odyssey's appointment would waive, amend, modify, supplement, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder

---

Rating Agencies notify the Administrator or the Indenture Trustee in writing that such action will result in a reduction or withdrawal of the Notes' current rating. *See id.* at A-23 (defining "Servicing Fees").
[7] *See, e.g.,* Ex. 3 at § 6(E).
[8] Additionally, a failure by the Issuers to send Loans that are more than 30 days delinquent to U.S. Bank as Special Servicer would violate the Special Servicing Agreement.
[9] A true and correct copy of this letter is attached as Exhibit 5.

6

consent.[10] Here, because all Loans are currently being serviced by the current Servicer and Special Servicer, it is unclear what Loans would be available for Odyssey to service. To the extent Odyssey's servicing would amend, modify, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder consent.

26. On February 10, 2015, the Administrator responded to VCG's letter by informing VCG that Odyssey was not an approved servicer because various preconditions to its appointment had not been fulfilled.

27. On March 23, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator stating that it was forbidden from having any communication regarding Odyssey with PHEAA or any Rating Agency. The letter also stated that the Administrator should not take any action that would cause or allow any defaulted Loan to be transferred to the Special Servicer, and that it should not hire any entity to service defaulted Loans.

28. On October 1, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator instructing it to "cease and desist" with giving PHEAA any direction with respect to the servicing of defaulted Loans.

### The Odyssey Invoices

29. On December 8, 2015 the Issuers'/VCG's counsel, Mr. Lance Gotthoffer, emailed the Administrator invoices that sought "Reimbursement of Expenses" purportedly incurred by Odyssey for each Issuer during each month of 2015.[11]

30. On December 10, 2015, the Administrator responded to Mr. Gotthoffer's email by requesting a detailed description of the expenses for which Odyssey was seeking reimbursement.[12]

---

[10] *See, e.g.*, Ex. 2 at § 3.07(c) ("Issuer shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders"); *see also id.* at A-4 (defining "Basic Documents" to include "Servicing Agreements").
[11] True and correct copies of this email and all of the 2015 invoices are attached hereto as Exhibit 6.
[12] A true and correct copy of this email is attached as Exhibit 7.

7

31. Mr. Gotthoffer responded on December 11, 2015 that further detail was not required under the Odyssey Agreement, and that none would be provided unless the Administrator could direct him "to a provision in [the Odyssey Agreement] requiring Odyssey to provide the detailed explanation of expenses requested in [the Administrator's] email[.]"[13]

32. The Administrator's outside counsel, Kutak Rock LLP, wrote Mr. Gotthoffer on December 16, 2015, stating that Odyssey had not been validly appointed as Servicer and, therefore, Odyssey's invoices would not be paid.

33. In addition to Odyssey's 2015 invoices, Odyssey has subsequently sent the Administrator invoices for January and February of 2016.[14] The Odyssey invoices received to date total $1.46 million.[15]

34. No documentation or backup for the expenses allegedly incurred by Odyssey has been provided to the Administrator as of the date this Petition was filed.

35. As of the filing of this Petition, the Indenture Trustee has not received any proceeds from Odyssey's purported servicing of the Loans. If Odyssey serviced any Loans during 2015 or later, it should have remitted monies collected to the Indenture Trustee for disbursement to the Noteholders.

### Threatened Litigation

36. On December 23, 2015, Mr. Gotthoffer sent a draft complaint to Kutak Rock LLP, counsel to the Administrator, naming the Administrator and the Indenture Trustee as defendants. Mr. Gotthoffer stated that the complaint would be filed unless the Odyssey invoices were paid by December 28, 2015.

37. The draft complaint sought to compel the Indenture Trustee and

---

[13] *See id.*
[14] A true and correct copy of the January 2016 invoices are attached hereto as Exhibit 8. The February 2016 invoices were received too late to be included in the Monthly Issuer Order for the February distribution date.
[15] The invoices attached as Exhibits 6 and 8 total $1.35 million through January, 2016. With the addition of the February, 2016 invoices, Odyssey's outstanding invoices to date total $1.46 million.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

Administrator to pay Odyssey's outstanding invoices. The draft complaint also asserted a claim against the Administrator seeking indemnification under the Administration Agreement. Lastly, the draft complaint asserted a tortious interference claim against the Indenture Trustee for "tortiously interfer[ing] with, and caus[ing] [the Administrator] to breach, the Administration Agreement."

