

THIS NOTICE CONTAINS IMPORTANT INFORMATION THAT MAY BE OF INTEREST TO THE BENEFICIAL OWNERS OF THE SUBJECT SECURITIES. IF APPLICABLE, ALL DEPOSITORIES, CUSTODIANS AND OTHER INTERMEDIARIES RECEIVING THIS NOTICE ARE REQUESTED TO EXPEDITE RE-TRANSMITTAL TO SUCH BENEFICIAL OWNERS IN A TIMELY MANNER.

Dated: February 24, 2016

## NOTICE OF TRUST INSTRUCTION COURT HEARING

**To the Holders of the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3 (the "Trusts") and the Additional Addressees Identified on Schedule A Hereto**

### CUSIPS[1]

63543PAG1 63543PAJ5 63543PAK2 63543PAM8 63543PAN6
63543PAP1 63543PAQ9 63543PAR7 63543PAS5 63543PAT3
63543PAX4 63543PAY2 63543PBC9 63543PAZ9 63543PBA3
63543PBB1 63543PBG0 63543PBM7 63543PBN5 63543PBP0
63543PBK1 63543PBL9 63543PBT2 63543PBU9 63543PBY1
63543PBV7 63543PBW5 63543PBX3 63543TAD0 63543TAE8
63543TAF5 63543TAG3 63543TAH1 63543TAJ7 63543TAK4

This notice is given to you by U.S. Bank National Association, not in its individual capacity, but solely in its capacity as indenture trustee (the "Indenture Trustee") under certain Indentures related to the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3 (the "Indentures").[2] Capitalized terms used but not defined herein shall have the meanings assigned to such terms in the Indentures.

The purpose of this notice is to inform you that on February 18, 2016, the Indenture Trustee filed a trust instruction petition (the "Petition") in the District Court of Ramsey County, Minnesota (the "Court") (Case No. 62-TR-CV-16-5). In the Petition, the Indenture Trustee has requested instructions from the Court concerning the validity of Odyssey Education Resources LLC's ("Odyssey") purported

---

[1] Any CUSIP numbers appearing in this Notice or in its exhibits, schedules or attachments have been included solely for convenience. The Indenture Trustee assumes no responsibility for the selection or use of such numbers and makes no representations as to the correctness of the CUSIP numbers appearing herein.

[2] The "Indentures" are those (i) dated December 1, 2003 by and between the National Collegiate Student Loan Trust 2003-1 and U.S. Bank National Association, as Indenture Trustee; (ii) dated June 1, 2004 by and between the National Collegiate Student Loan Trust 2004-1 and U.S. Bank National Association, as Indenture Trustee; (iii) dated October 1, 2004 by and between the National Collegiate Student Loan Trust 2004-2 and U.S. Bank National Association, as Indenture Trustee; (iv) dated February 1, 2005 by and between the National Collegiate Student Loan Trust 2005-1 and U.S. Bank National Association, as Indenture Trustee; (v) dated June 1, 2005 by and between the National Collegiate Student Loan Trust 2005-2 and U.S. Bank National Association, as Indenture Trustee; and (vi) dated October 1, 2005 by and between the National Collegiate Student Loan Trust 2005-3 and U.S. Bank National Association, as Indenture Trustee.


appointment as Servicer for the Trusts under the Indentures and the Trusts' other governing agreements. If the Court determines that Odyssey was validly appointed as Servicer for the Trusts, the Petition also seeks instruction regarding the payment of certain invoiced expenses to Odyssey, resolution of certain inconsistencies between the Odyssey Servicing Agreement and the Trusts' existing Servicing Agreements and other related issues. A copy of the Petition (without exhibits) is attached as <u>Appendix I</u> hereto. The Petition sets forth a detailed description of the relief sought by the Indenture Trustee, and the Noteholders should review it carefully. Noteholders can access information related to the Petition by entering the case number listed above into the appropriate field in the Court's website.[3] On February 22, 2016 the Court entered an Order for Hearing (the "Order for Hearing"), attached as <u>Appendix II</u> hereto, scheduling a hearing on the Petition for 1:45 p.m. (central time) on April 18, 2016, at the following address:

**Courtroom 650**
**Ramsey County District Courthouse**
**15 West Kellogg Blvd.**
**St. Paul, Minnesota 55102**

Noteholders are hereby referred to the Petition and the Court's Order for Hearing for additional information concerning the factual background that gave rise to the Petition, as well as the instructions sought therein. In accordance with the Order for Hearing, parties in interest may object to the Petition, or any of the relief being sought therein, by filing and serving a memorandum of law setting forth their respective positions not later than five business days before the hearing. **THE OUTCOME OF THE HEARING ON THE PETITION MAY AFFECT YOUR LEGAL RIGHTS AND YOUR POTENTIAL RECOVERY ON THE NOTES. THE INDENTURE TRUSTEE URGES THE NOTEHOLDERS TO REVIEW THE PETITION CAREFULLY.**

The Indenture Trustee has filed the Petition seeking instructions with respect to Odyssey's purported appointment as Servicer because these determinations are important to the administration of the Trusts, including how the Trusts' delinquent loans are serviced in the future. Additionally, the Petition is important because the Administrator has expressed reservations about Odyssey's entitlement to certain invoiced expenses from January 2015-January 2016 (the "Disputed Funds"), and the Disputed Funds have been held back from distribution to the Noteholders until the Court resolves these issues. Further, the Petition is necessary because the Indenture Trustee has not been directed by Noteholders in accordance with the Indentures to take any specific action with respect to the underlying dispute. The Indenture Trustee has reserved all rights with respect to the Disputed Funds and any direction that it may receive in accordance with the Indentures.

Noteholders wishing to contact the Indenture Trustee to share their views about the matters described in this notice or to provide directions to the Indenture Trustee in accordance with the Indentures should direct their communications in writing to:

---

[3] http://pa.courts.state.mn.us/Search.aspx?ID=200



**David Duclos**
**U.S Bank National Association**
**One Federal Street, 3rd Floor**
**Boston, MA 02110**
**Email: david.duclos@usbank.com**

In addressing communications that may be directed to it, the Indenture Trustee may conclude that a specific response to particular communications from individual Noteholders is not consistent with equal and full dissemination of information to all Noteholders.

Please be further advised that the Indenture Trustee reserves all of the rights, powers, claims, and remedies available to it under the Indentures and applicable law. No delay or forbearance by the Indenture Trustee to exercise any right or remedy accruing upon the occurrence of a default, or otherwise under the terms of the Indentures, other documentation relating thereto or under applicable law, shall impair any such right or remedy or constitute a waiver thereof or acquiescence therein. The Indenture Trustee expressly reserves all rights in respect of the Indentures including, without limitation, its right to recover in full its fees and costs (including, without limitation, fees and costs incurred or to be incurred by it in performing its duties, indemnities owing or to become owing to it, compensation for its time spent and reimbursement for fees and costs of counsel and other agents it employs in performing its duties or to pursue remedies) and its right, prior to exercising any rights or powers in connection with the Indentures at the request or direction of any Noteholder, to receive security or indemnity satisfactory to it against all costs, expenses and liabilities which might be incurred in compliance therewith, and all rights that may be available to it under applicable law or otherwise.

This notice references the Indentures, the Petition and the Order for Hearing, and it is not a complete summary or statement of the material terms thereof, of relevant law or of relevant legal procedures. Noteholders and other persons interested in the Trusts should not rely on the Indenture Trustee or advisors retained by the Indenture Trustee as their sole source of information.

Please note that this notice is not intended and should not be construed as investment, accounting, financial, legal, tax or other advice by or on behalf of the Indenture Trustee, or its directors, officers, affiliates, agents, attorneys or employees. In respect of all matters set forth herein, each person or entity receiving this notice should seek advice from its own legal counsel and financial advisors based on its particular circumstances.

