SECTION 3.12 <u>No Other Business</u>. The Issuer shall not engage in any business other than financing, purchasing, owning, selling and servicing the Financed Student Loans and making Additional Fundings in the manner contemplated by this Indenture and the other Basic Documents and activities incidental thereto.

SECTION 3.13 <u>No Borrowing</u>. The Issuer shall not issue, incur, assume, guarantee or otherwise become liable, directly or indirectly, for any indebtedness except for the Notes.

SECTION 3.14 <u>Disposing of Financed Student Loans</u>. Other than pursuant to Article V, Financed Student Loans may only be sold, transferred, exchanged or otherwise disposed of by the Indenture Trustee free from the lien of this Indenture (i) for transfer to a Guarantee Agency pursuant to the terms of the applicable Guarantee Agreement; (ii) to a Seller or the Depositor in accordance with the applicable Student Loan Purchase Agreement or the Deposit and Sale Agreement; or (iii) to the Servicer in and, in each case, if the Indenture Trustee is provided with the following:

(a) an Issuer Order stating the sale price and directing that Financed Student Loans be sold, transferred or otherwise disposed of and delivered to a transferee whose name shall be specified; and

(b) a certificate signed by an Authorized Officer of the Issuer to the effect that the disposition price is equal to or in excess of the amount required by the applicable Guarantee Agreement in the case of clause (i), by the applicable Student Loan Purchase Agreement in the case of clause (ii), or by the Servicing Agreement in the case of clause (iii).

(c) Subject to the provisions of this Indenture and except for sales of Financed Student Loans pursuant to this Section 3.14, the Indenture Trustee shall release property from the lien of this Indenture only upon receipt of an Issuer Order, an Opinion of Counsel and independent certificates in accordance with TIA Sections 314(c) and 314(d)(1) or an Opinion of Counsel in lieu of such independent certificates to the effect that the TIA does not require any such independent certificates.

(d) Each Noteholder, by the acceptance of a Note, acknowledges that from time to time the Indenture Trustee shall release the lien of this Indenture on any Financed Student Loan to be sold pursuant to this Section 3.14, and each Noteholder, by the acceptance of a Note, consents to any such release.

The Indenture Trustee, as a third-party beneficiary under the Student Loan Purchase Agreements entered into by the Depositor, who has assigned its entire right, title and interest in such Student Loan Purchase Agreements to the Issuer pursuant to the terms of the Deposit and Sale Agreement, shall have the right to request the repurchase of loans by the applicable Seller or the Depositor, as the case may be, together with any indemnity payments due thereunder upon the conditions and subject to the provisions contained in the Student Loan Purchase Agreements. The Indenture Trustee shall make such a request to the applicable Seller under the related Student Loan Purchase Agreement or the Depositor under the Deposit and Sale Agreement, as the case may be, to repurchase and, as the case may be, pay any indemnity amounts due with

24

respect to certain specific loans pursuant to the Student Loan Purchase Agreements or the Deposit and Sale Agreement, as applicable, if (i) the Indenture Trustee has actual knowledge that the conditions precedent to such a repurchase or indemnity obligation with respect to such loans have been satisfied; (ii) it has notified the Issuer in writing that such conditions have been satisfied; and (iii) the Issuer has not exercised its right to request the repurchase or indemnity of the applicable loans by the applicable Seller or the Depositor, as the case may be, within 10 days after receiving written notice from the Indenture Trustee.

SECTION 3.15  Guarantees, Loans, Advances and Other Liabilities. Except as contemplated by this Indenture or the other Basic Documents, the Issuer shall not make any loan or advance or credit to, or guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing or otherwise), endorse or otherwise become contingently liable, directly or indirectly, in connection with the obligations, stocks or dividends of, or own, purchase, repurchase or acquire (or agree contingently to do so) any stock, obligations, assets or securities of, or any other interest in, or make any capital contribution to, any other Person.

SECTION 3.16  Capital Expenditures. The Issuer shall not make any expenditure (by long-term or operating lease or otherwise) for capital assets (either realty or personalty).

