or in the name of the successor to the Indenture Trustee; and in all such cases such certificates shall have the full force which it is anywhere in the Notes or in this Indenture provided that the certificate of the Indenture Trustee shall have.

SECTION 6.10 Appointment of Co-Trustee or Separate Trustee. (a) Notwithstanding any other provisions of this Indenture, at any time, for the purpose of meeting any legal requirement of any jurisdiction in which any part of the Indenture Trust Estate may at the time be located, the Indenture Trustee shall have the power and may execute and deliver all instruments to appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees, of all or any part of the Indenture Trust Estate, and to vest in such Person or Persons, in such capacity and for the benefit of the holders of the Notes, such title to the Indenture Trust Estate, or any part hereof, and, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Indenture Trustee may consider necessary or desirable. No co-trustee or separate trustee hereunder shall be required to meet the terms of eligibility as a successor trustee under Section 6.11 and no notice to holders of the Notes of the appointment of any co-trustee or separate trustee shall be required under Section 6.08 hereof.

(b) Every separate trustee and co-trustee shall, to the extent permitted by law, be appointed and act subject to the following provisions and conditions:

(i) all rights, powers, duties and obligations conferred or imposed upon the Indenture Trustee shall be conferred or imposed upon and exercised or performed by the Indenture Trustee and such separate trustee or co-trustee jointly (it being understood that such separate trustee or co-trustee is not authorized to act separately without the Indenture Trustee joining in such act), except to the extent that under any law of any jurisdiction in which any particular act or acts are to be performed the Indenture Trustee shall be incompetent or unqualified to perform such act or acts, in which event such rights, powers, duties and obligations (including the holding of title to the Indenture Trust Estate or any portion thereof in any such jurisdiction) shall be exercised and performed singly by such separate trustee or co-trustee, but solely at the direction of the Indenture Trustee;

(ii) no trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder; and

(iii) the Indenture Trustee may at any time accept the resignation of or remove any separate trustee or co-trustee.

(c) Any notice, request or other writing given to the Indenture Trustee shall be deemed to have been given to each of the then separate trustees and co-trustees, as effectively as if given to each of them. Every instrument appointing any separate trustee or co-trustee shall refer to this Indenture and the conditions of this Article VI. Each separate trustee and co-trustee, upon its acceptance of the trusts conferred, shall be vested with the estates or property specified in its instrument of appointment, either jointly with the Indenture Trustee or separately, as may be provided therein, subject to all the provisions of this Indenture, specifically including every provision of this Indenture relating to the conduct of, affecting the liability of, or affording

protection to, the Indenture Trustee. Every such instrument shall be filed with the Indenture Trustee.

(d) Any separate trustee or co-trustee may at any time constitute the Indenture Trustee, its agent or attorney-in-fact with full power and authority, to the extent not prohibited by law, to do any lawful act under or in respect of this Indenture on its behalf and in its name. If any separate trustee or co-trustee shall die, become incapable of acting, resign or be removed, all its estates, properties, rights, remedies and trusts shall vest in and be exercised by the Indenture Trustee, to the extent permitted by law, without the appointment of a new or successor trustee.

SECTION 6.11 Eligibility; Disqualification. There shall at all times be an Indenture Trustee hereunder which shall be eligible to act as Indenture Trustee under TIA Section 310(a)(1) and shall have a combined capital and surplus of at least $50,000,000 (and, with respect to any successor Indenture Trustee, having a rating of at least "Baa3" from Moody's unless the Rating Agency Condition is satisfied). If such corporation publishes reports of condition at least annually, pursuant to law or the requirements of federal, state, territorial or District of Columbia supervising or examining authority, then for the purposes of this Section 6.11, the combined capital and surplus of such corporation shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. If at any time the Indenture Trustee shall cease to be eligible in accordance with the provisions of this Section 6.11, it shall resign immediately in the manner and with the effect specified in this Article VI. Neither the Issuer nor any Person directly or indirectly controlling or controlled by, or under common control with, the Issuer shall serve as Indenture Trustee.

SECTION 6.12 Back-up Certification. The Indenture Trustee shall provide the Depositor with a certificate substantially in the form attached hereto as Exhibit I at the request of the Administrator; provided that the Indenture Trustee shall have no responsibility to file such certificate with the Securities and Exchange Commission.