### Orders to Pay Odyssey Invoices

38. On January 14, 2016, VCG sent an "Officers Certificate" to the Indenture Trustee attesting that the all conditions precedent for the execution of the Odyssey Agreement had been satisfied and requesting that the Indenture Trustee acknowledge the Odyssey Agreement.[16]

39. Also on January 14, 2016, Mr. Gothoffer's law firm, Chaitman LLP, sent an "Opinion of Counsel" to the Indenture Trustee in which Chaitman LLP opined that "the execution of the Odyssey Agreement is authorized and/or permitted by the applicable Indentures and that all conditions precedent to such execution have been complied with."[17]

40. On January 20, 2016, the Owner Trustee, at the direction of the Issuers/VCG, sent an "Issuer Order" to the Administrator that instructed the Administrator to (1) acknowledge the Odyssey Agreement, (2) cause the payment of the Odyssey invoices that had been submitted, (3) cause the payment of all future Odyssey invoices, and (4) prepare and execute all additional documents and take all action necessary to cause the payment of all current and future Odyssey invoices.[18] Under Section 1(c) of the Administration Agreements, the Administrator is not obligated to take any action with respect to a non-ministerial action unless the Administrator shall have received instructions from the Indenture Trustee under the Indenture or from the Owner Trustee or the owners of the respective Issuer under the

---

[16] A true and correct copy of this letter is attached as Exhibit 9.
[17] *See id.* at Exhibit C.
[18] A true and correct copy of this Issuer Order is attached as Exhibit 10.

Trust Agreement.

41. Based solely upon the "Issuer Order" instruction to cause the payment of the Odyssey invoices, on February 17, 2016, the Administrator sent the Indenture Trustee a Monthly Issuer Orders ("MIOs") to release the funds necessary to pay the Odyssey invoices.[19] In a letter accompanying the MIO, the Administrator also expressed its concerns as to whether Odyssey was validly appointed as a Servicer or a replacement Special Servicer under the Indentures or the Special Servicing Agreement and that the Odyssey invoices lack sufficient authorization, detail, and backup to warrant payment. The Administrator stated that, "[a]bsent the Issuer Order, the Administrator would not have submitted the Invoices for payment[.]"

### Request for Relief

**WHEREFORE**, pursuant to the provisions of Minn. Stat. §§ 501C.0201, 501C.0202 and all other applicable law, the Indenture Trustee respectfully requests that this Court:

    a. Make and enter herein an Order designating the time and place when the respective parties in interest may be heard upon the matters set forth in this Petition, and that notice of the hearing be served in the manner specified in the accompanying Order and as provided by Minn. Stat. § 501C.0203 subdivision 1.

    b. Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501C.0305.

    c. At such designated time and place make a further Order as follows:

        i. Determining whether, under the Governing Agreements, Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding;

---

[19] A true and correct copy of the MIO and accompanying letter (absent attachments) are attached as Exhibit 11.

    ii. If Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, resolving the conflicts and inconsistencies that arise between the Governing Agreements and the Odyssey Agreement.

    iii. Determining that the Administrator should not provide for payment of the Odyssey invoices in its Monthly Issuer Orders submitted as of the date this Petition was filed;

    iv. Determining that the Administrator should not provide for the payment of any Odyssey invoices submitted in the future unless the Odyssey Agreement is determined to be valid and binding under the Governing Agreements and Odyssey provides to the Administrator invoices that contain documented, verifiable descriptions of the work performed by Odyssey and funds are received by the relevant trust;

    v. Determining that the Indenture Trustee should not pay, or cause the release of, any funds to Odyssey pursuant to the Odyssey Agreement or any Monthly Issuer Order;

    vi. Determining that the Indenture Trustee has acted without willful misconduct, negligence or bad faith in ascertaining whether the requirements under the applicable Indentures have been satisfied;

    vii. Directing that the Indenture Trustee and the Issuers shall not be subject to the continuing supervision of the Court for the purposes of Minn. Stat. § 501C.0205 or General Rule of Practice 417.02; and

    viii. Granting such other and further relief as the Court may deem

lawful, just and proper.

DATED: February 18, 2016

By: /s/ Thomas F. Berndt
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*