**U.S. BANK NATIONAL ASSOCIATION,**
*acting solely in its capacity as Indenture Trustee*

TA3



usbank.com

## Schedule A

### Additional Addressees

BY FIRST CLASS OR CERTIFIED MAIL

Owner Trustee
Wilmington Trust Company
Attn: Corporate Trust Administration
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001

Administrator
GSS Data Services, Inc.
401 West A Street, Suite 1300
San Diego, CA 92101

Servicer
Pennsylvania Higher Education Assistance Agency
Attn.: Senior Vice President, Marketing & Client Affairs
1200 North Seventh Street
Harrisburg, Pennsylvania 17102

Special Sub-Servicer
Turnstile Capital Management, LLC
Attn: Alan Amico
401 W. A Street, Suite 1300
San Diego, CA 92101

Sub-Servicer
NCO Financial Systems, Inc.
Attn: Joshua Gindin, Esq.
Executive Vice President and General Counsel
507 Prudential Road
Horsham, Pennsylvania 19044

Special Servicer
U.S. Bank National Association
Attn: Brian Tri
60 Livingston Ave.
St. Paul, Minnesota 55107



usbank.com

<u>Odyssey</u>
Odyssey Education Resources LLC
Attn: Tom Glanfield
800 Corporate Drive
Ft. Lauderdale, FL 33334

<u>Rating Agencies</u>
Moody's Investors Service, Inc.
ABS Monitoring Department
99 Church Street
New York, New York 10007

Standard & Poor's Ratings Services
Attn: ABS Surveillance Group
55 Water Street
41st floor
New York, NY 10041-0003

Fitch Ratings
Attn: ABS Surveillance Group
One State Street Plaza
New York, NY 10004

With a copy to:

VCG Securities LLC
407 SE 1st Street
Delray Beach, FL 33483

Cook and Sadorf, PL
1744 N. Belcher Rd., Suite 150
Clearwater, FL 33765
Attn: Rick Sadorf

Lance Gotthoffer
Chaitman LLP
465 Park Avenue
New York, NY 10022

Neil L. Arney
Kutak Rock LLP
1801 California Street, Suite 3000
Denver, CO 80202-2626



usbank.com

**Appendix I**

**Petition**

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF RAMSEY                          SECOND JUDICIAL DISTRICT

|  |  |
|---|---|
| In the Matter of the National Collegiate Student Loan Trusts 2003-1, 2004-1, 2004-2, 2005-1, 2005-2 and 2005-3. | Case Type: Other<br><br>File No. **62-TR-CV-16-5** |

## PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTIONS IN THE ADMINISTRATION OF TRUSTS PURSUANT TO MINN. STAT. § 501C.0201

TO THE DISTRICT COURT FOR THE SECOND JUDICIAL DISTRICT:

1.      Petitioner U.S. Bank National Association ("U.S. Bank") files this petition (the "Petition") solely in its capacity as indenture trustee (the "Indenture Trustee") acting for the benefit of the holders of notes issued through certain securitization trusts (the "Indenture Trusts") in connection with the following Delaware Statutory Trusts: National Collegiate Student Loan Trust 2003-1, National Collegiate Student Loan Trust 2004-1, National Collegiate Student Loan Trust 2004-2, National Collegiate Student Loan Trust 2005-1, National Collegiate Student Loan Trust 2005-2 and National Collegiate Student Loan Trust 2005-3 (the "Issuers").

2.      The Indenture Trustee seeks the Court's instruction regarding VCG Securities LLC's ("VCG") attempt to appoint Odyssey Education Resources LLC ("Odyssey") as a servicer or special servicer for each Issuer under a December 30, 2014 servicing agreement (the "Odyssey Agreement").[1] VCG holds all, or the majority, of the beneficial interest in each Issuer and is attempting to act through the owner trustee to (1) appoint Odyssey as servicer or special servicer and (2) direct

_____

[1] A true and correct copy of the Odyssey Agreement is attached as Exhibit 1.

1

TA7

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

approximately $1.46 million in indenture trust funds to Odyssey.

3.      The Indenture Trustee's rights and responsibilities are contained in an indenture entered into with each Issuer (the "Indentures"). Under the Indentures, the Indenture Trustee maintains certain trust accounts that hold funds for payments to Noteholders and other parties including servicers. In this case, the Indenture Trustee has been instructed to release trust funds to pay numerous invoices from Odyssey, but is concerned that payment of such funds may violate the terms of the Indentures and harm the Noteholders.

4.      Among the Indenture Trustee's concerns is the fact that Odyssey does not appear to have actually performed any services to benefit the Noteholders. Additionally, Odyssey's appointment appears to alter the current servicing arrangements in a way that requires, at the very least, Rating Agency Confirmation and Noteholder consent. Lastly, the Odyssey Agreement grants Odyssey the power to purchase trust assets at below-market value, which creates a potential for self-dealing.

5.      The Indenture Trustee seeks the Court's instruction on three issues. First, the Indenture Trustee seeks instruction regarding whether, under the Governing Agreements,[2] Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding, such that the Indenture Trustee should release funds necessary to compensate Odyssey for any future services performed.

6.      Second, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding how to resolve certain conflicts between the Odyssey Agreement and the Governing Agreements.

---

[2] The "Governing Agreements" include, for each Issuer respectively, the Trust Agreement, Indenture, the Servicing Agreement, the Administration Agreement and the Special Servicing Agreement.

2

TA8

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

7.     Third, to the extent Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, the Indenture Trustee seeks instruction regarding whether to release the funds necessary to pay Odyssey's outstanding invoices, although Odyssey has not provided the Administrator or Indenture Trustee any evidence that it has performed any services for the Issuers, and the Indenture Trustee has not received any funds for forwarding to Noteholders generated by Odyssey's alleged servicing activities.

## Jurisdiction and Venue

8.     The Indenture Trustee is a national banking association and has its principal corporate trust office in St. Paul, Minnesota. This Court has jurisdiction *in rem* over this Petition under Minn. Stat. § 501C.0201 because the Indenture Trusts' assets are administered by and through the Indenture Trustee's St. Paul corporate trust office.

9.     This petition is properly venued in this Court pursuant to Minn. Stat. § 501C.0207(2)(ii).

## Issuance of Student Loan-Backed Notes

10.     Each Issuer is a Delaware Statutory Trust for which Wilmington Trust Company acts as the current trustee (the "Owner Trustee").

11.     The Issuers were created to facilitate the issuance and sale of notes (the "Notes") backed by private student loans (the "Loans") to investors (the "Noteholders"). To facilitate this process, each Issuer pledged its interest in the Loans to the Indenture Trustee under an Indenture.[3] The Notes entitle the Noteholders to a portion of the cash flows generated by repayment of the Loans.

12.     Each Issuer also retained an interest in any residual cashflow generated

---

[3] A true and correct copy of the Indenture relating to National Collegiate Student Loan Trust 2005-3 is attached as Exhibit 2. The terms of the 2005-3 Indenture relevant to this Petition are substantially similar to those of the other Indentures.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

by the Loans after the Notes are paid in full.

**Additional Relevant Parties**

13.     In addition to the Owner Trustee, the operations of each Issuer and Indenture Trust are carried out by numerous parties including the Indenture Trustee, Servicers, a Special Servicer, and an Administrator.

14.     U.S. Bank is the Indenture Trustee of, and is responsible for administering, each Indenture Trust. This includes holding deposits received from the Servicers or Special Servicer, making distributions to Noteholders in accordance with reports received from the Administrator, and making reports or other information received from various parties available to Noteholders.

15.     The Pennsylvania Higher Education Assistance Agency ("PHEAA") acts as the primary Servicer for each Issuer. Each Servicer collects principal and interest payments on the Loans from the borrowers and remits those payments to the Indenture Trustee for distribution to Noteholders.

16.     First Marblehead Education Resources, Inc. ("First Marblehead") was the original Special Servicer and U.S. Bank was the back-up Special Servicer for each Issuer under the Special Servicing Agreement dated March 1, 2009 (the "Special Servicing Agreement").[4] When First Marblehead later resigned, U.S. Bank succeeded First Marblehead as Special Servicer. Under the Special Servicing Agreement, the Special Servicer provides certain services for Loans that are more than 30 days delinquent. U.S. Bank later contracted with Transworld Systems Inc. ("TSI") to act as Sub-Servicer and with Turnstile Capital Management, LLC ("TCM") to act as Special Sub-Servicer for each Issuer.