SECTION 3.17  Restricted Payments. The Issuer shall not, directly or indirectly, (i) pay any dividend or make any distribution (by reduction of capital or otherwise), whether in cash, property, securities or a combination thereof, to the Owner Trustee or any owner of a beneficial interest in the Issuer or otherwise with respect to any ownership or equity interest or security in or of the Issuer or to the Depositor, the Servicer, the Administrator or the Back-up Administrator, (ii) redeem, purchase, retire or otherwise acquire for value any such ownership or equity interest or security or (iii) set aside or otherwise segregate any amounts for any such purpose; *provided, however*, that the Issuer may make, or cause to be made, distributions to such persons as contemplated by, and to the extent funds are available for such purpose under, this Indenture and the other Basic Documents. The Issuer will not, directly or indirectly, make payments to or distributions from the Collection Account except in accordance with this Indenture and the other Basic Documents.

SECTION 3.18  Notice of Events of Default. The Issuer shall give the Indenture Trustee and the Rating Agencies prompt written notice of each Event of Default hereunder and each default on the part of the Servicer of its obligations under the Servicing Agreement or the Administrator of its obligations under the Administration Agreement. In addition, the Issuer shall deliver to the Indenture Trustee, within five days after the occurrence thereof, written notice in the form of an Officers' Certificate of the Issuer of any event which with the giving of notice and the lapse of time would become an Event of Default under Section 5.01(iii), its status and what action the Issuer is taking or proposes to take with respect thereto.

SECTION 3.19  Further Instruments and Acts. Upon request of the Indenture Trustee, the Issuer will execute and deliver such further instruments and do such further acts as

25

may be reasonably necessary or proper to carry out more effectively the purpose of this Indenture.

SECTION 3.20    Additional Covenants.  The Issuer covenants that it will acquire or cause to be acquired Student Loans as described herein.  The Noteholders shall not in any circumstances be deemed to be the owner or holder of the Financed Student Loans.

The Issuer, or its designated agent, shall be responsible for each of the following actions:

(a)    The Issuer, or its designated agent, shall cause the benefits of the Guarantee Agreements to flow to the Indenture Trustee.

(b)    The Indenture Trustee shall have no obligation to administer, service or collect the loans in the Indenture Trust Estate or to maintain or monitor the administration, servicing or collection of such loans.

(c)    The Issuer shall comply with all United States statutes, rules and regulations which apply to the Student Loan Programs, the Program Manual and the Financed Student Loans.

(d)    The Issuer shall cause to be diligently enforced and taken all reasonable steps, actions and proceedings necessary for the enforcement of all terms, covenants and conditions of all Financed Student Loans made and agreements in connection therewith, including the prompt payment of all principal and interest payments and all other amounts due the Issuer thereunder.  The Issuer shall not permit the release of the obligations of any borrower under any Financed Student Loan and shall at all times, to the extent permitted by law, cause to be defended, enforced, preserved and protected the rights and privileges of the Issuer, the Indenture Trustee and of the Noteholders under or with respect to each Financed Student Loan and agreement in connection therewith.

(e)    The Issuer shall take all appropriate action to ensure that at the time each Student Loan becomes a part of the Indenture Trust Estate it shall be free and clear from all liens.

(f)    The Issuer shall diligently enforce, and take all steps, actions and proceedings reasonably necessary to protect its rights with respect to each Financed Student Loan, and to maintain any guarantee (including the Guarantee issued by TERI) on and to enforce all terms, covenants and conditions of Financed Student Loans, including its rights and remedies under the Deposit and Sale Agreement and the TERI Pledge Fund.

The Trustee shall not be deemed to be the designated agent for the purposes of this Section unless it has agreed in writing to be such agent.

SECTION 3.21    Covenant Regarding Financed Student Loans.  The Issuer hereby covenants that all Student Loans to be acquired hereunder will meet the following:

(a)    Each Student Loan is evidenced by an executed promissory note, which note is a valid and binding obligation of the Obligor, enforceable by or on behalf of the holder

thereof in accordance with its terms, subject to bankruptcy, insolvency and other laws relating to or affecting creditors' rights.