ARTICLE VII

Noteholders' Lists and Reports

SECTION 7.01 Issuer To Furnish Indenture Trustee Names and Addresses of Noteholders. The Issuer will furnish or cause to be furnished to the Indenture Trustee (a) not more than five days after the earlier of (i) each Record Date and (ii) three months after the last Record Date, a list, in such form as the Indenture Trustee may reasonably require, of the names and addresses of the holders of the Notes as of such Record Date, (b) at such other times as the Indenture Trustee may request in writing, within 30 days after receipt by the Issuer of any such request, a list of similar form and content as of a date not more than 10 days prior to the time such list is furnished; provided, however, that so long as the Indenture Trustee is the Note Registrar, no such list shall be required to be furnished.

SECTION 7.02 Preservation of Information; Communications to Noteholders. (a) The Indenture Trustee shall preserve, in as current a form as is reasonably practicable, the names and addresses of the holders of the Notes contained in the most recent list furnished to the Indenture Trustee as provided in Section 7.01 and the names and addresses of the holders of the

49

Notes received by the Indenture Trustee in its capacity as Note Registrar. The Indenture Trustee may destroy any list furnished to it as provided in such Section 7.01 upon receipt of a new list so furnished.

(b) Upon receipt by the Indenture Trustee of any request by a holder of the Notes to receive a copy of the current list of holders of the Notes, the Indenture Trustee shall promptly notify the Administrator thereof by providing to the Administrator a copy of such request and a copy of the list of holders of the Notes produced in response thereto.

(c) The Indenture Trustee shall furnish to the holders of the Notes promptly upon receipt of a written request therefor, duplicates or copies of all reports, notices, requests, demands, certificates, financial statements and any other instruments furnished to the Indenture Trustee under the Basic Documents.

SECTION 7.03  Reports by Issuer. (a) The Issuer shall cause the Administrator to furnish the Issuer, the Indenture Trustee and the Grantor Trustee the reports required by the Administration Agreement and by Section 3.24 of this Indenture.

(b) Unless the Issuer otherwise determines, the fiscal year of the Issuer shall end on June 30 of each year.

ARTICLE VIII

Accounts, Disbursements and Releases

SECTION 8.01  Collection of Money. (a) Except as otherwise expressly provided herein, the Indenture Trustee may demand payment or delivery of, and shall receive and collect, directly and without intervention or assistance of any fiscal agent or other intermediary, all money and other property payable to or receivable by the Indenture Trustee pursuant to this Indenture. The Indenture Trustee shall apply all such money received by it on behalf of the holders of the Notes as provided in this Indenture. Except as otherwise expressly provided in this Indenture, if any default occurs in the making of any payment or performance under any agreement or instrument that is part of the Indenture Trust Estate, the Indenture Trustee may take such action as may be appropriate to enforce such payment or performance, including the institution and prosecution of appropriate Proceedings. Any such action shall be without prejudice to any right to claim a Default under this Indenture and any right to proceed thereafter as provided in Article V.

(b) The Indenture Trustee shall deposit into the Collection Account all payments it receives from the Servicer by or on behalf of the Obligors with respect to the Student Loans, and all related Liquidation Proceeds and Recoveries, as collected during the Collection Period. For purposes of this Article VIII, the phrase "payments by or on behalf of Obligors" shall mean payments made with respect to the Student Loans, as applicable, by or on behalf of borrowers thereof and the Guarantee Agency.

(c) The Indenture Trustee shall deposit into the Collection Account the aggregate Purchase Amount it receives with respect to Purchased Student Loans and all other amounts received from the Sellers or the Servicer with respect to the Student Loans. The

Indenture Trustee also shall deposit into the Collection Account all amounts transferred from the Pre-Funding Account pursuant to Section 8.10.

SECTION 8.02 <u>Trust Accounts</u>. (a)(i) The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Collection Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer. The Collection Account will initially be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee. The Issuer will make an initial deposit on the Closing Date into the Collection Account of cash equal to $1,282,227,853, of which $1,196,164,477 amount will be disbursed on the Closing Date by the Indenture Trustee, pursuant to written instructions of the Administrator, to acquire the Initial Financed Student Loans and $86,063,376 will be disbursed on the Closing Date by the Indenture Trustee, pursuant to written instructions of the Administrator, to pay the First Marblehead Corporation a structuring advisory fee.

(ii) The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Reserve Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer. The Reserve Account initially will be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee. The Issuer will make an initial deposit on the Closing Date into the Reserve Account of cash or certain Eligible Investments equal to the Reserve Account Initial Deposit.