17.     GSS Data Services Inc. ("GSSDS") acts as the Administrator for each Issuer (the "Administrator") under an Administration Agreement (collectively, the "Administration Agreements").[5] The Administrator performs certain duties under

---

[4] A true and correct copy of the Special Servicing Agreement is attached as Exhibit 3.
[5] A true and correct copy of the Administration Agreement relating to National Collegiate Student Loan

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

the Governing Agreements including directing payment of expenses of the Issuers and creating monthly reports to Noteholders.

18.    VCG holds all, or the majority, of the beneficial interest in each Issuer. As the Issuers' owner, VCG has instructed the Owner Trustee to take certain actions with respect to Odyssey and the Odyssey Agreement. Upon information and belief, VCG owns, controls, or is otherwise affiliated with Odyssey.

## The Odyssey Agreement

19.    On December 30, 2014, VCG directed the Owner Trustee to enter into the Odyssey Agreement, which purports to appoint Odyssey as a "Servicer" for each Issuer. Before this, neither the Administrator nor the Indenture Trustee was involved in or aware of the negotiation or execution of the Odyssey Agreement.

20.    While the Odyssey Agreement purports to appoint Odyssey as a "Servicer," the Odyssey Agreement allows Odyssey to perform certain collection and enforcement services with respect to Loans that are more than 30 days delinquent. The Special Servicing Agreement also provides for U.S. Bank as the Special Servicer to perform similar services with respect to Loans that are more than 30 days delinquent. As a result, it is unclear whether the Odyssey Agreement appoints Odyssey as a Servicer or replacement Special Servicer. This distinction is significant because the procedures for appointing a Servicer differ from those for appointing a replacement Special Servicer.

21.    A Servicer cannot be properly appointed unless 10 days' prior notice of the appointment is provided to the Rating Agencies and, during the 10 days, none of the Rating Agencies notify the Administrator or the Indenture Trustee in writing that the appointment will result in a reduction or withdrawal of the Notes' current rating.[6]

---

Trust 2005-3 is attached as Exhibit 4. The terms of the 2005-3 Administration Agreement relevant to this Petition are substantially similar to those of the other Administration Agreements.

[6] *See, e.g.*, Ex. 2 at A-20, A-23 (defining "Rating Agency Condition" and "Servicer"). Additionally, to the extent the Odyssey Agreement would increase the amount of servicing fees being paid, the Indentures require that the Rating Agencies be given 10 days' prior notice and, during the 10 days, none of the

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

22.     A replacement Special Servicer cannot be properly appointed without written confirmation from each Rating Agency (other than Fitch, Inc.) that the appointment will not result in a reduction or withdrawal of the Notes' current rating.[7] Here, to the extent Odyssey is able to service Loans pursuant to the Odyssey Agreement, it will effectively replace U.S. Bank as Special Servicer as to such Loans.[8]

23.     On February 4, 2015, the Administrator received a letter from VCG requesting that the Administrator acknowledge the Odyssey Agreement.[9] This letter stated that "the Rating Agency Condition has been satisfied." This letter, however, did not attach or describe the purported notice and did not attach or describe any confirmation from the Rating Agencies that the appointment would not result in a rating reduction or withdrawal. Neither the Administrator nor the Indenture Trustee was involved in or aware of the purported satisfaction of the Rating Agency Conditions with respect to the Odyssey Agreement. Thus, it is unclear if the Rating Agency Conditions for appointment of Odyssey as a Servicer have been satisfied, much less the more stringent conditions for replacement of a Special Servicer.

24.     The Odyssey Agreement also materially alters how Loans may be released from the Indentures. The Odyssey Agreement permits Odyssey to purchase defaulted Loans at below-market prices, which is not allowed by any of the other servicing agreements.

25.     Another potential defect in Odyssey's appointment as Servicer is that Odyssey never obtained Noteholder consent of the appointment. To the extent that Odyssey's appointment would waive, amend, modify, supplement, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder

---

Rating Agencies notify the Administrator or the Indenture Trustee in writing that such action will result in a reduction or withdrawal of the Notes' current rating. *See id.* at A-23 (defining "Servicing Fees").
[7] *See, e.g.,* Ex. 3 at § 6(E).
[8] Additionally, a failure by the Issuers to send Loans that are more than 30 days delinquent to U.S. Bank as Special Servicer would violate the Special Servicing Agreement.
[9] A true and correct copy of this letter is attached as Exhibit 5.

consent.[10] Here, because all Loans are currently being serviced by the current Servicer and Special Servicer, it is unclear what Loans would be available for Odyssey to service. To the extent Odyssey's servicing would amend, modify, or terminate the current Servicing or Special Servicing Agreements, the Indentures require Noteholder consent.

26.     On February 10, 2015, the Administrator responded to VCG's letter by informing VCG that Odyssey was not an approved servicer because various preconditions to its appointment had not been fulfilled.

27.     On March 23, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator stating that it was forbidden from having any communication regarding Odyssey with PHEAA or any Rating Agency. The letter also stated that the Administrator should not take any action that would cause or allow any defaulted Loan to be transferred to the Special Servicer, and that it should not hire any entity to service defaulted Loans.

28.     On October 1, 2015, the Owner Trustee, on behalf of the Issuers, sent a letter to the Administrator instructing it to "cease and desist" with giving PHEAA any direction with respect to the servicing of defaulted Loans.

### The Odyssey Invoices

29.     On December 8, 2015 the Issuers'/VCG's counsel, Mr. Lance Gotthoffer, emailed the Administrator invoices that sought "Reimbursement of Expenses" purportedly incurred by Odyssey for each Issuer during each month of 2015.[11]

30.     On December 10, 2015, the Administrator responded to Mr. Gotthoffer's email by requesting a detailed description of the expenses for which Odyssey was seeking reimbursement.[12]

---

[10] *See, e.g.*, Ex. 2 at § 3.07(c) ("Issuer shall not waive, amend, modify, supplement or terminate any Basic Document or any provision thereof without the consent of the Indenture Trustee and the Interested Noteholders"); *see also id.* at A-4 (defining "Basic Documents" to include "Servicing Agreements").
[11] True and correct copies of this email and all of the 2015 invoices are attached hereto as Exhibit 6.
[12] A true and correct copy of this email is attached as Exhibit 7.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

31.     Mr. Gotthoffer responded on December 11, 2015 that further detail was not required under the Odyssey Agreement, and that none would be provided unless the Administrator could direct him "to a provision in [the Odyssey Agreement] requiring Odyssey to provide the detailed explanation of expenses requested in [the Administrator's] email[.]"[13]

32.     The Administrator's outside counsel, Kutak Rock LLP, wrote Mr. Gotthoffer on December 16, 2015, stating that Odyssey had not been validly appointed as Servicer and, therefore, Odyssey's invoices would not be paid.

33.     In addition to Odyssey's 2015 invoices, Odyssey has subsequently sent the Administrator invoices for January and February of 2016.[14] The Odyssey invoices received to date total $1.46 million.[15]

34.     No documentation or backup for the expenses allegedly incurred by Odyssey has been provided to the Administrator as of the date this Petition was filed.

35.     As of the filing of this Petition, the Indenture Trustee has not received any proceeds from Odyssey's purported servicing of the Loans. If Odyssey serviced any Loans during 2015 or later, it should have remitted monies collected to the Indenture Trustee for disbursement to the Noteholders.

### Threatened Litigation

36.     On December 23, 2015, Mr. Gotthoffer sent a draft complaint to Kutak Rock LLP, counsel to the Administrator, naming the Administrator and the Indenture Trustee as defendants. Mr. Gotthoffer stated that the complaint would be filed unless the Odyssey invoices were paid by December 28, 2015.

37.     The draft complaint sought to compel the Indenture Trustee and

---

[13] *See id.*

[14] A true and correct copy of the January 2016 invoices are attached hereto as Exhibit 8. The February 2016 invoices were received too late to be included in the Monthly Issuer Order for the February distribution date.