(b) The amount of the unpaid principal balance of each Student Loan is due and owing, and no counterclaim, offset, defense or right to rescission exists with respect to any such Student Loan which can be asserted and maintained or which, with notice, lapse of time, or the occurrence or failure to occur of any act or event, could be asserted and maintained by the Obligor against the Issuer as assignee thereof. The Issuer shall take all reasonable actions to assure that no maker of a Student Loan has or may acquire a defense to the payment thereof.

(c) No Student Loan has a payment that is more than 90 days overdue other than such Student Loans that, in the aggregate, do not exceed 1.00% of the then aggregate outstanding principal amount of the Student Loans.

(d) The Issuer has full right, title and interest in each Student Loan free and clear of all liens, pledges or encumbrances whatsoever.

(e) Each Student Loan was made in compliance with all applicable state and federal laws, rules and regulations, including, without limitation, all applicable nondiscrimination, truth-in-lending, consumer credit and usury laws.

(f) All loan documentation shall be delivered to the Servicer (as custodian for the Indenture Trustee) prior to payment of the purchase price of such Student Loan.

(g) Each Student Loan is accruing interest (whether or not such interest is being paid currently by the borrower or is being capitalized), except as otherwise expressly permitted by this Indenture.

(h) Each Student Loan was originated in conformity with the "loan acceptance criteria" (including, without limitation, any general policies, eligible borrower criteria, creditworthiness criteria and "good credit" criteria) and the "loan program terms" (including, without limitation, the loan amount, the interest rate and the guaranty fee) (or any similar criteria or terms, however so designated, under the applicable Program Manual) contained in the Program Manual and otherwise, in substantial conformity with the Program Manual.

(i) Each Student Loan is guaranteed by a Guarantee Agency.

SECTION 3.22 <u>Additional Representations of the Issuer</u>. The Issuer hereby makes the following representations and warranties to the Indenture Trustee, on behalf of the Noteholders:

(a) ***Valid and Continuing Security Interest***. This Indenture creates a valid and continuing security interest (as defined in the applicable Uniform Commercial Code ("UCC") in effect in the State of Delaware) in the Financed Student Loans and all other assets constituting part of the Indenture Trust Estate in favor of the Indenture Trustee, which security interest is prior to all other liens, charges, security interests, mortgages or other encumbrances, and is enforceable as such as against creditors of and purchasers from the Issuer.

(b) *Accounts*. The Financed Student Loans constitute "accounts" or "payment intangibles" within the meaning of the applicable UCC.

(c) *Good and Marketable Title*. The Issuer owns and has good and marketable title to the Financed Student Loans and all other assets constituting part of the Indenture Trust Estate free and clear of any lien, charge, security interest, mortgage or other encumbrance, claim or encumbrance of any Person, other that those granted pursuant to this Indenture.

(d) *Perfection by Filing*. The Issuer has caused or will have caused, within ten days of the Closing Date, the filing of all appropriate financing statements in the proper filing office in the appropriate jurisdictions under applicable law in order to perfect the security interest in the Financed Student Loans and all other assets of the Indenture Trust Estate granted to the Trustee hereunder.

(e) *Perfection by Possession*. The Issuer has given the Indenture Trustee a copy of a written acknowledgment from the applicable custodian that the custodian is holding executed copies of the promissory notes and master promissory notes that constitute or evidence the Financed Student Loans, and that such custodian is holding such notes solely on behalf and for the benefit of the Indenture Trustee.

(f) *Priority*. Other than the security interest granted to the Indenture Trustee pursuant to this Indenture, the Issuer has not pledged, assigned, sold, granted a security interest in, or otherwise conveyed any of the Financed Student Loans or any other portion of the Indenture Trust Estate. The Issuer has not authorized the filing of and is not aware of any financing statements against the Issuer that include a description of collateral covering the Financed Student Loans or any other portion of the Indenture Trust Estate other than any financing statement relating to the security interest granted to the Indenture Trustee hereunder or that has been terminated. The Issuer is not aware of any judgment or tax lien filings against the Issuer.