(iii) The Issuer, for the benefit of the Noteholders and itself, shall establish and maintain in the name of the Indenture Trustee an Eligible Deposit Account (the "Pre-Funding Account"), bearing a designation clearly indicating that the funds deposited therein are held for the benefit of the Noteholders and the Issuer. The Pre-Funding Account initially will be established as a segregated account at U.S. Bank National Association in the name of the Indenture Trustee. The Issuer will make an initial deposit on the Closing Date into the Pre-Funding Account of cash or certain Eligible Investments equal to $143,530,079 (the "Pre-Funded Amount"), to be used for the purchase of Subsequent Student Loans and as provided by Section 8.10 hereof.

(b) Funds on deposit in the Collection Account, the Reserve Account and the Pre-Funding Account (together, the "Trust Accounts") shall be invested by the Indenture Trustee (or any custodian or designated agent with respect to any amounts on deposit in such accounts) in Eligible Investments pursuant to written instructions by the Issuer; <i>provided, however</i>, it is understood and agreed that the Indenture Trustee shall not be liable for any loss arising from such investment in Eligible Investments. All such Eligible Investments shall be held by (or by any custodian on behalf of) the Indenture Trustee for the benefit of the Noteholders and the Issuer; provided that on the Business Day preceding each Distribution Date on which funds in the applicable Trust Account will be needed, all interest and other investment income (net of losses and investment expenses) on funds on deposit therein shall be deposited into the Collection Account and shall constitute a portion of the Available Funds for such Distribution Date. Other than as described in the following proviso or as otherwise permitted by the Rating

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

Agencies, funds on deposit in the Trust Accounts shall be invested in Eligible Investments that will mature so that such funds will be available at the close of business on the Business Day preceding the following Distribution Date for which such funds are needed; *provided, however,* that funds on deposit in Trust Accounts may be invested in Eligible Investments of the Indenture Trustee which may mature so that such funds will be available on such Distribution Date. Funds deposited in a Trust Account on a Business Day which immediately precedes a Distribution Date upon the maturity of any Eligible Investments are not required to be invested overnight.

(c) The Indenture Trustee, on behalf of the Noteholders, shall possess all right, title and interest in all funds on deposit from time to time in the Trust Accounts and in all proceeds thereof (including all income thereon) and all such funds, investments, proceeds and income shall be part of the Indenture Trust Estate. Subject to the Issuer's power to instruct the Indenture Trustee pursuant to paragraph (b) above, the Trust Accounts shall be under the sole dominion and control of the Indenture Trustee for the benefit of the Noteholders. If, at any time, any of the Trust Accounts ceases to be an Eligible Deposit Account, the Indenture Trustee (or the Administrator on its behalf) agrees, by its acceptance hereto, that it shall within 5 Business Days (or such longer period, not to exceed 30 calendar days, as to which each Rating Agency may consent) establish a new Trust Account as an Eligible Deposit Account and shall transfer any cash and/or any investments to such new Trust Account. In connection with the foregoing, the Issuer agrees that, in the event that any of the Trust Accounts are not accounts with the Indenture Trustee, the Issuer shall notify the Indenture Trustee, in writing, promptly upon any of such Trust Accounts ceasing to be an Eligible Deposit Account.

(A) With respect to the Trust Account Property, the Indenture Trustee agrees, by its acceptance hereof, that:

(B) any Trust Account Property that is held in deposit accounts shall be held solely in Eligible Deposit Accounts; and, subject to Section 8.02(b), each such Eligible Deposit Account shall be subject to the exclusive custody and control of the Indenture Trustee, and the Indenture Trustee shall have sole signature authority with respect thereto;

(C) any Trust Account Property shall be Delivered to the Indenture Trustee in accordance with the definition of "Delivery" and shall be held, pending maturity or disposition, solely by the Indenture Trustee or such other Person acting solely for the Indenture Trustee as required for Delivery;

(D) In the event that the Indenture Trustee, in its capacity as securities intermediary has or subsequently obtains by agreement, operation of law or otherwise a security interest in the Trust Accounts or any security entitlement credited thereto, the Indenture Trustee, in its capacity as securities intermediary hereby agrees that such security interest shall be subordinate to the security interest of the Indenture Trustee for the benefit of the Noteholders. The financial assets and other items deposited to the Trust Accounts will not be subject to deduction, set-off, banker's lien, or any other right in favor of any person other than the Indenture Trustee (except that the Indenture Trustee, in its capacity as securities intermediary may set off (i) the face amount of any checks

which have been credited to the Trust Accounts but are subsequently returned unpaid because of uncollected or insufficient funds, and (ii) all amounts due to it in respect of its customary fees and expenses for the routine maintenance and operation of the Trust Accounts;