[15] The invoices attached as Exhibits 6 and 8 total $1.35 million through January, 2016. With the addition of the February, 2016 invoices, Odyssey's outstanding invoices to date total $1.46 million.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

Administrator to pay Odyssey's outstanding invoices. The draft complaint also asserted a claim against the Administrator seeking indemnification under the Administration Agreement. Lastly, the draft complaint asserted a tortious interference claim against the Indenture Trustee for "tortiously interfer[ing] with, and caus[ing] [the Administrator] to breach, the Administration Agreement."

### Orders to Pay Odyssey Invoices

38. On January 14, 2016, VCG sent an "Officers Certificate" to the Indenture Trustee attesting that the all conditions precedent for the execution of the Odyssey Agreement had been satisfied and requesting that the Indenture Trustee acknowledge the Odyssey Agreement.[16]

39. Also on January 14, 2016, Mr. Gothoffer's law firm, Chaitman LLP, sent an "Opinion of Counsel" to the Indenture Trustee in which Chaitman LLP opined that "the execution of the Odyssey Agreement is authorized and/or permitted by the applicable Indentures and that all conditions precedent to such execution have been complied with."[17]

40. On January 20, 2016, the Owner Trustee, at the direction of the Issuers/VCG, sent an "Issuer Order" to the Administrator that instructed the Administrator to (1) acknowledge the Odyssey Agreement, (2) cause the payment of the Odyssey invoices that had been submitted, (3) cause the payment of all future Odyssey invoices, and (4) prepare and execute all additional documents and take all action necessary to cause the payment of all current and future Odyssey invoices.[18] Under Section 1(c) of the Administration Agreements, the Administrator is not obligated to take any action with respect to a non-ministerial action unless the Administrator shall have received instructions from the Indenture Trustee under the Indenture or from the Owner Trustee or the owners of the respective Issuer under the

---

[16] A true and correct copy of this letter is attached as Exhibit 9.
[17] *See id.* at Exhibit C.
[18] A true and correct copy of this Issuer Order is attached as Exhibit 10.

9

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

Trust Agreement.

41.     Based solely upon the "Issuer Order" instruction to cause the payment of the Odyssey invoices, on February 17, 2016, the Administrator sent the Indenture Trustee a Monthly Issuer Orders ("MIOs") to release the funds necessary to pay the Odyssey invoices.[19] In a letter accompanying the MIO, the Administrator also expressed its concerns as to whether Odyssey was validly appointed as a Servicer or a replacement Special Servicer under the Indentures or the Special Servicing Agreement and that the Odyssey invoices lack sufficient authorization, detail, and backup to warrant payment. The Administrator stated that, "[a]bsent the Issuer Order, the Administrator would not have submitted the Invoices for payment[.]"

### Request for Relief

WHEREFORE, pursuant to the provisions of Minn. Stat. §§ 501C.0201, 501C.0202 and all other applicable law, the Indenture Trustee respectfully requests that this Court:

a.  Make and enter herein an Order designating the time and place when the respective parties in interest may be heard upon the matters set forth in this Petition, and that notice of the hearing be served in the manner specified in the accompanying Order and as provided by Minn. Stat. § 501C.0203 subdivision 1.

b.  Undertake to represent all parties in interest who are unascertained or not in being, or who are minors or incapacitated, pursuant to the provisions of Minn. Stat. § 501C.0305.

c.  At such designated time and place make a further Order as follows:

i.  Determining whether, under the Governing Agreements, Odyssey was properly appointed as a Servicer or Special Servicer and whether the Odyssey Agreement is valid and binding;

---

[19] A true and correct copy of the MIO and accompanying letter (absent attachments) are attached as Exhibit 11.

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

ii.  If Odyssey was properly appointed as Servicer or Special Servicer and the Odyssey Agreement is valid and binding under the Governing Agreements, resolving the conflicts and inconsistencies that arise between the Governing Agreements and the Odyssey Agreement.

iii.  Determining that the Administrator should not provide for payment of the Odyssey invoices in its Monthly Issuer Orders submitted as of the date this Petition was filed;

iv.  Determining that the Administrator should not provide for the payment of any Odyssey invoices submitted in the future unless the Odyssey Agreement is determined to be valid and binding under the Governing Agreements and Odyssey provides to the Administrator invoices that contain documented, verifiable descriptions of the work performed by Odyssey and funds are received by the relevant trust;

v.  Determining that the Indenture Trustee should not pay, or cause the release of, any funds to Odyssey pursuant to the Odyssey Agreement or any Monthly Issuer Order;

vi.  Determining that the Indenture Trustee has acted without willful misconduct, negligence or bad faith in ascertaining whether the requirements under the applicable Indentures have been satisfied;

vii.  Directing that the Indenture Trustee and the Issuers shall not be subject to the continuing supervision of the Court for the purposes of Minn. Stat. § 501C.0205 or General Rule of Practice 417.02; and

viii.  Granting such other and further relief as the Court may deem

11

TA17

lawful, just and proper.


DATED: February 18, 2016

By:   /s/ Thomas F. Berndt
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as
Indenture Trustee*

Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN

## Acknowledgement

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minn. Stat. § 549.211.

DATED: February 18, 2016

By:   /s/ Thomas F. Berndt
Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone:(612) 349-8500
FAX (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*

TA19



usbank.com

**Appendix II**

**Order for Hearing**

# FILED

## FEB 2 2 2016

STATE OF MINNESOTA

DISTRICT COURT

COURT ADMINISTRATOR

COUNTY OF RAMSEY

BY___*KA*___ DEPUTY SECOND JUDICIAL DISTRICT

Case Type: Other

In the Matter of the National Collegiate
Student Loan Trusts 2003-1, 2004-1,
2004-2, 2005-1, 2005-2 and 2005-3.

File No. 62-TR-CV-16-5

---

## ORDER FOR HEARING ON PETITION OF U.S. BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE, FOR INSTRUCTION PURSUANT TO MINN. STAT. § 501C.0201

Petitioner U.S. Bank National Association, in its capacity as indenture trustee

as described in the Petition (the "Indenture Trustee"), having filed its Petition for

Instructions in the Administration of Trusts Pursuant to Minn. Stat. § 501C.0201

(the "Petition") and the Court having assumed jurisdiction of the proceeding *in rem*

under Minnesota Statute § 501C.0201, now, upon motion of Robins Kaplan LLP,

attorneys for petitioner, hereby directs as follows:

IT IS ORDERED THAT:

1.     A hearing upon the Petition will be held before the Honorable

David C. Higgs     , District Court Judge, Probate Division, at the Ramsey County

District Courthouse, Room _650___, St. Paul, Minnesota on April 18, 2016 at

__1:45 p.m._____, or as soon thereafter as counsel can be heard.

2.     Notice of such hearing shall be given by publishing a copy of this

Order one time in a legal newspaper of Ramsey County, Minnesota, at least twenty

(20) days before the date of the hearing.

3.     The Indenture Trustee is further directed to send both this Order and

the Petition (exclusive of the exhibits), without duplication, to all registered

TA21

noteholders under the indentures by first class or certified mail, postage pre-paid, at the address of such holder as shown in the note register, at least fifteen (15) days prior to the hearing date. To the extent that any of the notes are held through The Depository Trust Company, mailing of this Order and the Petition (exclusive of the exhibits) to The Depository Trust Company at least fifteen (15) days prior to the hearing date shall be sufficient. Upon mailing of this Order and the Petition to the registered noteholders, the Indenture Trustee shall complete the Affidavit of Mailing attached hereto as <u>Exhibit A</u> and such affidavit shall constitute sufficient evidence of mailing, so as to comply with the notice requirements of Minnesota Statutes §§ 501C.0201 and 501C.0203.

4.      Parties in interest may object to the Petition, or any of the relief being sought herein, by filing a memorandum of law setting forth their respective positions regarding the issues presented by the Petition, and serve therewith all counsel then of record in the matter, not later than five (5) days before the hearing date set forth above.

5.      The parties in interest are hereby referred to the Petition provided to them and on file in the office of the Court Administrator for a specification of the matters to be considered at the hearing.