(g) *Valid Business Reasons; No Fraudulent Transfers*. The transactions contemplated by this Indenture are in the ordinary course of the Issuer's business and the Issuer has valid business reasons for granting the Indenture Trust Estate pursuant to this Indenture. At the time of each such grant: (i) the Issuer granted the Indenture Trust Estate to the Indenture Trustee without any intent to hinder, delay, or defraud any current or future creditor of the Issuer; (ii) the Issuer was not insolvent and did not become insolvent as a result of any such grant; (iii) the Issuer was not engaged and was not about to engage in any business or transaction for which any property remaining with such entity was an unreasonably small capital or for which the remaining assets of such entity are unreasonably small in relation to the business of such entity or the transaction; (iv) the Issuer did not intend to incur, and did not believe or should not have reasonably believed, that it would incur, debts beyond its ability to pay as they become due; and (v) the consideration paid received by the Issuer for the grant of the Indenture Trust Estate was reasonably equivalent to the value of the related grant.

SECTION 3.23   <u>Issuer Separateness Covenants</u>.  So long as any of the Notes are Outstanding:

(a)   The Issuer shall not engage in any business or activity other than in connection with the activities contemplated hereby and in the Basic Documents, and in connection with the issuance of Notes.

(b)   The funds and other assets of the Issuer shall not be commingled with those of any other individual, corporation, estate, partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

(c)   The Issuer shall not be, become or hold itself out as being liable for the debts of any other party.

(d)   The Issuer shall not form, or cause to be formed, any subsidiaries.

(e)   The Issuer shall act solely in its own name and through its duly authorized officers or agents in the conduct of its business, and shall conduct its business so as not to mislead others as to the identity of the entity with which they are concerned.

(f)   The Issuer shall maintain its records and books of account and shall not commingle its records and books of account with the records and books of account of any other Person. The books of the Issuer may be kept (subject to any provision contained in the statutes) inside or outside the State of Delaware at such place or places as may be designated from time to time by the board of trustees or in the bylaws of the Issuer.

(g)   All actions of the Issuer shall be taken by a duly authorized officer or agent of the Issuer.

(h)   The Issuer shall not amend, alter, change or repeal any provision contained in this Section without (i) the prior written consent of the Indenture Trustee, and (ii) satisfying the Rating Agency Condition.

(i)   The Issuer shall not amend its organizational documents or change its jurisdiction of formation without first satisfying the Rating Agency Condition.

(j)   All audited financial statements of the Issuer that are consolidated with those of any Affiliate thereof will contain detailed notes clearly stating that (i) all of the Issuer's assets are owned by the Issuer, and (ii) the Issuer is a separate entity with creditors who have received ownership and/or security interests in the Issuer's assets.

(k)   The Issuer will strictly observe legal formalities in its dealings with any of its Affiliates, and funds or other assets of the Issuer will not be commingled with those of any of its Affiliates. The Issuer shall not maintain joint bank accounts or other depository accounts to which any of its Affiliates has independent access. None of the Issuer's funds will at any time be pooled with the funds of any of its Affiliates.

(l)  The Issuer will maintain an arm's length relationship with each Seller (and any Affiliate thereof), the Depositor (and any Affiliate thereof), and any of the Issuer's Affiliates. Any Person that renders or otherwise furnishes services to the Issuer will be compensated by the Issuer at market rates for such services it renders or otherwise furnishes to the Issuer except as otherwise provided in this Indenture. The Issuer will not hold itself out to be responsible for the debts of the Seller, or the Depositor, the parent or the decisions or actions respecting the daily business and affairs of the Seller, the Depositor or the parent.

(m)  The Issuer shall not sell, transfer, exchange or otherwise dispose of any portion of the Indenture Trust Estate except as expressly permitted by this Indenture.

(n)  The Issuer shall not claim any credit on, or make any deduction from, the principal amount of any of the Notes by reason of the payment of any taxes levied or assessed upon any portion of the Indenture Trust Estate.

(o)  The Issuer shall not permit the validity or effectiveness of this Indenture or any grant hereunder to be impaired, or permit the lien of this Indenture to be amended, hypothecated, subordinated, terminated or discharged, or permit any Person to be released from any covenants or obligations under this Indenture, except as may be expressly permitted hereby.