(E) The Issuer shall instruct the Indenture Trustee to make withdrawals and payments from the Trust Accounts for the purpose of permitting the Indenture Trustee to carry out its duties under this Indenture;

(F) Each Trust Account provided for herein to be established and maintained by the Indenture Trustee shall be so established and maintained by the Indenture Trustee, as securities intermediary (in such capacity, the "Securities Intermediary"). Each item of "investment property" within the meaning of Section 9-102(a)(49) of the New York Uniform Commercial Code (which shall not be deemed to include the Financed Student Loans or the related notes evidencing the Financed Student Loans) or "money" within the meaning of Section 1-201(24) of the New York Uniform Commercial Code, that is (whether investment property, security, instrument or cash) credited to such a Trust Account shall be treated as a "financial asset" within the meaning of Section 8-102(a)(9) of the New York Uniform Commercial Code. The State of New York shall be deemed to be the Securities Intermediary's location for purposes of the New York Uniform Commercial Code, and each such Trust Account (as well as the securities entitlements related thereto) shall be governed by the laws of the State of New York; and

(G) Following the filing of any UCC financing statement with respect to this Indenture the Indenture Trustee hereby agrees to notify the Issuer six months prior to the expiration of such filing of the need to file continuation statements, and to the extent permitted by law, the Issuer shall execute and file such continuation statements, and provide a copy thereof to the Indenture Trustee along with an Opinion of Counsel to the effect that all action has been taken as is necessary to maintain the lien and security interest created by this Indenture.

(d) On each Distribution Date on which neither a Class B Note Interest Trigger nor a Class C Note Interest Trigger is in effect, the Administrator shall instruct the Indenture Trustee in writing (based on the information contained in the Administrator's Officer's Certificate and each related Servicer's Report delivered pursuant to the Administration Agreement) to make the following deposits and distributions to the Persons or to the account specified below by 11:00 a.m. (New York time), to the extent of the amount of Available Funds in the Collection Account, in the following order of priority (except as otherwise provided in Sections 5.04(b) or 5.04(c) and the Indenture Trustee shall comply with such instruction:

(1) FIRST, pro rata: (i) Indenture Trustee fees and expenses, Irish Paying Agent fees and expenses, Grantor Trustee fees and expenses, Owner Trustee fees and expenses, and Back-up Administrator fees and expenses in an aggregate amount not to exceed $250,000, per annum; (ii) Servicing Fees with respect to the Financed Student Loans due on such Distribution Date and all prior unpaid Servicing Fees allocated to the Financed

Student Loans up to the amount specified in the Servicing Agreement, and (iii) Administration Fees with respect to the Financed Student Loans up to the amount specified in the Administration Agreement;

(2) SECOND, to TERI, the additional guaranty fees pursuant to the TERI Guaranty Agreements, which will be deposited into the TERI Pledge Fund;

(3) THIRD, to the holders of each Class of Class A Notes, the Noteholders' Interest Distribution Amount for such Class A Notes on a *pro rata* basis;

(4) FOURTH, to the holders of the Class B Notes, the Noteholders' Interest Distribution Amount for the Class B Notes;

(5) FIFTH, to the holders of the Class C Notes, the Noteholders' Interest Distribution Amount for the Class C Notes;

(6) SIXTH, to the Reserve Account, an amount, up to the amount, if any, necessary to reinstate the balance of the Reserve Account to the greater of the amounts determined pursuant to clauses (b) and (c) of the definition of Specified Reserve Account Balance;

(7) SEVENTH, to TERI, to purchase Rehabilitated Financed Student Loans;