Dated: February  22  , 2016

_Kimberly F. Smith_
Deputy Court Administrator
Ramsey County District Court

TA22

Michael A. Collyard (302569)
Thomas F. Berndt (389080)
Peter C. Ihrig (390392)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, Minnesota 55402-2015
Phone: (612) 349-8500
Fax: (612) 339-4181
mcollyard@robinskaplan.com
tberndt@robinskaplan.com
pihrig@robinskaplan.com

*Attorneys for U.S. Bank National Association, as Indenture Trustee*

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

# EXHIBIT 1

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

# SERVICING AGREEMENT

This Servicing Agreement, dated as of December 30, 2014 (this "Agreement"), is entered into by and among Odyssey Education Resources LLC ("Odyssey"), as the Servicer (together with its successors and assigns, the "Servicer"), and each of the Trusts listed on Schedule A attached hereto (the "Trusts"). Any capitalized terms used, but not defined herein shall have the meaning given to such term set forth in the Basic Documents (as that term is defined in the Indenture applicable to each such Trust, the "Basic Documents").

WHEREAS, the Trusts desire to, from time to time, dispose of certain defaulted Financed Student Loans;

WHEREAS, pursuant to the Indenture applicable to each Trust, Financed Student Loans may only be sold, transferred or otherwise disposed of to a servicer at a disposition price specified under the applicable Servicing Agreement;

WHEREAS, each of the Trusts has previously appointed other entities as the servicer of certain Financed Student Loans and accordingly Odyssey is likely not performing all of the servicing responsibilities with respect to the Financed Student Loans;

WHEREAS, none of the existing servicers of the Financed Student Loans nor their applicable Servicing Agreements have a mechanism currently in place to dispose of Financed Student Loans;

WHEREAS, Odyssey will utilize employees and agents (appointed from time to time by it, as provided herein) who are experts in the management of collections on and the disposition of Financed Student Loans;

WHEREAS, each of the Trusts is appointing Odyssey as a Servicer under each Trust's respective Trust Agreement, to perform certain limited duties with respect to certain Financed Student Loans owned by the Trusts that are defaulted or Loans Eligible For Sale (as defined below); and

WHEREAS, Servicer is being engaged pursuant hereto to purchase Loans from each Trust as directed or permitted by the applicable Trust.

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions.    Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Basic Documents. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Loans Eligible For Sale" means Financed Student Loan(s) owned by a Trust for which the borrower of such Financed Student Loan has failed to repay such Financed Student Loan according to the terms agreed to in the applicable controlling loan documents and agreements, and such Borrower(s) shall have been delinquent in its repayment obligations for no less than 180 days.

"Defaulted Loan" means any Financed Student Loan owned by a Trust for which the borrower of such Financed Student Loan has failed to repay such Financed Student Loan according to the terms agreed to in the applicable controlling loan documents and agreements, provided however, that such Borrower shall have been delinquent in its repayment obligations for no less than 31 days;

"Default Prevention Services" means such services determined by the Servicer to be desirable to collect and seek enforcement of Financed Student Loans that are greater than 30 days past due and less than 180 days past due. Default Prevention Services may include both telephonic and mail correspondence and related monthly reporting.

TA25

Filed in Second Judicial District Court
2/02/2006 1:09:15 PM
Ramsey County, MN

"Early Awareness Services" means such services determined by the Servicer to be desirable to reduce the number and percentage of Financed Student Loans becoming delinquent in the repayment process prior to the initial payment due date, including without limitation, services that are intended to alert borrowers and co-borrowers to their repayment obligations, available borrower benefits (such as ACH automatic payments) and contact information for the Servicer. Early Awareness Services may include both telephonic and mail contacts, as well as address verification and skip tracing.

Section 2.     Appointment:   Servicing Duties.

A. Appointment. Each of the Trusts hereby hires, designates and appoints the Servicer as a Servicer under each Trust's applicable, respective Indenture to perform the servicing duties (as defined below) with respect to Loans Eligible For Sale and Defaulted Loans, and the Servicer accepts such appointment and agrees to perform such duties with respect to the Loans Eligible For Sale and Defaulted Loans in accordance with the terms of this Agreement and each Indenture.

B. Services. The Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee the enforcement and collection of Loans Eligible For Sale and Defaulted Loans, and to provide recommendations to the relevant Trust with respect to those Loans Eligible For Sale to be sold by the terms hereof, to maximize the collection of amounts payable on the Financed Student Loans (collectively, the "Services"), including without limitation:

(i)      Retaining and entering into agreements with licensed collection agencies, loan brokers and other legally authorized persons (the "Subservicers") engaged in providing default prevention and collection services and loan sale services, in form and substance satisfactory to the Servicer, pursuant to which the Subservicers, for and on behalf of the applicable Trust, will contact borrowers with respect to the Loans Eligible For Sale and Defaulted Loans, and seek enforcement and collection of such Loans Eligible For Sale and Defaulted Loans, including without limitation Early Awareness Services and Default Prevention Services when applicable;

(ii)      At the sole discretion of the Servicer, (a) performing periodic audits of Subservicers for compliance and performance reviews and (b) providing oversight of the activities of Subservicers with regard to account management, litigation assistance, and/or settlement strategies;

(iii)      Replacing any Subservicer who, in the sole judgment of the Servicer, is deemed to be deficient or negligent in performing the duties outlined in its subservicing agreement with the Servicer;

(iv)      Requiring in the applicable subservicing agreement that the Subservicers provide certain monthly reports to the Servicer with respect to Loans Eligible For Sale and Defaulted Loans serviced by such Subservicer, in each case, in a form and substance satisfactory to the Servicer;

(v)      With respect to Loans Eligible For Sale and Defaulted Loans, reviewing claim packages as described in subparagraph (xi);

(vi)      With respect to Loans Eligible For Sale and Defaulted Loans being serviced by the Servicer or Subservicers, remitting within two (2) days of receipt to the Odyssey Collection Account (as hereinafter defined) for the receipt of all cash collected by Servicer and for the receipt of collections from a Subservicer for the benefit of the respective Trusts.

(vii)      With respect to Loans Eligible For Sale or Defaulted Loans (a) roll or reassign such loans being serviced by Servicer into a default recovery queue for collection effort or a queue for sale efforts in accordance with the provisions of Section 2(C) below, (b) direct any Subservicer to roll or reassign any loans that become Charge-Off Loans to the Servicer for

TA26

Filed in Second Judicial District Court
2/07/2006 1:09:15 PM
Ramsey County, MN

assignment into the queue for sale efforts, and (c) remit within two (2) days of receipt to the Odyssey Collection Account (as hereinafter defined) for the receipt of collections for the benefit of the respective Trusts, as their interests may appear, all cash collected on all Loans Eligible For Sale in the queue for sale until such time as the loan is sold.

(viii)    Reporting to the relevant Trust all Loans Eligible For Sale being held in the queue for purchase; soliciting direction from the Trust as to which loans shall be sold pursuant to the terms of Section 2(C) below.

(ix)    Conduct the sale of all Loans Eligible For Sale in accordance with the provisions or Section 2(C) below.

(x)    Establishing and maintaining an account or accounts (the "Odyssey Collection Account") in the name of the Indenture Trustee (or its agent or custodian), for benefit of the applicable secured parties of the Trusts under the respective Indentures, for the deposit by Servicer and any Subservicer of net collections (including all net proceeds of any sale of Loans Eligible For Sale in accordance with the provisions of 2(C) below) on all Loans Eligible For Sale and Defaulted Loans serviced by Servicer or Subservicer for the respective Trust and in connection therewith, preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi)    Reviewing claim packages prepared by any Servicer or Subservicer with respect to Loans Eligible For Sale and Defaulted Loans to confirm, on the basis of such review, that (a) the Servicer or Subservicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii)    Receiving reports from Servicers and Subservicers related to payments with respect to Loans Eligible For Sale and Defaulted Loans and updating records with respect to Financed Student Loans as interest and other charges accrue and amounts are collected;

(xiii)    Remitting or causing the Subservicers to remit net collections received on Loans Eligible For Sale and Defaulted Loans to the Odyssey Collection Account;

(xiv)    Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Loans Eligible For Sale and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xv)    Negotiating any settlement or compromise of any claim with respect to a Loans Eligible For Sale or Defaulted Loans, which in the reasonable judgment of the Servicer are more likely to produce greater proceeds of collection than by virtue of a forbearance, payment management or other accommodation with the borrower; and

(xvi)    At the sole discretion of the Servicer, identifying, recommending, selling, transferring, exchanging, purchasing or otherwise disposing of Loans Eligible For Sale in accordance with the Basic Documents.