SECTION 3.24  Reports by Issuer. The Issuer will:

(a)  File with the Indenture Trustee, within 15 days after the Issuer is required to file the same with the SEC, copies of the annual reports and of the information, documents and other reports (or copies of such portions of any of the foregoing as the SEC may from time to time by rules and regulations prescribe), if any, which the Issuer may be required to file with the SEC pursuant to Section 13 or Section 15(d) of the Exchange Act;

(b)  File with the Indenture Trustee and the SEC, in accordance with rules and regulations prescribed from time to time by the SEC, such additional information, documents and reports, if any, with respect to compliance by the Issuer with the conditions and covenants of this Indenture as may be required from time to time by such rules and regulations; and

(c)  Transmit by mail to the Noteholders, within 30 days after the filing thereof with the Indenture Trustee, in the manner and to the extent provided in TIA Section 313(c), such summaries of any information, documents and reports required to be filed by the Issuer, if any, pursuant to Section 3.24(a) and (b) as may be required by rules and regulations prescribed from time to time by the SEC.

The Indenture Trustee may conclusively rely and accept such reports from the Issuer as fulfilling the requirements of this Section 3.24, with no further duty to examine such reports or to determine whether such reports comply with the prescribed timing, rules and regulations of the SEC. Delivery of such reports to the Indenture Trustee is for informational purposes only and the Indenture Trustee's receipt of such shall not constitute constructive notice of any information contained therein or determinable from information contained therein, including the Issuer's compliance with any of its covenants hereunder (as to which the Indenture Trustee is entitled to rely on an Officers' Certificate).

SECTION 3.25   Rule 144A Information.  For so long as any of the Private Notes are outstanding and are "restricted securities" within the meaning of Rule 144(a)(3) of the Securities Act, (i) the Issuer will provide or cause to be provided to any holder of such Notes and any prospective purchaser thereof designated by such a holder, upon the request of such holder or prospective purchaser, the information required to be provided to such holder or prospective purchaser by Rule 144A(d)(4) under the Securities Act; and (ii) the Issuer shall update such information from time to time in order to prevent such information from becoming false and misleading and will take such other actions as are necessary to ensure that the safe harbor exemption from the registration requirements of the Securities Act under Rule 144A is and will be available for resales of such Private Notes conducted in accordance with Rule 144A.

## ARTICLE IV

### Satisfaction and Discharge

SECTION 4.01   Satisfaction and Discharge of Indenture.  This Indenture shall cease to be of further effect with respect to the Notes except as to (i) rights of registration of transfer and exchange, (ii) substitution of mutilated, destroyed, lost or stolen Notes, (iii) rights of holders of the Notes to receive payments of principal thereof and interest thereon, (iv) Sections 3.03, 3.04, 3.05, 3.08, 3.10, 3.12 and 3.13, (v) the rights, obligations and immunities of the Indenture Trustee hereunder (including the rights of the Indenture Trustee under Section 6.07 and the obligations of the Indenture Trustee under Section 4.02) and (vi) the rights of holders of the Notes, as beneficiaries hereof with respect to the property so deposited with the Indenture Trustee payable to all or any of them, and the Indenture Trustee, on demand of and at the expense of the Issuer, shall execute proper instruments acknowledging satisfaction and discharge of this Indenture with respect to the Notes, when:

(A)   a period of 367 days has expired after all Notes theretofore authenticated and delivered (other than (i) Notes that have been destroyed, lost or stolen and that have been replaced or paid as provided in Section 2.05 and (ii) Notes for whose payment money has theretofore been deposited in trust or segregated and held in trust by the Issuer and thereafter repaid to the Issuer or discharged from such trust, as provided in Section 3.03) have been delivered to the Indenture Trustee for cancellation;

(B)   a period of 367 days has expired after the later of (i) the date on which no Notes are outstanding or (ii) the date on which the Issuer has paid or caused to be paid all other sums otherwise payable hereunder by the Issuer; and

(C)   the Issuer has delivered to the Indenture Trustee an Officers' Certificate of the Issuer and an Opinion of Counsel, each meeting the applicable requirements of Section 11.01 and, subject to Section 11.02, each stating that all conditions precedent herein provided for relating to the satisfaction and discharge of this Indenture have been complied with.