(8) EIGHTH, to the holders of (i) the Class A-1 Notes, until paid in full, then (ii) the Class A-2 Notes, until paid in full, then (iii) the Class A-3 Notes, until paid in full, then (iv) the Class A-4 Notes, until paid in full, then (v) the Class A-5-1 Notes, until paid in full, then (vi) the Class A-5-2 Notes, until paid in full, then (vii) the Class A-5-3 Notes, until paid in full, then (viii) the Class A-5-4 Notes, until paid in full, then (ix) the Class A-5-5 Notes, until paid in full, then (x) the Class A-5-6 Notes, until paid in full, then (xi) the Class A-5-7 Notes, until paid in full, then (xii) the Class A-5-8 Notes, until paid in full, then (xiii) the Class A-5-9 Notes, until paid in full, then (xiv) the Class A-5-10 Notes, until paid in full, then (xv) the Class A-5-11 Notes, until paid in full, then (xvi) the Class A-5-12 Notes, until paid in full, then (xvii) the Class A-5-13 Notes, until paid in full, then (xviii) the Class A-5-14 Notes, until paid in full, then (xix) the Class A-5-15 Notes, until paid in full, then (xx) the Class A-5-16 Notes, until paid in full, then (xxi) the Class A-5-17 Notes, until paid in full, then (xxii) the Class A-5-18 Notes, until paid in full, then (xxiii) the Class A-5-19 Notes, until paid in full, then (xxiv) the Class A-5-20 Notes, until paid in full, then (xxv) the Class A-5-21 Notes, until paid in full, then (xxvi) the Class A-5-22 Notes, until paid in full, then (xxvii) the Class A-5-23 Notes, until paid in full, then (xxviii) the Class A-5-24 Notes, until paid in full, then (xxix) the Class A-5-25 Notes, until paid in full, then (xxx) the Class B Notes, until paid in full, and finally, (xxxi) the Class C Notes, until paid in full, the Noteholders' Principal Distribution Amount; *provided*, however, that on and after the Stepdown Date and so long as no Subordinate Note Principal Trigger has occurred and remains in effect, the Class A Percentage of the Noteholders' Principal Distribution Amount will be payable to the Class A Notes (in the same order of priority set forth above), the Class B Percentage of the Noteholders' Principal Distribution Amount will be payable to the Class B Notes and

the Class C Percentage of the Noteholders' Principal Distribution Amount will be payable to the Class C Notes until paid in full;

(9) NINTH, pro rata: (i) any unreimbursed Advances to FMC and (ii) for all amounts in excess of the maximum amounts specified in priority FIRST: for Indenture Trustee fees and expenses pursuant to the Indenture; for Irish Paying Agent fees and expenses pursuant to the Irish Paying Agent Agreement; for Grantor Trustee fees and expenses pursuant to the Grantor Trust Agreement; Owner Trustee fees and expenses pursuant to the Trust Agreement; for Back-up Administrator fees and expenses pursuant to the Back-up Administration Agreement; indemnities, fees and expenses of the Servicer; and the portion of the Administration Fee and expenses allocated to the Notes and all unpaid Administration Fees and expenses from prior Collection Periods allocated to the Notes;

(10) TENTH, (a) if a Turbo Trigger is in effect, to the holders of the Notes, any remaining amounts as payment of principal allocated among the Noteholders as described in priority EIGHTH until the Outstanding Amount of each Class of Notes is reduced to zero;

(11) ELEVENTH, to the holders of the Class A-5 Notes any Prepayment Penalty for that Distribution Date and any Prepayment Penalties remaining unpaid from prior Distribution Dates; and

(12) TWELFTH, to FMC, any unpaid and accrued structuring advisory fees, and then to the Certificateholders, any remaining amounts.

Notwithstanding the foregoing, for each Distribution Date on which (i) a Class B Note Interest Trigger is in effect, amounts payable pursuant to priority FOURTH and priority FIFTH will instead be paid following priority EIGHTH, and (ii) a Class C Note Interest Trigger is in effect, amounts payable pursuant to priority FIFTH will be paid following priority EIGHTH.

SECTION 8.03 General Provisions Regarding Accounts. (a) So long as no Default shall have occurred and be continuing, all or a portion of the funds in the Trust Accounts shall be invested in Eligible Investments and reinvested by the Indenture Trustee upon Issuer Order, subject to the provisions of Section 8.01(b); provided, however, that funds in the Pre-Funding Account shall be invested only in Eligible Investments described in clause (a) of the definition thereof. All income or other gain from investments of moneys deposited in the Trust Accounts shall be deposited by the Indenture Trustee in the Collection Account, and any loss resulting from such investments shall be charged to such Trust Account. The Issuer will not direct the Indenture Trustee to make any investment of any funds or to sell any investment held in any of the Trust Accounts unless the security interest granted and perfected in such account will continue to be perfected in such investment or the proceeds of such sale, in either case without any further action by any Person, and, in connection with any direction to the Indenture Trustee to make any such investment or sale, if requested by the Indenture Trustee, the Issuer shall deliver to the Indenture Trustee an Opinion of Counsel, acceptable to the Indenture Trustee, to such effect.