For the avoidance of doubt the parties hereto hereby acknowledge and agree that nothing in this Agreement is intended to nor does it amend the applicable Trust Agreement, Indenture or Administration Agreement for each Trust or limit in any way the Trusts' rights thereunder, including without limitation, the right to direct or restrict the activities of the Servicer.

C. Purchase of Loans Eligible For Sale.   The Servicer shall take all such action, as it shall deem reasonably necessary or appropriate to purchase the Loans Eligible For Sale, including without limitation:

Filed in Second Judicial District Court
2/17/2016 1:09:15 PM
Ramsey County, MN

(i)    Entering into custodial agreements either directly or through agents for the purpose of perfecting a security interest in the Loans Eligible For Sale and to provide for the safekeeping of the Loans Eligible For Sale and all documents and information relating to the Loans Eligible For Sale;

(ii)    Preparing all necessary sale documentation including, but not limited to, appropriate terms required for each bidder, the loan purchase agreement and other related documentation required to memorialize and accomplish the sale of the Loans Eligible For Sale;

(iii)    In its sole discretion, determining the purchase price for each such Loan Eligible For Sale that it determines to purchase pursuant to the terms hereof based on one of the two following methods: (a) 10% less than the highest bid received pursuant to the Servicer marketing the Loans Eligible For Sale for sale to at least three (3) qualified bidders and conducting the sale process in a manner that, in the sole judgment of the Servicer, will yield the highest and best net proceeds to be paid in exchange for the Loans Eligible For Sale, provided however, that with respect to such sale process, Servicer shall, at a minimum: (i) provide an information packet ("Information Packet") applicable to each sale which describes the loans offered for sale and contains such other customary information applicable to such sale; (ii) in a good faith effort to maximize the proceeds to the Trust from the sale of the Loans, invite a sufficient number of qualified bidders under the circumstances to participate in such sale, and in no event shall the Servicer receive less than three (3) bids from qualified bidders; (iii) establish a time period between the distribution of the Information Packet and the acceptance of bids to allow the prospective bidders to research and analyze the Loans Eligible For Sale; and (iv) hold the sale at a convenient time and in a convenient location or (b) 10% less that the average value established pursuant to the Servicer engaging two (2) reputable appraisers, in the business of appraising loans, to appraise the Loans Eligible for Sale which the Servicer intends to purchase;

(iv)    Notifying the Relevant Trust and the Administrator that each of the Loans Eligible For Sale sold pursuant to the Loan Sale is a Liquidated Student Loan pursuant to the Basic Documents;

(v)    Simultaneous with the Loan Sale, remitting or causing the Subservicers to remit the Liquidation Proceeds and all Recoveries associated with the Liquidated Student Loans to the Odyssey Collection Account.

Section 3.    Incorporation.  As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.    Subservicers.  In carrying out its duties under this Agreement with respect to the Loans Eligible For Sale and Defaulted Loans, the Servicer may retain and employ Subservicers to perform any of the Services with respect to the Financed Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Loans Eligible For Sale and Defaulted Loans.

Section 5.    Servicing Fee; Reimbursement for Expenses.  As compensation for the performance of the Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.    Reimbursement by each Trust for all of the Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Servicer pursuant to this Agreement and any other expenses incurred by the

Servicer on behalf of each Trust, including costs and expenses incurred by the Servicer in establishing and maintaining the Odyssey Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Loans Eligible For Sale and Defaulted Loans shall be paid from such collections prior to remittance to such Odyssey Collection Account, as described in Section 2(B)(vii), 2(B)(x) and 2(c)(vii) above. The reimbursement described in this Section 5(A) with respect to Default Prevention Services (but not with respect to Early Awareness Services) shall not exceed the dollar amount listed for each Trust on Schedule B, attached hereto, in the aggregate per calendar month per respective Trust. The reimbursement described in this Section 5(A) with respect to Early Awareness Services shall not exceed the dollar amount listed for each Trust on Schedule C attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

B.     In carrying out the foregoing duties or any of its other obligations under this Agreement, the Servicer may charge a fee for any collection services that it provides and enter into transactions or otherwise deal with any of its affiliates, including, without limitation, collection agency which affiliates may also charge reasonable fees and receive other forms of remuneration, provided however, that the terms of any such transaction or dealings with an affiliate shall be, in the Servicer's opinion, no less favorable to the Trusts than would be available from unaffiliated parties.

Section 6.     <u>Term of Agreement: Resignation and Removal of Servicer.</u>

A. <u>Term</u>. This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust.

B. <u>Resignation</u>. Subject to Section 6(D) of this Agreement, the Servicer may resign its duties hereunder by providing the Trust, the Administrator and the Indenture Trustee with at least 10 days' prior written notice.

C. <u>Removal for Cause</u>. Subject to Section 6(D) of this Agreement, the Indenture Trustee shall have the right to remove the Servicer with the prior written consent of the Trust, by delivering to the Servicer written notice of termination if any of the following events shall occur:

(i)     The Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

(ii)     A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Servicer under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs; or

(iii)     The Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due.

The Servicer agrees that if any of the events specified in clauses (ii) or (iii) of this Section shall occur, it shall give written notice thereof to the Trust, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of such notice of

Filed in Second Judicial District Court
2/07/2066 1:09:15 PM
Ramsey County, MN

termination), the Servicer shall identify any Loans Eligible For Sale and Defaulted Loans still being serviced by it hereunder.

D. Succession. No resignation or removal of the Servicer pursuant to this Section shall be effective until a successor Servicer (which Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Servicer is bound hereunder. The appointment of any successor Servicer shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

Section 7.     Action upon Termination. Resignation or Removal.  Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Servicer pursuant to Section 6(B) or Section 6(C) of this Agreement, the Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Financed Student Loans then in the custody of the Servicer pursuant to this Agreement. In the event of the resignation or removal of the Servicer pursuant to Section 6 of this Agreement, the Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and take all reasonable steps requested to assist the Trusts in making an orderly transfer of the duties of the Servicer to the successor Servicer, as applicable.

Section 8.     Representations and Warranties.  The Servicer hereby makes the following representations and warranties to each of the Trusts:

(i)     Organization and Good Standing. The Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii)     No Violation. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Servicer. The Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Servicer.

(iii)     Authorization and Enforceability.  The execution and delivery by the Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Servicer with the terms hereof are within the powers of the Servicer

TA30

Filed in Second Judicial District Court
2/07/2016 1:09:15 PM
Ramsey County, MN

and have been duly authorized by all necessary action on the part of the Servicer. All organizational resolutions and consents necessary for the Servicer to enter into and consummate all transactions contemplated hereby have been obtained, This Agreement has been duly executed and delivered by the Servicer and constitutes the legal, valid and binding obligation of the Servicer enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Servicer,

(iv)  Approvals and Permits.  The Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Servicer to perform its obligations hereunder.

(v)  No Litigation.  No litigation is pending or, to the best of the Servicer's knowledge, threatened against it, which, if determined adversely to the Servicer would prohibit the Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Servicer.

(vi)  Standard of Care.  In exercising its duties hereunder, Servicer agrees to use at least the same degree of care that it would use if the Defaulted Loans and Loans Eligible For Sale were Servicer's own property, but no less than a reasonable degree of care.

Section 9.  Indemnification.  The Servicer will indemnify each of the Trusts, the Owner Trustee and the Indenture Trustee and their respective officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Indenture Trustee (as applicable) and any Administrator, Servicer, Sub-Servicer or other agent of or servicer provider to the Trust and any of their agents, arising out of the willful misconduct, gross negligence or bad faith of the Servicer (or its agents) in the performance of the Servicer's duties contemplated by this Agreement; provided that neither the Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Trust, the Administrator or the Indenture Trustee or in accordance with this Agreement. To the extent any indemnification amounts are not paid by the Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Financed Student Loans then owned by each Trust.

Section 10.  Records: Inspection.  The Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours. The Servicer hereby grants the Indenture Trustee the right, for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Servicer and the Indenture Trustee. All expenses associated with the

Filed in Second Judicial District Court
2/02/2006 1:09:15 PM
Ramsey County, MN

performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(A).

Section 11. Reporting; Additional Information to be Furnished. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator, on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Loans Eligible For Sale and Defaulted Loans in a form satisfactory to the Administrator. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator on behalf of the Trusts an electronically transferred data file containing recovery data for Loans Eligible For Sale and Defaulted Loans owned by each respective Trust and other information as required by Regulation AB, each for investor reporting purposes. The Servicer shall furnish to the Administrator on behalf of the Trusts from time to time such additional information regarding the Loans Eligible For Sale and Defaulted Loans as the Administrator on behalf of the Trusts shall reasonably request.

Section 12. Subservicing Agreement. The Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Financed Student Loan and its performance. Each subservicing agreement shall be terminable by the Servicer upon thirty days written notice, and shall provide that any successor to the Servicer shall succeed to the Servicer thereunder.

Section 13. Regulation AB. On or before September 15 of each calendar year beginning in 2015, the Servicer shall deliver to the Administrator any reports, Servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Servicer is required to deliver to the Administrator the documents described in this Section 13, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 14. Security Interest. Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal and/or interest on, as applicable, and any other amounts owing in respect to the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 15. Amendments. This Agreement may be amended from time to time by the parties hereto to add additional trusts, provided that any amendment must be accompanied by the written consent of the Trust and upon satisfying the Rating Agency Condition.

Section 16. Independence of the Servicer. For all purposes of this Agreement, the Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Trusts, the Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 17. No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of the others.

TA32

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

Section 18.  **Other Activities of the Servicer**. Nothing herein shall prevent the Servicer or its Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 19.  **Notices**. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Servicer, to:

> Odyssey Education Resources LLC
> 800 Corporate Drive,
> Ft. Lauderdale, FL 33334
> Attn: Tom Glanfield

> With a copy to:

> Cook and Sadorf, PL
> 1744 N. Belcher Rd., Suite 150
> Clearwater, FL 33765
> Attn: Rick Sadorf

If to the Trusts, to:

> Wilmington Trust Company
> Rodney Square North
> 1100 North Market Street
> Wilmington, DE 19890-0001
> Attn: Corporate Trust Administration

> With a copy to:

> VCG Securities LLC
> 407 SE 1st Street
> Delray Beach, FL 33483
> Attn: Donald Uderitz

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 20.  **Notice to Noteholders**. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed Odyssey as Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 21.  **Miscellaneous**.

A. **Successors and Assigns**. This Agreement may not be assigned by the Servicer unless such assignment is previously consented to in writing by the Indenture Trustee and unless each Rating Agency, after having been given 10 days prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

hereunder in the same manner the Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Servicer, without the consent of the Indenture Trustee to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Servicer; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

C. Headings. The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or intent of this Agreement.

D. Counterparts. This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F. Limitation of Liability of Owner Trustee. Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts. For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G. Third Party Beneficiary. The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H. No Petition. The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Basic Documents as defined in the Indenture.

I. Grant. Each Trust hereby acknowledges that this Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture. Each Trust hereby grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Noteholders and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing. The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral. By its signature below, the Indenture Trustee on behalf of the Noteholders and other secured parties as applicable, acknowledges such Grant.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

ODYSSEY EDUCATION RESOURCES LLC, as the Servicer

By: _____

Name: Donald Uderitz

Title: Authorized Signatory

Each of the Trusts listed on Schedule A, attached hereto

By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____

Name: Dorri Costello

Title: Assistant Vice President

ACKNOWLEDGED:

GSS DATA SERVICES, INC., as Administrator

By. _____

Name:

Title:

U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for each of the Indentures listed on Schedule A attached hereto

By. _____

Name:

Title:

TA35

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

## SCHEDULE A

Trusts:

• The National Collegiate Student Loan Trust 2003-1;
• The National Collegiate Student Loan Trust 2004-1;
• The National Collegiate Student Loan Trust 2004-2;
• The National Collegiate Student Loan Trust 2005-1;
• The National Collegiate Student Loan Trust 2005-2; and
• The National Collegiate Student Loan Trust 2005-3.

Indentures:

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

• The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
• The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
• The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
• The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
• The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005; and
• The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005.

TA36

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

## SCHEDULE B

[Schedule of Default Prevention Services Reimbursement Limits per Trust by Calendar Month]

Filed in Second Judicial District Court
2/19/2016 1:09:15 PM
Ramsey County, MN

## SCHEDULE C

[Schedule of Early Awareness Services Reimbursement Limits per Trust by Calendar Month]

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

# EXHIBIT 2

Filed in Second Judicial District Court
2/13/2006 1:09:15 PM
Ramsey County, MN

EXECUTION COPY

INDENTURE

between

THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3,
as Issuer

and

U.S. BANK NATIONAL ASSOCIATION,
as Indenture Trustee

Relating To:
The National Collegiate Student Loan Trust 2005-3

Dated as of October 1, 2005

SSL-DOCS2 70240931v7

TA40

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

## THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3

Reconciliation and tie between Trust Indenture Act of 1939, as amended (the "Trust Indenture Act" or "TIA") and this Indenture of Trust, dated as of October 1, 2005.

| Trust Indenture Act Section | Indenture Section |
| --- | --- |
| Section 310(a)(1) | 6.11 |
| Section 310(a)(3) | 9.08 |
| Section 310(b) | 6.11 |
| Section 313(c) | 3.24, 9.07 |
| Section 314(c) | 8.13 |
| Section 314(d)(1) | 8.13 |
| Section 318 | 9.08 |

NOTE: This reconciliation and tie shall not, for any purpose, be deemed to be a part of the Indenture.

Attention should also be directed to Section 318(c) of the Trust Indenture Act, which provides that the provisions of Sections 310 to and including 317 of the Trust Indenture Act are a part of and govern every qualified indenture, whether or not physically contained therein.

# TABLE OF CONTENTS

Page

### ARTICLE I
Definitions and Usage

SECTION 1.01   Definitions and Usage ..................................................................................2

### ARTICLE II
The Notes

SECTION 2.01   Form ...........................................................................................................3
SECTION 2.02   Execution, Authentication and Delivery .....................................................3
SECTION 2.03   Temporary Notes ........................................................................................4
SECTION 2.04   Registration; Registration of Transfer and Exchange .................................4
SECTION 2.05   Mutilated, Destroyed, Lost or Stolen Notes ..............................................12
SECTION 2.06   Persons Deemed Owner .............................................................................13
SECTION 2.07   Payment of Principal and Interest; Defaulted Interest ...............................13
SECTION 2.08   Cancellation ...............................................................................................14
SECTION 2.09   Release of Collateral ..................................................................................15
SECTION 2.10   Book-Entry Notes ......................................................................................15
SECTION 2.11   Notices to Clearing Agency .......................................................................15
SECTION 2.12   Definitive Notes .........................................................................................16
SECTION 2.13   Tax Treatment ............................................................................................16

### ARTICLE III
Covenants

SECTION 3.01   Payment to Noteholders .............................................................................16
SECTION 3.02   Maintenance of Office or Agency ..............................................................17
SECTION 3.03   Money for Payments To Be Held in Trust .................................................17
SECTION 3.04   Existence ....................................................................................................18
SECTION 3.05   Protection of Indenture Trust Estate ..........................................................18
SECTION 3.06   Opinions as to Indenture Trust Estate ........................................................19
SECTION 3.07   Performance of Obligations; Servicing of Financed Student Loans ...........19
SECTION 3.08   Negative Covenants ...................................................................................21
SECTION 3.09   Annual Statement as to Compliance ..........................................................22
SECTION 3.10   Issuer May Consolidate, etc., Only on Certain Terms ...............................22
SECTION 3.11   Successor or Transferee .............................................................................23
SECTION 3.12   No Other Business ......................................................................................24
SECTION 3.13   No Borrowing ............................................................................................24
SECTION 3.14   Disposing of Financed Student Loans .......................................................24
SECTION 3.15   Guarantees, Loans, Advances and Other Liabilities ..................................25
SECTION 3.16   Capital Expenditures ..................................................................................25
SECTION 3.17   Restricted Payments ...................................................................................25
SECTION 3.18   Notice of Events of Default ........................................................................25
SECTION 3.19   Further Instruments and Acts .....................................................................25
SECTION 3.20   Additional Covenants .................................................................................26

i

SECTION 3.21    Covenant Regarding Financed Student Loans ............................................... 26
SECTION 3.22    Additional Representations of the Issuer ...................................................... 27
SECTION 3.23    Issuer Separateness Covenants .................................................................... 29
SECTION 3.24    Reports by Issuer .......................................................................................... 30
SECTION 3.25    Rule 144A Information ................................................................................. 31

## ARTICLE IV
### Satisfaction and Discharge

SECTION 4.01    Satisfaction and Discharge of Indenture ...................................................... 31
SECTION 4.02    Application of Trust Money ........................................................................... 32
SECTION 4.03    Repayment of Moneys Held by Paying Agent ............................................. 32

## ARTICLE V
### Remedies

SECTION 5.01    Events of Default ......................................................................................... 32
SECTION 5.02    Acceleration of Maturity; Rescission and Annulment .................................. 33
SECTION 5.03    Collection of Indebtedness and Suits for Enforcement by Indenture
                  Trustee ......................................................................................................... 34
SECTION 5.04    Remedies; Priorities ..................................................................................... 36
SECTION 5.05    Optional Preservation of the Financed Student Loans .................................. 39
SECTION 5.06    Limitation of Suits ....................................................................................... 40
SECTION 5.07    Unconditional Rights of Noteholders To Receive Principal and Interest ....... 40
SECTION 5.08    Restoration of Rights and Remedies ............................................................. 40
SECTION 5.09    Rights and Remedies Cumulative ................................................................. 41
SECTION 5.10    Delay or Omission Not a Waiver .................................................................. 41
SECTION 5.11    Control by Noteholders ................................................................................. 41
SECTION 5.12    Waiver of Past Defaults ................................................................................ 41
SECTION 5.13    Undertaking for Costs ................................................................................... 42
SECTION 5.14    Waiver of Stay or Extension Laws ............................................................... 42
SECTION 5.15    Action on Notes ........................................................................................... 42
SECTION 5.16    Performance and Enforcement of Certain Obligations .................................. 42
SECTION 5.17    Notice of Defaults ........................................................................................ 43

## ARTICLE VI
### The Indenture Trustee

SECTION 6.01    Duties of Indenture Trustee .......................................................................... 43
SECTION 6.02    Rights of Indenture Trustee .......................................................................... 45
SECTION 6.03    Individual Rights of Indenture Trustee .......................................................... 45
SECTION 6.04    Indenture Trustee's Disclaimer ..................................................................... 46
SECTION 6.05    Notice of Defaults ........................................................................................ 46
SECTION 6.06    Reports by Indenture Trustee to Noteholders ............................................... 46
SECTION 6.07    Compensation and Indemnity ....................................................................... 46
SECTION 6.08    Replacement of Indenture Trustee ................................................................ 46
SECTION 6.09    Successor Indenture Trustee by Merger ........................................................ 47
SECTION 6.10    Appointment of Co-Trustee or Separate Trustee ........................................... 48
SECTION 6.11    Eligibility; Disqualification ........................................................................... 49

ii

SECTION 6.12   Back-up Certification ...................................................................................49

## ARTICLE VII
### Noteholders' Lists and Reports

SECTION 7.01   Issuer To Furnish Indenture Trustee Names and Addresses of
Noteholders ................................................................................................49
SECTION 7.02   Preservation of Information; Communications to Noteholders ......................49
SECTION 7.03   Reports by Issuer ........................................................................................50

## ARTICLE VIII
### Accounts, Disbursements and Releases

SECTION 8.01   Collection of Money ....................................................................................50
SECTION 8.02   Trust Accounts ...........................................................................................51
SECTION 8.03   General Provisions Regarding Accounts .......................................................55
SECTION 8.04   Release of Indenture Trust Estate ................................................................56
SECTION 8.05   Opinion of Counsel .....................................................................................56
SECTION 8.06   Cost of Issuance Account .............................................................................57
SECTION 8.07   Application of Collections ............................................................................57
SECTION 8.08   Reserve Account .........................................................................................57
SECTION 8.09   Statements to Noteholders ...........................................................................59
SECTION 8.10   Pre-Funding Account ..................................................................................60
SECTION 8.11   Advances ....................................................................................................61

## ARTICLE IX
### Supplemental Indentures

SECTION 9.01   Supplemental Indentures Without Consent of Noteholders ...........................61
SECTION 9.02   Supplemental Indentures with Consent of Noteholders .................................62
SECTION 9.03   Execution of Supplemental Indentures .........................................................63
SECTION 9.04   Effect of Supplemental Indenture ................................................................63
SECTION 9.05   [Reserved] ..................................................................................................63
SECTION 9.06   Reference in Notes to Supplemental Indentures ...........................................64
SECTION 9.07   Conformity With the Trust Indenture Act .....................................................64

## ARTICLE X
### Reporting Requirements

SECTION 10.01   Annual Statement as to Compliance ............................................................64
SECTION 10.02   Annual Independent Public Accountants' Servicing Report ..........................64

## ARTICLE XI
### Miscellaneous

SECTION 11.01   Compliance Certificates and Opinions, etc ...................................................64
SECTION 11.02   Form of Documents Delivered to Indenture Trustee ......................................65
SECTION 11.03   Acts of Noteholders ....................................................................................66
SECTION 11.04   Notices, etc., to Indenture Trustee, Issuer and Rating Agencies ....................66
SECTION 11.05   Notices to Noteholders; Waiver ...................................................................67

iii

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

SECTION 11.06 Alternate Payment and Notice Provisions ........................................................67
SECTION 11.07 [Reserved] .........................................................................................................68
SECTION 11.08 Effect of Headings and Table of Contents.......................................................68
SECTION 11.09 Successors and Assigns......................................................................................68
SECTION 11.10 Separability ........................................................................................................68
SECTION 11.11 Benefits of Indenture.........................................................................................68
SECTION 11.12 Legal Holidays...................................................................................................68
SECTION 11.13 Governing Law ..................................................................................................68
SECTION 11.14 Counterparts.......................................................................................................68
SECTION 11.15 Recording of Indenture .....................................................................................68
SECTION 11.16 Trust Obligations ...............................................................................................69
SECTION 11.17 No Petition .........................................................................................................69
SECTION 11.18 Inspection...........................................................................................................69
SECTION 11.19 Third-Party Beneficiaries..................................................................................70


APPENDIX A        Definitions and Usage

SCHEDULE A       Schedule of Initial Financed Student Loans
SCHEDULE B       Schedule of Subsequent Student Loans
SCHEDULE C       List of TERI Guaranty Agreements
SCHEDULE D       List of Student Loan Purchase Agreements


EXHIBIT A-1       Form of Class A-1 Note
EXHIBIT A-2       Form of Class A-2 Note
EXHIBIT A-3       Form of Class A-3 Note
EXHIBIT A-4       Form of Class A-4 Note
EXHIBIT A-5       Form of Class A-5 Note
EXHIBIT A-6       Form of Class B Note
EXHIBIT A-7       Form of Class C Note
EXHIBIT B         Form of Student Loan Acquisition Certificate
EXHIBIT C         Form of Transferee Letter
EXHIBIT D         Form of Rule 144A Certification
EXHIBIT E         Form of Transfer Certificate for Rule 144A Global Note to Regulation S
                  Global Note during Restricted Period
EXHIBIT F         Form of Transfer Certificate for Rule 144A Global Note to Regulation S
                  Global Note after Restricted Period
EXHIBIT G         Form of Transfer Certificate for Regulation S Global Note to Rule 144A
                  Global Note during Restricted Period
EXHIBIT H         Form of Transfer Certificate for Regulation S Global Note during
                  Restricted Period
EXHIBIT I         Indenture Trustee Back-up Certification

TA45