Filed in Second Judicial District Court
2/13/2006 1:09:15 PM
Ramsey County, MN

*Execution version*

# SPECIAL SERVICING AGREEMENT

This Special Servicing Agreement, dated as of March 1, 2009 (this "Agreement"), is entered into by and among First Marblehead Education Resources, Inc. ("FMER"), as the Special Servicer (together with its successors and assigns, the "Special Servicer"), U.S. Bank National Association, as the Back-Up Special Servicer (the "Back-Up Special Servicer") and each of the Trusts listed on Schedule A attached hereto (the "Trusts").

WHEREAS, the Special Servicer, and other subservicing agents appointed from time to time by the Special Servicer, as provided herein, are experts in the management of student loan collections and default prevention services;

WHEREAS, each of the Trusts is appointing the Special Servicer as a Servicer under each Trust's respective Indenture, as listed on Schedule A attached hereto (the "Indentures"), to perform certain limited duties with respect to student loans (the "Student Loans") owned by the Trusts, including Student Loans that are delinquent or defaulted loans ("Delinquent Loans" and "Defaulted Loans," as defined below).

WHEREAS, the Trusts are appointing the Back-Up Special Servicer to serve in such capacity pursuant to the provisions of this Agreement;

NOW, THEREFORE, in consideration of the premises and the mutual covenants hereinafter set forth, the parties agree as follows:

Section 1.    Definitions. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Indentures. For purposes of this Agreement, the following capitalized terms shall have the respective meanings set forth below:

"Defaulted Loan" means any Student Loan as to which any of the following: (a) a TERI Guaranty Event has occurred, (b) the Servicer has determined that a TERI Guaranty Event has occurred and has submitted documents supporting that determination to the Special Servicer or (c) if the Student Loan is no longer subject to a valid TERI Guaranty Agreement, the Servicer has determined that a borrower has defaulted under his respective student loan credit agreement and has notified the Special Servicer of such occurrence.

"Delinquent Loan" means a Student Loan that is at least 31 days past due but is not yet a Defaulted Loan.

Section 2.    Appointment; Special Servicing Duties.

A.    Appointment. Each of the Trusts hereby hires, designates and appoints the Special Servicer as a Servicer under each Trust's respective Indenture to perform the special servicing duties (as defined below), and the Special Servicer accepts such appointment and agrees to perform such duties with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, in accordance with the terms of this Agreement and each Indenture.

B.    Special Services. The Special Servicer shall take such actions as it shall deem reasonably necessary or appropriate to administer and oversee Early Awareness Services (as

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

defined below) with respect to Student Loans as generally described below and the enforcement and collection of Delinquent Loans and Defaulted Loans to maximize the collection of amounts payable on the Student Loans (collectively, the "Special Services"), including without limitation:

(i)    Retaining and entering into agreements with licensed collection agencies and other legally authorized persons (the "Subservicers") engaged in providing default prevention services, in form and substance satisfactory to the Special Servicer, pursuant to which the Subservicers, for and on behalf of the applicable Trust, will contact borrowers with respect to the Student Loans, including without limitation borrowers with respect to Delinquent Loans or Defaulted Loans, and seek enforcement and collection of such Loans;

(ii)    At the sole discretion of the Special Servicer, (a) performing periodic audits of Subservicers for compliance and performance reviews and (b) providing oversight of the activities of Subservicer with regard to account management, litigation assistance, and/or settlement strategies;

(iii)    Replacing any Subservicer who, in the sole judgment of the Special Servicer, is deemed to be deficient or negligent in performing the duties outlined in its subservicing agreement with the Special Servicer;

(iv)    Requiring in the applicable subservicing agreement, the Subservicers to provide certain monthly reports to the Special Servicer with respect to Student Loans serviced by such Subservicer, in each case, in form and substance satisfactory to the Special Servicer;

(v)    With respect to Student Loans, retaining one or more Subservicers to perform Early Awareness Services. "Early Awareness Services" shall mean such services determined by the Special Servicer to be desirable to reduce the number and percentage of student borrowers becoming subsequently delinquent in the repayment process, including without limitation, services that are intended to alert student borrowers and coborrowers as to their repayment obligations, available borrower benefits (such as ACH automatic payments) and contact information for the Servicer. Early Awareness Services may include both telephonic and mail contacts, as well as address verification and skip tracing;

(vi)    With respect to Delinquent Loans, the Special Servicer shall transfer all collection activities from the applicable Servicer to Subservicers who will seek enforcement and collection of such Loans and provide monthly reports to the Special Servicer in form and substance satisfactory to the Special Servicer, provided that the Special Servicer shall not be required to transfer such collection activities if First Marblehead Data Services, Inc. ("FMDS") is the Administrator and FMDS determines that collections would not be maximized on such Delinquent Loans if the collection activities were transferred to Subservicers;

Filed in Second Judicial District Court
2/07/2016 1:08:15 PM
Ramsey County, MN

(vii)      With respect to Defaulted Loans, review claim packages as described in subparagraph (xi);

(viii)      With respect to Defaulted Loans that are the subject of a TERI Guaranty Event, as determined by the Special Servicer: (a) submit a claim under the Guaranty Agreement to TERI for the benefit of the Trust, and/or (b) refer the loan for collection by a Subservicer on behalf of such Trust;

(ix)      With respect to Defaulted Loans that are over 180 days delinquent, the Special Servicer will cause the Subservicer to (a) roll or reassign accounts from 180 days delinquent into a default recovery queue for collection efforts and (b) remit weekly to the FMER Collection Account (as hereinafter defined) for the receipt of collections from a Subservicer for the benefit of the respective trusts as their interest may appear, cash collected on all Defaulted Loans serviced by such Subservicer for the Trusts.

(x)      Establishing and maintaining an account or accounts ("FMER Collection Account") in the name of the Indenture Trustee (or its agent or custodian) for benefit of the applicable secured parties of the Trusts under the respective Indentures for the deposit by a Subservicer of net collections on all Defaulted Loans serviced by such Subservicer for the respective Trust and in connection therewith preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi)      Reviewing claim packages (which packages shall contain the information, reports and documents required in the Program Manual for the related TERI Guaranty Agreement and identified on the checklist or lists attached hereto as Exhibit I) prepared by the Servicer with respect to Defaulted Loans to confirm, on the basis of such review, that (a) Servicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii)      Receiving reports from Servicers and Subservicers related to payments with respect to Delinquent Loans and Defaulted Loans and updating records with respect to Student Loans as interest and other charges accrue and amounts are collected;

(xiii)      Remitting or causing the Subservicer to remit net collections received on Defaulted Loans to the FMER Collection Account;

(xiv)      With respect to Defaulted Loans, the Special Servicer shall transfer all collection activities to Subservicers, provided that the Special Servicer shall not be required to transfer such collection activities if FMDS is the Administrator and FMDS determines that it is likely that collections would

TA122

Filed in Second Judicial District Court
2/18/2006 1:08:15 PM
Ramsey County, MN

not be maximized on such Defaulted Loans if the collection activities were transferred to Subservicers;

(xv)    Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Delinquent Loans and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xvi)    Negotiating any settlement or compromise of any claim with respect to a Defaulted Loan, which in the reasonable judgment of the Special Servicer or the applicable Subservicer is more likely to produce greater proceeds of collection than by virtue of a forbearance, payment arrangement or other accommodation with the borrower.

Section 3.    Incorporation.    As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Special Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Special Servicer or the Back-Up Special Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.    Subservicers.    In carrying out its duties under this Agreement with respect to the Student Loans, including Delinquent Loans and Defaulted Loans, the Special Servicer may retain and employ Subservicers to perform any of the Special Services with respect to the Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Student Loans, the costs of such services with respect to Delinquent Loans shall be subject to the Monthly Reimbursement Limit described in Section 5(B) below.

Section 5.    Servicing Fee.    As compensation for the performance of the Special Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Special Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.    A fixed fee at a rate equal to 1/12 of 0.01% of the aggregate outstanding Pool Balance (for the Student Loans owned by such Trust) as of the last day of the prior calendar month.

B.    Reimbursement by each Trust for all of the Special Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Special Servicer pursuant to this Agreement and any other expenses incurred by the Special Servicer on behalf of each Trust, including costs and expenses incurred by the Special Servicer in establishing and maintaining the FMER Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Defaulted Loans shall be paid from such collections prior to remittance to such FMER Collection Account, as described in Section 2(B)(x) and (xiii) above. The reimbursement described in this Section 5(B) with respect to Special Services for Delinquent Loans (but not

TA123

Filed in Second Judicial District Court
2/19/2016 1:08:15 PM
Ramsey County, MN

with respect to Early Awareness Services for Student Loans or with respect to Special Services for Defaulted Loans) shall not exceed the dollar amount listed for each Trust on <u>Schedule B</u>, attached hereto, in the aggregate per calendar month per respective Trust (the "<u>Monthly Reimbursement Limit</u>"). The reimbursement described in this Section 5(B) with respect to Special Services for Early Awareness Services for Student Loans shall not exceed the dollar amount listed for each Trust on <u>Schedule C</u>, attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

      C.     The Administrator of each Trust may (and shall, at the direction of the Back-Up Special Servicer if it shall be acting as Special Servicer) arrange direct payments of the Servicing Fee from each Trust to the Subservicers by delivering written instructions to the Indenture Trustee to make such payments, as the same may be calculated, apportioned and charged to each of the Trusts by the Administrator based on the expenses of the Subservicers relating to the Trust's private student loan portfolio. The payment of the Servicing Fee payable by each Trust shall be solely an obligation of such Trust, payable in accordance with the Indentures, and none of the parties hereto, including the Back-Up Special Servicer in such capacity or in its capacity as successor Special Servicer, or any of the Trusts shall be liable to any Subservicer for any amounts owed by FMER pursuant to its arrangements with Subservicers except as provided in Sections 5(A) and (B) hereof to the extent funds are reimbursed by the Trusts.

      Section 6.     <u>Term of Agreement; Resignation and Removal of Special Servicer</u>.

      A.     This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust. The Back-Up Special Servicer's duties and obligations hereunder (including in its capacity as successor Special Servicer, if applicable) and its right to receive compensation as provided in Section 8(F) shall terminate upon the payment in full of the Notes under the related Indenture.

      B.     Subject to Section 6(E) of this Agreement, the Special Servicer may resign its duties hereunder by providing the Trusts, the Administrator, the Back-Up Special Servicer and the Indenture Trustee with at least 10 days' prior written notice.

      C.     [RESERVED]

      D.     Subject to Section 6(E) of this Agreement, the Indenture Trustee shall remove the Special Servicer by delivering to the Special Servicer written notice of termination if any of the following events shall occur:

          (i)     The Special Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

          (ii)    A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Special Servicer under any applicable bankruptcy, insolvency or other similar law

TA124

Filed in Second Judicial District Court
2/07/2066 1:08:15 PM
Ramsey County, MN

now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Special Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs;

(iii)    The Special Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due; or

(iv)    Either: (a) The First Marblehead Corporation ("FMC") no longer has sufficient assets to pay debts as they come due in the ordinary course of FMC's business or (b) FMC reports in its consolidated financial statements cash, cash equivalents, investments and federal funds sold, in the aggregate, of less than $30 million at the end of any fiscal quarter.

The Special Servicer agrees that if any of the events specified in clauses (ii), (iii) or (iv) of this Section shall occur, it shall give written notice thereof to the Owner Trustee, the Back-Up Special Servicer, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of notice of termination), the Special Servicer shall (i) notify NCO (or, if applicable, such other Subservicer or Subservicers under such agreements with Subservicers as may then be in effect) of its removal (and provide the Back-Up Special Servicer with a copy of such notice), and (ii) cause the Servicers to provide to NCO (or such other Subservicer or Subservicers) such data files, information and access to Servicer's systems as may be required by the NCO Agreement (or successor agreements) or as may be necessary or desirable for NCO (or such Subservicer or Subservicers) to perform under the NCO Agreement (or such other agreements with Subservicers as may then be in effect).

E.    No resignation or removal of the Special Servicer pursuant to this Section shall be effective until a successor Special Servicer (which Servicer, if other than the Back-Up Special Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Special Servicer is bound hereunder, subject, with respect to the Back-Up Special Servicer, the terms of this Agreement. The appointment of any successor Special Servicer (other than the Back-Up Special Servicer) shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

[FG023935-4 1]

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

Section 7. Action upon Termination, Resignation or Removal. Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Special Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Student Loans then in the custody of the Special Servicer pursuant to this Agreement. In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Special Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and the Back-Up Special Servicer and take all reasonable steps requested to assist the Trusts and Back-Up Special Servicer in making an orderly transfer of the duties of the Special Servicer to the Back-Up Special Servicer or other successor Special Servicer, as applicable.

Section 8. Back-Up Special Servicer.

A. In the event of the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement, the Back-Up Special Servicer shall become the Special Servicer and shall assume the rights, duties and obligations of the Special Servicer to the extent expressly required to be assumed and performed by the Back-Up Special Servicer under this Agreement; provided that the Back-Up Special Servicer shall not under any circumstances be responsible for any representations and warranties made by FMER as the Special Servicer, or for any payment and indemnity obligations of FMER as the Special Servicer under this Agreement, or for any liability incurred by FMER as the Special Servicer prior to the date of the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer under this Agreement or for any obligation to pay the fees and expenses of any Subservicer (except to the extent it receives funds from the Trusts for such purposes). In addition, nothing in this Agreement shall be construed to require or permit the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) to undertake direct collection or enforcement activities including, without limitation, Early Awareness Services, with respect to consumer borrowers or other consumer obligors. Notwithstanding any term hereof or elsewhere to the contrary, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall have no liability hereunder or otherwise in the event that it is unable to engage one or more Subservicers, upon reasonably acceptable terms and conditions (including compensation) and in accordance with the applicable terms and requirements of this Agreement, to perform Early Awareness Services, enforcement, collection and servicing of Delinquent Loans and Defaulted Loans; so long as the Back-Up Special Servicer shall have taken commercially reasonable efforts to engage one or more Subservicers to perform such Special Services. Notwithstanding the foregoing, the Back-Up Special Servicer, if it is unwilling or unable to so act, may designate a successor Special Servicer under this Agreement, subject to the satisfaction of the conditions set forth in Sections 6(E) hereof.

B. In the event that the Special Servicer resigns or is removed as Special Servicer and the Back-Up Special Servicer begins performing Special Servicer's duties as Special Servicer under this Agreement, the Back-Up Special Servicer shall be compensated as the Special Servicer in accordance with this Agreement. Upon assuming the duties of Special Servicer pursuant to this Section 8, except as otherwise provided herein, the Back-Up Special

TA126

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

Servicer will be subject to all of the terms and conditions of this Agreement as "Special Servicer" insofar as such terms and conditions apply to the Back-Up Special Servicer's duties as set forth above. Without limiting the foregoing, in the performance or non-performance of its duties contemplated by this Section 8, the Back-Up Special Servicer (in its capacity as Special Servicer or otherwise) shall be subject to the same standard of care as the Special Servicer and shall be entitled to the same rights, privileges, protections, immunities and benefits given to the Special Servicer hereunder. The Back-Up Special Servicer as successor Special Servicer may employ and act through agents, attorneys and independent contractors and shall not be responsible or accountable for performance of such agents and independent contractors appointed by it with due care. In carrying out the duties or obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer may enter into transactions or otherwise deal with any of its Affiliates. In no event will the Back-Up Special Servicer be responsible for the obligations of the Special Servicer (or any Servicer or Subservicer) or be responsible for any actions, omissions or malfeasance of the Special Servicer under this Agreement prior to the assumption by the Back-Up Special Servicer of the obligations of the Special Servicer (or any Servicer or Subservicer) under this Agreement or any agreement with a Servicer or Subservicer. The Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) shall not be liable for any errors contained in any reports, certificate or other data or document delivered to the Back-Up Special Servicer (in such capacity and in its capacity as successor Special Servicer) hereunder or on which it must rely in order to perform its obligations hereunder (including in its capacity as Special Servicer). In no event shall the Back-Up Special Servicer have any responsibility to monitor, supervise, verify or administer the performance of the Special Servicer or any Servicer or Subservicer, prior to the date it assumes the duties of the Special Servicer. The Back-Up Special Servicer (including in its capacity as successor Special Servicer, if applicable) undertakes to perform only such duties and obligations as are specifically set forth in this Agreement, it being expressly understood by all parties hereto that there are no implied duties or obligations of the Back-Up Special Servicer hereunder. In no event will the Back-Up Special Servicer (including in its capacity as successor Special Servicer) be liable for any indirect damages, lost profits, special, punitive, or consequential damages which arise out of or in connection with the services contemplated by this Agreement even if the Back-Up Special Servicer has been informed of the possibility of such damages. If the Back-Up Special Servicer (including in its capacity as successor Special Servicer) is prevented from fulfilling its obligations hereunder as a result of government actions, regulations, fires, strikes, accidents causing a material disruption in the operations of the Back-Up Special Servicer, acts of god or other causes beyond its control, its obligations shall be suspended for a reasonable time during which such conditions exist.

C.     In order to facilitate the performance of the Back-Up Special Servicer's duties under this Agreement, for a period of not less than 120 days following the resignation or removal of the Special Servicer pursuant to Section 6 of this Agreement the Special Servicer will provide to the Back-Up Special Servicer reasonable access, during normal business hours and upon reasonable prior notice, to all files, systems and employees of the Special Servicer then used in the provision of the Special Services. Without limiting the generality of the foregoing, the Special Servicer agrees to cooperate with the Back-Up Special Servicer (or its designee) to facilitate the orderly transfer of its duties under this Agreement, including without limitation, notifying the Servicers, Subservicers, the Custodians, their collection agents and other appropriate parties of the transfer of the Special Servicer function and providing (or causing the

TA127

Filed in Second Judicial District Court
2/17/2016 1:09:15 PM
Ramsey County, MN

Servicers, Subservicers and/or Custodians, as applicable, to provide) the Back-Up Special Servicer with all documents and records in electronic or other form reasonably requested by the Back-Up Special Servicer to enable the Back-Up Special Servicer or its designee to assume the Special Servicer's functions under this Agreement (including without limitation such information relating to Delinquent Loans and Defaulted Loans) and shall transfer (and cause any collection agent to transfer) to the Indenture Trustee for deposit into the Collection Account for the benefit of each Trust net collections received by it with respect to the Defaulted Loans.

D.    In the event that the Back-Up Special Servicer begins performing the Special Servicer's duties, it shall be authorized to accept and rely on all of the accounting, records (including computer records) and work of the Special Servicer, any Servicer or any Subservicer (collectively, the "Predecessor Work Product") without any audit or other examination thereof, and it shall have no duty, responsibility, obligation or liability for the acts and omissions of the Special Servicer or of a Servicer or Subservicers. If any error, inaccuracy, omission or incorrect or non-standard practice or procedure (collectively, "Errors") exist in any Predecessor Work Product and such Errors make it materially more difficult to service or should cause or materially contribute to the successor Special Servicer making or continuing any Errors (collectively, "Continued Errors"), the Back-Up Special Servicer as successor Special Servicer or otherwise shall have no duty, responsibility, obligation or liability for such Continued Errors; provided that the Back-Up Special Servicer agrees to use its commercially reasonable efforts to prevent further Continued Errors. In the event that the Back-Up Special Servicer upon succeeding to the Special Servicer becomes aware of Errors or Continued Errors, it shall use commercially reasonable efforts to reconstruct and reconcile such data in order to correct such Errors and Continued Errors and to prevent future Continued Errors. In performing the obligations of the Special Servicer under this Agreement, the Back-Up Special Servicer in its capacity as successor Special Servicer, shall be entitled to rely conclusively on the reports and other information which it may receive from a Servicer or Subservicer, including as to the accuracy and completeness thereof, and shall not be required to reconcile such information nor shall it be required to otherwise supervise or monitor the performance of such Servicers or Subservicers. The Back-Up Special Servicer (including in its capacity as Special Servicer) shall have no liability for the acts or omissions of any such Servicer or Subservicer in performing its obligations under the applicable Servicing Agreement.

E.    Subject to the foregoing, the Back-Up Special Servicer will be required to begin performing its duties as successor Special Servicer under this Agreement within 30 days of receiving notice of the resignation or removal of FMER as Special Servicer under this Agreement (or, if later, the effective date of the resignation or removal). Administrator shall be responsible for and hereby covenants to provide such notice promptly upon such resignation or removal of FMER as Special Servicer. Out of pocket costs and expenses (including the fees of its counsel and agents) incurred by the Back-Up Special Servicer in connection with the transition of services hereunder during the 120 day period following notice of the resignation or removal of FMER as Special Servicer (including without limitation any costs and expenses associated with any Subservicer engagement described in Section 8G below) shall be borne by FMER. To the extent that such expenses are not paid by FMER (but without limiting or discharging its liability therefor), such expenses shall be paid by FMDS, as Administrator who may seek reimbursement from the Trusts (and to the extent not paid by the Administrator, such expenses shall be reimbursed to the Back-Up Special Servicer by the Trusts first, as a Servicer

TA128

expense up to the Monthly Reimbursement Limit, with any remaining amounts for a Distribution Date payable as indemnities, fees and expenses of the Servicer after the payment on such date of the principal and interest due on the Notes on such Distribution Date), such reimbursement by the Trusts to be apportioned in accordance with the respective Pool Balance of Student Loans owned by each Trust as of the resignation or removal of FMER.

F.    As compensation for the performance of the Back-Up Special Servicer's obligations under this Agreement, the Back-Up Special Servicer shall be entitled to a monthly fee of $1,000 per Trust payable by the Trusts on each Distribution Date as a Servicing Fee pursuant to the terms of each Indenture, until such time as the Back-Up Special Servicer either begins performing the duties of the Special Servicer under this Agreement or otherwise ceases to be the Back-Up Special Servicer.

G.    The initial Special Servicer hereby represents and warrants that the Default Prevention and Collection Services Agreement, dated as of March 1, 2009 (the "NCO Agreement"), between the Special Servicer and NCO Financial Systems, Inc. ("NCO") (attached hereto as Exhibit II) is in full force and effect; and the initial Special Servicer hereby covenants and agrees with the Back-Up Special Servicer that the initial Special Servicer shall at all times maintain in full force (i) the NCO Agreement, and the engagement of NCO thereunder as Subservicer, or (ii) one or more other agreements upon terms reasonably acceptable to the Back-Up Special Servicer, with a Subservicer or Subservicers reasonably acceptable to the Back-Up Special Servicer and capable of performing the obligations of a Subservicer as contemplated by this Agreement. Without limiting or discharging any other liability or obligation the Special Servicer may have hereunder or otherwise in respect thereof, the initial Special Servicer hereby expressly agrees to indemnify and hold harmless the Back-Up Special Servicer for and from any and all losses, liabilities, damages, costs and expenses (including reasonable attorney's fees) that may be suffered, incurred or paid by the Back-Up Special Servicer as a result of, or arising from, any breach on the part of the Special Servicer of the representations, warranties, covenants or agreements set forth in the preceding sentence, including without limitation any cost associated with the engagement by the Back-Up Special Servicer of one or more acceptable Subservicers necessitated thereby. FMER shall give 10 days' prior notice to the Back-Up Special Servicer of any amendment, modification or waiver relating to the NCO Agreement (or such other agreement or agreements contemplated in subclause (ii) above), which notice shall be accompanied by the form of the proposed amendment, modification, waiver or agreement or agreements, as applicable.

Section 9.    Representations and Warranties.

A.    The Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Back-Up Special Servicer:

(i)    Organization and Good Standing. The Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

(ii) No Violation. Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Special Servicer. The Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Special Servicer.

(iii) Authorization and Enforceability. The execution and delivery by the Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Special Servicer with the terms hereof are within the powers of the Special Servicer, and have been duly authorized by all necessary action on the part of the Special Servicer. All organizational resolutions and consents necessary for the Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Special Servicer and constitutes the legal, valid and binding obligation of the Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and

TA130

Filed in Second Judicial District Court
2/13/2006 1:09:15 PM
Ramsey County, MN

valid execution, delivery, and performance of this Agreement by the Special Servicer.

(iv)   <u>Approvals and Permits</u>. The Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Special Servicer to perform its obligations hereunder.

(v)   <u>No Litigation</u>. No litigation is pending or, to the best of the Special Servicer's knowledge, threatened against it, which, if determined adversely to the Special Servicer would prohibit the Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Special Servicer.

B.   The Back-Up Special Servicer hereby makes the following representations and warranties to each of the Trusts and to the Special Servicer:

(i)   <u>Organization and Good Standing</u>. The Back-Up Special Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii)   <u>No Violation</u>. Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Back-Up Special Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Back-Up Special Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Back-Up Special Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Back-Up Special Servicer of this Agreement, nor the consummation by it

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

of the transactions contemplated hereby, nor the performance of and compliance by the Back-Up Special Servicer with the provisions hereof, will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Back-Up Special Servicer. The Back-Up Special Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Back-Up Special Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Back-Up Special Servicer.

(iii)  <u>Authorization and Enforceability</u>. The execution and delivery by the Back-Up Special Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Back-Up Special Servicer with the terms hereof are within the powers of the Back-Up Special Servicer, and have been duly authorized by all necessary action on the part of the Back-Up Special Servicer. All organizational resolutions and consents necessary for the Back-Up Special Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Back-Up Special Servicer and constitutes the legal, valid and binding obligation of the Back-Up Special Servicer, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Back-Up Special Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Back-Up Special Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Back-Up Special Servicer.

(iv)  <u>Approvals and Permits</u>. The Back-Up Special Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Back-Up Special Servicer to perform its obligations hereunder.

[F0023035.4 ]

13

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

(v) <u>No Litigation</u>.  No litigation is pending or, to the best of the Back-Up Special Servicer's knowledge, threatened against it, which, if determined adversely to the Back-Up Special Servicer would prohibit the Back-Up Special Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Back-Up Special Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Back-Up Special Servicer.

Section 10. <u>Indemnification</u>.  The Special Servicer will indemnify each of the Trusts, the Owner Trustee, the Back-Up Special Servicer (including in its capacity as Special Servicer) and the Indenture Trustee and their officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Back-Up Special Servicer or the Indenture Trustee (as applicable) and their agents, arising out of the willful misconduct, negligence or bad faith of the Special Servicer (or its agents) in the performance of the Special Servicer's duties contemplated by this Agreement; provided that neither the Special Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Administrator or the Indenture Trustee or in accordance with this Agreement and provided further however that the Back-Up Special Servicer (in its capacity as successor Special Servicer) shall only be responsible for any such loss or expense to the extent such are determined to be proximately caused by its own gross negligence or willful misconduct.  To the extent any indemnification amounts are not paid by the Special Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Student Loans then owned by each Trust.

Section 11. <u>Records; Inspection</u>.  The Special Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours.  The Special Servicer hereby grants the Back-Up Special Servicer and the Indenture Trustee the right for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Special Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Special Servicer and the Indenture Trustee.  All expenses associated with the performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(B).

Section 12. <u>Reporting; Additional Information to be Furnished</u>.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Back-Up Special Servicer and the Administrator on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Delinquent Loans or Defaulted Loans in a form satisfactory to the Administrator.  On the tenth Business Day after the end of each calendar month, the Special Servicer shall furnish the Administrator on behalf of the Trusts and the Back-Up Special Servicer an electronically transferred data file containing recovery data for Defaulted Loan owned by each respective Trust and other information as required by Regulation AB, each

TA133

for investor reporting purposes. The Special Servicer shall furnish to the Administrator on behalf of the Trusts and the Back-Up Special Servicer from time to time such additional information regarding the Student Loans, including Delinquent Loans or Defaulted Loans, as the Administrator on behalf of the Trusts or the Back-Up Special Servicer shall reasonably request.

Section 13.   Subservicing Agreements.   The Special Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Student Loan and its performance. Each subservicing agreement shall be terminable by the Special Servicer (including for the avoidance of doubt, the Back-Up Special Servicer acting as successor Special Servicer) upon thirty days written notice, and shall provide that any successor to the Special Servicer shall succeed to the Special Servicer thereunder. The Special Servicer shall promptly provide the Back-Up Special Servicer copies of all existing subservicing agreements with a Subservicer, including the NCO Agreement, and any additional subservicing agreements between the Special Servicer and Subservicers or any amendments to existing subservicing agreements with a Subservicer entered into after the date of this Agreement.

Section 14.   Regulation AB.   On or before September 15 of each calendar year beginning in 2009, the Special Servicer shall deliver to the Administrator any reports, servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Special Servicer or the Back-Up Special Servicer is required to deliver to the Administrator the documents described in this Section 14, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Special Servicer or of the Back-Up Special Servicer as successor Special Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 15.   Security Interest.   Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect of, the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 16.   Amendments.   This Agreement may be amended from time to time by the parties hereto, including amendment of Schedule A and Schedule B, attached hereto, to add additional trusts, provided that any amendment must be accompanied by the written consent of the Administrator and upon satisfying the Rating Agency Condition.

Section 17.   Independence of the Special Servicer.   For all purposes of this Agreement, the Special Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its

TA134

Filed in Second Judicial District Court
2/07/2016 1:08:15 PM
Ramsey County, MN

obligations hereunder. Unless expressly authorized by the Trusts, the Special Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 18. <u>No Joint Venture</u>. Nothing contained in this Agreement (i) shall constitute the Special Servicer or Back-Up Special Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of the others.

Section 19. <u>Other Activities of the Special Servicer</u>. Nothing herein shall prevent the Special Servicer or Back-Up Special Servicer or their Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 20. <u>Notices</u>. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Special Servicer, to:

> The First Marblehead Corporation
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Corporate Law Department

If to the Back-Up Special Servicer, to:

> U.S. Bank National Association
> Corporate Trust – Structured Finance
> One Federal Street, Third Floor
> Boston, Massachusetts 02110
> Attention: David Duclos
> Phone: 617-603-6409
> Fax: 617-603-6638

> U.S. Bank National Association
> c/o U.S. Bank Portfolio Services
> 1310 Madrid, Suite 103
> Marshall, Minnesota 56258
> Attention: Joe Andries
> Phone: 507-532-7129
> Fax: 866-806-0755

{F0023035.4}

16

TA135

Filed in Second Judicial District Court
2/07/2006 1:09:15 PM
Ramsey County, MN

If to the Trusts or the Indenture Trustee, to:

> The address set forth in the applicable Indenture
>
> With a copy to:
>
> First Marblehead Data Services, Inc.
> The Prudential Tower
> 800 Boylston Street - 34th Floor
> Boston, MA 02199-8157
> Attention: Ms. Rosalyn Bonaventure

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 21.    Notice to Noteholders. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Special Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed FMER as Special Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 22.    Miscellaneous.

A.    Successors and Assigns. This Agreement may not be assigned by the Special Servicer unless such assignment is previously consented to in writing by the Indenture Trustee, and the Back-Up Special Servicer and unless each Rating Agency, after having been given 10 days' prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee hereunder in the same manner as the Special Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Special Servicer, without the consent of the Indenture Trustee or the Back-Up Special Servicer either (i) to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Special Servicer or (ii) to Union Federal Savings Bank or any of its subsidiaries; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Special Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B.    Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

[F0023935.4 ]

17

TA136

Filed in Second Judicial District Court
2/07/2016 1:09:15 PM
Ramsey County, MN

C.    Headings.  The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or effect of this Agreement.

D.    Counterparts.  This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E.    Severability.  Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F.    Limitation of Liability of Owner Trustee.  Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts.  For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G.    Third Party Beneficiary.  The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H.    No Petition.  The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Transaction Document as defined in the Indenture.

I.    Grant.  Each Trust hereby acknowledges that the Servicing Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture.  Each Trust hereby Grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Holders of Notes and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing.  The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral.  By its signature below, the

TA137

Filed in Second Judicial District Court
2/16/2016 1:08:15 PM
Ramsey County, MN

Indenture Trustee on behalf of the holders of Notes and other secured parties as applicable, acknowledges such Grant.

[SIGNATURE PAGE FOLLOWS]

[F0023935.4]

TA138

Filed in Second Judicial District Court
2/17/2006 1:08:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____
    Name:
    Title: TREASURER

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:
    Title:

Each of the Trusts listed on <u>Schedule A</u>, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____
    Name:
    Title: **Rosalyn Bonaventure**
          **President**
          **First Marblehead Data Services**

{F0023935.2 }10129599\V-6

TA139

Filed in Second Judicial District Court
2/17/2016 11:09:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _____
    Name:
    Title:

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:   Joseph Andries
    Title:   Senior Vice President

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee

By: _____
    Name:
    Title:

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _____
    Name:
    Title:

(P0023935.2 )

TA140

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

First Marblehead Education Resources, Inc., as the Special Servicer

By: _Kill Roger_ _____
    Name:
    Title: _Treasurer_

U.S. Bank National Association, as the Back-Up Special Servicer

By: _____
    Name:
    Title:

Each of the Trusts listed on Schedule A, attached hereto

By: Wilmington Trust Company, not in its
    individual capacity but solely as Owner
    Trustee

By: _Dorri Costello_ _____
    Name:   Dorri Costello
    Title: Financial Services Officer

ACKNOWLEDGED AND CONFIRMED:

First Marblehead Data Services, Inc., as Administrator

By: _Roslyn Bonaventure_ _____
    Name:
    Title:    Rosalyn Bonaventure
             President
      First Marblehead Data Services

ACKNOWLEDGED:

U. S. Bank National Association, as Indenture
Trustee for each of the Indentures listed on
Schedule A attached hereto

By: _____

    Name:
    Title:

       David Duclos
       Vice President

{F0023935.2.}

TA142

## SCHEDULE A

**Trusts:**

- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2;
- The National Collegiate Student Loan Trust 2005-3;
- The National Collegiate Student Loan Trust 2006-1;
- The National Collegiate Student Loan Trust 2006-2;
- The National Collegiate Student Loan Trust 2006-3;
- The National Collegiate Student Loan Trust 2006-4;
- The National Collegiate Student Loan Trust 2007-1; and
- The National Collegiate Student Loan Trust 2007-2.

**Indentures:**

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005;
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005;
- The National Collegiate Student Loan Trust 2006-1, dated as of March 1, 2006;
- The National Collegiate Student Loan Trust 2006-2, dated as of June 1, 2006;
- The National Collegiate Student Loan Trust 2006-3, dated as of September 1, 2006;
- The National Collegiate Student Loan Trust 2006-4, dated as of December 1, 2006;
- The National Collegiate Student Loan Trust 2007-1, dated as of March 1, 2007; and
- The National Collegiate Student Loan Trust 2007-2, dated as of June 1, 2007.

{F0023935.4 }

Filed in Second Judicial District Court
2/17/2016 1:09:15 PM
Ramsey County, MN

# SCHEDULE B

[Schedule of Reimbursement Limits per Trust by Calendar Month]

{F0023935.4 }

TA144

62-TR-CV-16-5

Schedule B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 02/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 82,000.00 | 57,000.00 | 41,000.00 | 88,000.00 | 57,000.00 | 62,000.00 | 57,000.00 |
| 03/2009 | 36,000.00 | 41,000.00 | 57,000.00 | 46,000.00 | 36,000.00 | 82,000.00 | 57,000.00 | 41,000.00 | 86,000.00 | 57,000.00 | 62,000.00 | 62,000.00 |
| 04/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 86,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 05/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 86,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 06/2009 | 21,000.00 | 26,000.00 | 52,000.00 | 41,000.00 | 31,000.00 | 77,000.00 | 52,000.00 | 41,000.00 | 86,000.00 | 57,000.00 | 62,000.00 | 67,000.00 |
| 07/2009 | 16,000.00 | 18,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 46,000.00 | 53,000.00 | 58,000.00 |
| 08/2009 | 16,000.00 | 16,000.00 | 42,000.00 | 32,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 46,000.00 | 53,000.00 | 58,000.00 |
| 09/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 42,000.00 | 37,000.00 | 80,000.00 | 48,000.00 | 53,000.00 | 58,000.00 |
| 10/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 11/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 37,000.00 | 42,000.00 | 48,000.00 |
| 12/2009 | 16,000.00 | 16,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 01/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 02/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 42,000.00 | 48,000.00 |
| 03/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 27,000.00 | 21,000.00 | 53,000.00 | 37,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 04/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 22,000.00 | 21,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 05/2010 | 11,000.00 | 11,000.00 | 37,000.00 | 22,000.00 | 21,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 64,000.00 | 42,000.00 | 48,000.00 | 48,000.00 |
| 06/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 43,000.00 | 48,000.00 |
| 07/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 44,000.00 | 49,000.00 |
| 08/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 44,000.00 | 49,000.00 |
| 09/2010 | 11,000.00 | 11,000.00 | 38,000.00 | 27,000.00 | 16,000.00 | 49,000.00 | 33,000.00 | 27,000.00 | 60,000.00 | 38,000.00 | 49,000.00 | 49,000.00 |
| 10/2010 | 11,000.00 | 11,000.00 | 39,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 44,000.00 | 49,000.00 |
| 11/2010 | 11,000.00 | 11,000.00 | 33,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 44,000.00 | 44,000.00 |
| 12/2010 | 11,000.00 | 11,000.00 | 33,000.00 | 27,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 44,000.00 | 44,000.00 |
| 01/2011 | 11,000.00 | 11,000.00 | 33,000.00 | 22,000.00 | 16,000.00 | 44,000.00 | 33,000.00 | 22,000.00 | 55,000.00 | 33,000.00 | 44,000.00 | 44,000.00 |
| 02/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 28,000.00 | 22,000.00 | 56,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 03/2011 | 11,000.00 | 11,000.00 | 27,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 28,000.00 | 22,000.00 | 56,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 04/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 28,000.00 | 22,000.00 | 56,000.00 | 38,000.00 | 38,000.00 | 44,000.00 |
| 05/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 16,000.00 | 49,000.00 | 28,000.00 | 23,000.00 | 60,000.00 | 34,000.00 | 39,000.00 | 44,000.00 |
| 06/2011 | 11,000.00 | 11,000.00 | 22,000.00 | 22,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 60,000.00 | 34,000.00 | 39,000.00 | 39,000.00 |
| 07/2011 | 6,000.00 | 11,000.00 | 22,000.00 | 17,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 60,000.00 | 34,000.00 | 39,000.00 | 39,000.00 |
| 08/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 17,000.00 | 51,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 39,000.00 | 39,000.00 | 39,000.00 |
| 09/2011 | 6,000.00 | 11,000.00 | 25,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 39,000.00 | 34,000.00 | 34,000.00 |
| 10/2011 | 6,000.00 | 11,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 11/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 51,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 12/2011 | 6,000.00 | 6,000.00 | 23,000.00 | 17,000.00 | 11,000.00 | 45,000.00 | 28,000.00 | 23,000.00 | 56,000.00 | 28,000.00 | 34,000.00 | 34,000.00 |
| 01/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 02/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 03/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 04/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 56,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 05/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 11,000.00 | 34,000.00 | 23,000.00 | 23,000.00 | 55,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 06/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 11,000.00 | 12,000.00 | 35,000.00 | 23,000.00 | 23,000.00 | 55,000.00 | 34,000.00 | 34,000.00 | 39,000.00 |
| 07/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 17,000.00 | 17,000.00 | 56,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 08/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 17,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 09/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 35,000.00 | 17,000.00 | 17,000.00 | 58,000.00 | 35,000.00 | 35,000.00 | 35,000.00 |
| 10/2012 | 6,000.00 | 17,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |

TA145

62-TR-CV-16-5

Schedule B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 12/2012 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 23,000.00 | 17,000.00 | 46,000.00 | 29,000.00 | 35,000.00 | 35,000.00 |
| 01/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 02/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 03/2013 | 6,000.00 | 6,000.00 | 17,000.00 | 12,000.00 | 12,000.00 | 29,000.00 | 17,000.00 | 17,000.00 | 41,000.00 | 23,000.00 | 35,000.00 | 35,000.00 |
| 04/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 05/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 06/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 12,000.00 | 23,000.00 | 17,000.00 | 12,000.00 | 41,000.00 | 23,000.00 | 29,000.00 | 35,000.00 |
| 07/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 08/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 09/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 24,000.00 | 24,000.00 | 30,000.00 |
| 10/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 11/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 12/2013 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 36,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 01/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 02/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 03/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 24,000.00 | 18,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 24,000.00 | 24,000.00 |
| 04/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 05/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 06/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 12,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 30,000.00 | 18,000.00 | 18,000.00 | 24,000.00 |
| 07/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 08/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 09/2014 | 6,000.00 | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 12,000.00 | 31,000.00 | 18,000.00 | 18,000.00 | 18,000.00 |
| 10/2014 | | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 11/2014 | | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 12/2014 | | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 01/2015 | | | | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 02/2015 | | | | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 03/2015 | | | | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 04/2015 | | | | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 05/2015 | | | | 6,000.00 | | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 06/2015 | | | | 6,000.00 | | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 07/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 19,000.00 | 19,000.00 |
| 08/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 19,000.00 | 19,000.00 |
| 09/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 19,000.00 | 19,000.00 |
| 10/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 19,000.00 | 19,000.00 |
| 11/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 19,000.00 | 19,000.00 |
| 12/2015 | | | | 6,000.00 | | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 01/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 02/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 03/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 04/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 05/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 06/2016 | | | | 6,000.00 | | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 07/2016 | | | | 7,000.00 | | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |

TA146

Schedule B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 08/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 09/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 10/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 11/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 12/2016 | - | - | 7,000.00 | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 13,000.00 |
| 01/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 11/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 12/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 01/2018 | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 |
| 05/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 |
| 06/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 |
| 07/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 |
| 08/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 |
| 09/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 10/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 11/2018 | - | - | - | - | - | - | - | - | - | - | - | - |
| 12/2018 | - | - | - | - | - | - | - | - | - | - | - | - |
| 01/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 02/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 03/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 04/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 05/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 06/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 07/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 08/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 09/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 10/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 11/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 12/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 01/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 02/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 03/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 04/2020 | - | - | - | - | - | - | - | - | - | - | - | - |

TA147

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

# SCHEDULE C

[Schedule of Early Awareness Reimbursement Limits per Trust]

{E0023935.4 }

TA148

Schedule C

**Lifetime Expense Limit for payments relating to Early Awareness Program**

| 2003-1 | 2004-1 | 2004-2 | 2005-1 | 2005-2 | 2005-3 | 2006-1 | 2006-2 | 2006-3 | 2006-4 | 2007-1 | 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| $17,000.00 | $34,000.00 | $149,000.00 | $123,000.00 | $105,000.00 | $345,000.00 | $257,000.00 | $180,000.00 | $527,000.00 | $305,000.00 | $416,000.00 | $460,000.00 |

Filed in Second Judicial District Court
2/18/2016 1:08:15 PM
Ramsey County, MN

## EXHIBIT I

All TERI claim packages require the following documentation:

* Application, Credit Agreement, and Disclosure Statement

* Evidence of preparation for repayment summary letter and telephone attempts

* Forbearance Form(s) and supporting documentation where required and/or system generated history reflecting the forbearance period

* Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

* Payment History, Correspondence History

* Assignment of Rights (should include disbursement date and name of the current Owner)

* Bankruptcy and/or death information as appropriate (see Death Claim section)

For Non-TERI Originated Loans the claim package must also include the following documentation:

* Credit Bureau Report (for non-TERI originated loans only)

* School Certification signed by school official or Enrollment Verification for Direct-to-Consumer and Continuing Education loans (for non-TERI originated loans only)

* Income/Employment Documentation, including but not limited to, where applicable, full recourse letter, income verification letter, and revolving debt burden calculation (for non-TERI originated loans only)

* Immigration documentation required to be collected at origination (f/k/a U.S. Citizenship and Immigration Service (USCIS)) documentation of proof of permanent U.S. residency (if applicable) (for non-TERI originated loans only):

Exhibit I-1

{F0023935.4 }

TA150

Filed in Second Judicial District Court
2/17/2006 1:09:15 PM
Ramsey County, MN

Cosigners:

\*       INS 151 or INS 551 form with a valid expiration;

\*       A departure record (1-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

\*       Foreign passport bearing an unexpired temporary I-551 stamp.

Students:

\*       Copy of his or her student visa, permanent resident card, F-1 or I -20 form.

\*       A departure record (1-94) with a valid expiration date issued from the INS showing "Refugee," or "Asylum Granted" or "Indefinite Parole" and/or humanitarian parole; or

\*       INS 151 or INS 551 form with a valid expiration;

For a Rehab Loan, the required claim documentation includes:

\*     Application, Credit Agreement

\*     Repurchase Disclosure Statement

\*     Assignment of Rights (should include disbursement date and name of the current Owner)

\*     Payment History, Correspondence History

\*     Delinquency servicing history for the most recent 210 day period or the delinquency period prior to claim, whichever is less.

\*     Bankruptcy and/or death information as appropriate (see Death Claim section)

In the event of a rolling delinquency, the Servicer will submit the history for the most recent 210 days or the delinquency period prior to claim, whichever is less. This may not include all delinquency servicing activities for the loan (e.g., activities performed in the early states of delinquency due to the fact the Borrower rolled several times during the delinquency period).

{F0023935.4 }

Filed in Second Judicial District Court
2/07/2006 1:09:15 PM
Ramsey County, MN

TERI will accept microfilm or electronic copies of all original documents with the claim package. In the event that the Servicer is unable to secure the original wet signature Credit agreement, TERI will accept a copy of such Note if it is accompanied by a notarized affidavit certifying that the original is not available and that the copy is a true one.

Further, the complete copy of the Note must contain the signatures of all obligors of the note. If a court of competent jurisdiction refuses to accept the submitted copy of a note in the event that TERI must litigate a case, and TERI loses the case for that reason, TERI will be reimbursed by the Loan Owner for the amount that TERI paid to the Owner via the Servicer on the claim.

TERI, the Owner, and the Servicer acknowledge there may be contractual agreements between Owner and Servicer governing the entity responsible for reimbursing TERI the amount of the claim if a court of competent jurisdiction refuses to accept such a copy of a Note.

TERI will make its best effort to send claim payments to the Servicer 90-120 days after the claim has been submitted. Claim payments shall include accrued interest through the payoff date.

[F0023935-4 ]

TA152

Filed in Second Judicial District Court
2/19/2016 1:08:15 PM
Ramsey County, MN

# EXHIBIT II

[NCO Agreement]

Exhibit II-1

{F0023935.4 }

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

# EXHIBIT 4

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

EX-10.10 11 ncslt_ex10-10.htm ADMINISTRATION AGREEMENT

EXHIBIT 10.10

## ADMINISTRATION AGREEMENT

This ADMINISTRATION AGREEMENT dated as of October 12, 2005 (as amended from time to time, the "Agreement"), among THE NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3, a Delaware statutory trust (the "Issuer"), DELAWARE TRUST COMPANY, NATIONAL ASSOCIATION, a national banking association, not in its individual capacity but solely as Owner Trustee (the "Owner Trustee"), U.S. BANK NATIONAL ASSOCIATION, a national banking association, both in its capacity as trustee under the Indenture (hereinafter defined) (the "Indenture Trustee") and as grantor trustee under the Grantor Trust Agreement (hereinafter defined) (the "Grantor Trustee"), THE NATIONAL COLLEGIATE FUNDING LLC, a Delaware limited liability company (the "Depositor") and FIRST MARBLEHEAD DATA SERVICES, INC., a Massachusetts corporation (the "Administrator").

WHEREAS, the Issuer is issuing its (a) Student Loan Asset Backed Notes (the "Notes") pursuant to the Indenture dated as of October 1, 2005 (the "Indenture"), between the Issuer and the Indenture Trustee, and (b) its trust certificates (the "Trust Certificates") pursuant to the Trust Agreement dated as of October 12, 2005 (the "Trust Agreement") among the Owner Trustee, The National Collegiate Funding LLC and The Education Resources Institute, Inc. (together with its successors in interest, the "Owners");

WHEREAS, NCF GRANTOR TRUST 2005-3, a New York grantor trust (the "Grantor Trust") is issuing its grantor trust certificates (the "Certificates") pursuant to the Grantor Trust Agreement dated as of October 12, 2005 (the "Grantor Trust Agreement") between the Grantor Trustee and the Depositor. Capitalized terms used and not otherwise defined herein shall have the meanings assigned to such terms in the Trust Agreement, the Grantor Trust Agreement or the Indenture (the Trust Agreement, the Grantor Trust Agreement and the Indenture are referred to collectively herein as the "Basic Documents");

WHEREAS, pursuant to the Basic Documents, the Issuer, the Owner Trustee, the Depositor and the Grantor Trustee are required to perform certain duties in connection with (a) the Student Loans and other collateral pledged pursuant to the Indenture (the "Collateral"), (b) the Notes, (c) the Trust Certificates, (d) the Grantor Trust Agreement and (e) the Certificates;

WHEREAS, the Issuer, the Owner Trustee, the Depositor and the Grantor Trustee desire to have the Administrator perform certain of the duties of the Issuer and the Grantor Trust referred to in the Basic Documents and any other documents signed by the Owner Trustee on behalf of the Issuer (collectively, the "Trust Related Agreements") and by the Grantor Trustee on behalf of the Grantor Trust (collectively, the "Grantor Trust Related Agreements") and to provide such additional services consistent with the terms of this Agreement, the Trust Related Agreements and the Grantor Trust Related Agreements as the Issuer, the Owner Trustee, the Depositor and the Grantor Trustee may from time to time request; and

WHEREAS, the Administrator has the capacity to provide the services required hereby and is willing to perform such services for the Issuer, the Owner Trustee, the Depositor and the Grantor Trustee on the terms set forth herein;

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

NOW, THEREFORE, in consideration of the mutual covenants contained herein, and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties agree as follows:

1.      Duties of the Administrator.

(a)      Duties with Respect to the Trust Related Agreements.

(i)      The Administrator agrees to perform all its duties as Administrator and the duties of the Issuer under the Trust Related Agreements. In addition, the Administrator shall consult with the Owner Trustee regarding the duties of the Issuer under the Trust Related Agreements. The Administrator shall monitor the performance of the Issuer and shall advise the Owner Trustee when action is necessary to comply with the Issuer's duties under the Trust Related Agreements. The Administrator shall prepare for execution by the Issuer, or shall cause the preparation by other appropriate persons or entities of, all such documents, reports, filings, instruments, certificates and opinions that it shall be the duty of the Issuer to prepare, file or deliver pursuant to the Trust Related Agreements. In furtherance of the foregoing, the Administrator shall take all appropriate action that is the duty of the Issuer to take pursuant to the Trust Related Agreements including, without limitation, such of the foregoing as are required with respect to the following matters under the Indenture:

(A)      Directing the Indenture Trustee, by Issuer Order, to deposit moneys with Paying Agents, if any, other than the Indenture Trustee;

(B)      Preparing and delivering notice to the Noteholders of any removal of the Indenture Trustee and the appointment of a successor Indenture Trustee;

(C)      Preparing an Issuer Order and Officer's Certificate and obtaining an Opinion of Counsel, if necessary, for any release of property of the Indenture Trust Estate;

(D)      Preparing Issuer Requests and obtaining Opinions of Counsel with respect to the execution of amendments to the Indenture and the Trust Agreement and mailing notices to the Noteholders with respect to such amendments;

(E)      Paying all expenses in connection with the issuance of the Notes;

(F)      Taking all actions on behalf of the Issuer necessary under the TERI Guarantee Agreements; and

(G)      Providing instructions to the Indenture Trustee as required by Section 8.02(d) of the Indenture.

(ii)      The Administrator will:

(A)      Indemnify the Indenture Trustee and its agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Indenture Trustee and its agents, arising out of the willful misconduct, negligence or bad faith of

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

the Administrator in the performance of the Administrator's duties contemplated by this Agreement;

(B)     Indemnify the Issuer and the Owner Trustee and their respective agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys fees' and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Issuer and the Owner Trustee and their respective agents, arising out of the willful misconduct, negligence or bad faith of the Administrator in the performance of the Administrator's duties contemplated by this Agreement;

provided, however, that the Administrator shall not be required to indemnify the Indenture Trustee, the Issuer or the Owner Trustee pursuant to Section 1(a)(ii)(A) or (B) of this Agreement so long as the Administrator has acted pursuant to the instructions of the Owner Trustee or the Owners in accordance with Section 1(d) of this Agreement; and

(C)     Pay to the Owner Trustee its fees and expenses as are set forth in section 10.01 of the Trust Agreement.

(b)     Duties with Respect to the Grantor Trust Related Agreements.

(i)     The Administrator agrees to perform all its duties as Administrator and the duties of the Depositor under the Grantor Trust Related Agreements. In addition, the Administrator shall consult with the Grantor Trustee regarding the duties of the Depositor under the Grantor Trust Related Agreements. The Administrator shall monitor the performance of the Grantor Trust and shall advise the Grantor Trustee when action is necessary to comply with the Depositor's duties under the Grantor Trust Related Agreements. The Administrator shall prepare for execution by the Depositor or the Grantor Trustee, or shall cause the preparation by other appropriate persons or entities of, all such documents, reports, filings, instruments, certificates and opinions that it shall be the duty of the Depositor to prepare, file or deliver pursuant to the Grantor Trust Related Agreements. In furtherance of the foregoing, the Administrator shall take all appropriate action that is the duty of the Depositor to take pursuant to the Grantor Trust Related Agreements.

(ii)     The Administrator will:

(A)     Indemnify the Grantor Trustee and its agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Grantor Trustee and its agents, arising out of the willful misconduct, negligence or bad faith of the Administrator in the performance of the Administrator's duties contemplated by this Agreement; and

(B)     Indemnify the Depositor and its agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Depositor and its agents, arising out of the willful misconduct, negligence or bad faith of the Administrator in the performance of the Administrator's duties contemplated by this Agreement;

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

provided, however, that the Administrator shall not be required to indemnify the Grantor Trustee, or the Depositor pursuant to Section 1(b) (ii)(A) or (B) of this Agreement so long as the Administrator has acted pursuant to the instructions of the Grantor Trustee in accordance with Subsection 1(d) of this Agreement; and

      (C)      Pay to the Grantor Trustee its fees and expenses.

    (c)     Additional Duties.

        (i)      In addition to the duties of the Administrator set forth above, the Administrator shall perform, or cause to be performed, its duties and obligations and the duties and obligations of the Owner Trustee on behalf of the Issuer under the Indenture and the Trust Agreement and of the Grantor Trustee on behalf of the Depositor under the Grantor Trust Agreement, including, without limitation, those duties and obligations set forth on Schedule A hereto. In furtherance thereof, the Issuer and the Depositor shall execute and deliver to the Administrator and to each successor Administrator appointed pursuant to the terms hereof, one or more powers of attorney substantially in the form of Exhibit A and Exhibit B hereto, respectively, appointing the Administrator as the attorney-in-fact of the Issuer and the Depositor, respectively, for the purpose of executing on behalf of the Issuer and the Depositor (with respect to the Grantor Trust Related Agreements) all such documents, reports, filings, instruments, certificates and opinions as are required to be executed by the Issuer and the Depositor pursuant to such agreements. Subject to Section 4 of this Agreement, and in accordance with the directions of the Issuer, the Depositor, the Grantor Trustee and the Owner Trustee, the Administrator shall administer, perform or supervise the performance of such other activities in connection with the Collateral (including the Trust Related Agreements and the Grantor Trust Related Agreements) as are not covered by any of the foregoing provisions and as are expressly requested by the Issuer, the Depositor, the Grantor Trustee, the Indenture Trustee or the Owner Trustee and are reasonably within the capability of the Administrator. The Administrator agrees to perform such obligations and deliver such notices as are specified as to be performed or delivered by the Administrator under the Indenture, the Grantor Trust Agreement and the Trust Agreement.

        (ii)      In carrying out the foregoing duties or any of its other obligations under this Agreement, the Administrator may enter into transactions or otherwise deal with any of its affiliates; provided, however, that the terms of any such transactions or dealings shall be in accordance with any directions received from the Issuer, the Indenture Trustee, the Grantor Trustee or the Owner Trustee, and shall be, in the Administrator's opinion, no less favorable to the Issuer than would be available from unaffiliated parties.

        (iii)      In carrying out any of its obligations under this Agreement, the Administrator may act either directly or through agents, attorneys, accountants, independent contractors and auditors and may enter into agreements with any of them.

        (iv)      In carrying out its duties under this Agreement with respect to delinquent or defaulted Student Loans, the Administrator may retain and employ agents to collect on such Student Loans and to commence any actions or proceedings the agents deem necessary in connection with such collection efforts on such Student Loans.

Filed in Second Judicial District Court
2/17/2016 1:09:15 PM
Ramsey County, MN

(v)     The Administrator shall cause a nationally recognized independent public accounting firm to conduct an annual audit of the Financed Student Loans owned by the Issuer in accordance with procedures acceptable to the Rating Agencies and shall provide the Rating Agencies with a copy of the audit report.

(d)     Non-Ministerial Matters.

(i)     With respect to matters that in the reasonable judgment of the Administrator are non-ministerial, the Administrator shall not be under any obligation to take any action, and in any event shall not take any action unless the Administrator shall have received instructions from the Indenture Trustee, in accordance with the Indenture, from the Owner Trustee or the Owners, in accordance with the Trust Agreement, or from the Grantor Trustee, in accordance with the Grantor Trust Agreement. For the purpose of the preceding sentence, "non-ministerial matters" shall include, without limitation:

(A)     The amendment of or any supplement to the Trust Related Agreements or the Grantor Trust Related Agreements;

(B)     The initiation of any claim or lawsuit by the Issuer and the compromise of any action, claim or lawsuit brought by or against the Issuer or the Grantor Trust, except for claims or lawsuits initiated in the ordinary course of business by the Issuer or the Grantor Trust or their respective agents or nominees for the collection of the Student Loans owned by the Issuer;

(C)     The appointment of successor administrators and successor indenture trustees pursuant to the Indenture, or the consent to the assignment by the Administrator or Indenture Trustee of its obligations under the Indenture;

(D)     The appointment of successor administrators and successor grantor trustees pursuant to the Grantor Trust Agreement, or the consent to the assignment by the Administrator or Grantor Trustee of its obligations under the Grantor Trust Agreement; and

(E)     The removal of the Indenture Trustee or the Grantor Trustee.

(ii)     Notwithstanding anything to the contrary in this Agreement, the Administrator shall not be obligated to, and shall not (A) make any payments to the Noteholders under the Trust Related Agreements, (B) make any payments to the Certificateholders under the Grantor Trust Related Agreements, (C) sell the Collateral pursuant to the Indenture or (D) take any action that the Issuer directs the Administrator not to take on its behalf.

(e)     Actions on behalf of the Owners. Pursuant to Section 4.05 of the Trust Agreement, each Owner has appointed the Administrator as its true and lawful attorney-in-fact with respect to certain matters described in such Section 4.05.

2.     Records. The Administrator shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Issuer, the Indenture Trustee, the Grantor Trustee, the Noteholders, the Certificateholders and the Owners at any time during normal business hours.

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

3. <u>Compensation</u>. As compensation for the performance of the Administrator's obligations under this Agreement and as reimbursement for its expenses related thereto, the Administrator shall be entitled to:

(a) A fee (the "<u>Administration Fee</u>") payable on each Distribution Date at a rate equal to 1/12 of 0.05% of the aggregate outstanding principal balance of the Financed Student Loans owned by the Issuer as of the last day of the prior calendar month (and in the case of the payment of the Administration Fee on the first Distribution Date, the aggregate outstanding principal balance of the Financed Student Loans owned by the Issuer as of the Closing Date); provided that the Administration Fee shall be no less than $20,000 per annum;

(b) Reimbursement for the following expenses, which expenses shall not exceed $100,000 in the aggregate per annum:

(i) Annual audits of the Servicers pursuant to Section 10.02 of the Indenture;

(ii) Payments to the Servicers for borrower privacy policy notices as required by the Gramm-Leach-Bliley Act; and

(iii) Any other expenses of the Issuer or the Grantor Trust.

The payment of the foregoing fees and expenses shall be solely an obligation of the Issuer.

4. <u>Additional Information to be Furnished</u>. The Administrator shall furnish to the Issuer, the Noteholders and the Certificateholders from time to time such additional information regarding the Collateral as the Issuer, the Noteholders and the Certificateholders shall reasonably request.

5. <u>Independence of the Administrator</u>. For all purposes of this Agreement, the Administrator shall be an independent contractor and shall not be subject to the supervision of the Issuer, the Grantor Trustee or the Owner Trustee with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Issuer, the Owner Trustee or the Grantor Trustee, the Administrator shall have no authority to act for or represent the Issuer, the Owner Trustee or the Grantor Trustee, respectively, in any way and shall not otherwise be deemed an agent of the Issuer, the Grantor Trustee or the Owner Trustee.

6. <u>No Joint Venture</u>. Nothing contained in this Agreement (i) shall constitute the Administrator and any of the Issuer, the Grantor Trustee, the Owner Trustee or any Owner as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to incur any obligation or liability on behalf of the others.

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

7.    <u>Other Activities of the Administrator</u>. Nothing herein shall prevent the Administrator or its Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as an administrator for any other person or entity even though such person or entity may engage in business activities similar to those of the Issuer, the Owner Trustee, the Grantor Trustee or the Indenture Trustee.

8.    <u>Term of Agreement; Resignation and Removal of Administrator</u>.

(a)    This Agreement shall continue in force until the dissolution of the Issuer, upon which event this Agreement shall automatically terminate.

(b)    Subject to Section 8(e) of this Agreement, the Administrator may resign its duties hereunder by providing the Issuer, the Noteholders, the Certificateholders, the Grantor Trustee and the Indenture Trustee with at least 60 days' prior written notice.

(c)    Subject to Section 8(e) of this Agreement, the Indenture Trustee, at the direction of certain Noteholders as required by the Indenture, may remove the Administrator without cause by providing the Administrator with at least 60 days' prior written notice.

(d)    Subject to Section 8(e) of this Agreement, at the option of the Indenture Trustee, at the direction of certain Noteholders as required by the Indenture, the Administrator may be removed immediately upon written notice of termination from the Issuer to the Administrator if any of the following events shall occur:

(i)    The Administrator shall default in the performance of any of its duties under this Agreement and, after notice of such default, shall not cure such default within ten days (or, if such default cannot be cured in such time, the Administrator shall not give within ten days such assurance of cure as shall be reasonably satisfactory to the Issuer);

(ii)    A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Administrator under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Administrator or any substantial part of its property or order the winding-up or liquidation of its affairs; or

(iii)    The Administrator shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due.

The Administrator agrees that if any of the events specified in clauses (ii) or (iii) of this Section shall occur, it shall give written notice thereof to the Owner Trustee, the Noteholders, the Certificateholders, the Grantor Trustee and the Indenture Trustee within two Business Days after the happening of such event.

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

(e)     No resignation or removal of the Administrator pursuant to this Section shall be effective until (i) a successor Administrator shall have been appointed by the Issuer (with the consent of the Owner Trustee pursuant to Section 12 of this Agreement) and (ii) such successor Administrator shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Administrator is bound hereunder.

(f)     The appointment of any successor Administrator shall be effective only after each Rating Agency, after having been given 10 days' prior notice of such proposed appointment, shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes or the Certificates.

(g)     Concurrently with the execution of this Agreement, the parties hereto shall enter into a Back-up Administration Agreement (the "Back-up Agreement") pursuant to which U.S. Bank National Association will perform certain duties of the Administrator in accordance with this Agreement in the event that the Administrator is terminated under this Section 8.

9.     <u>Action upon Termination, Resignation or Removal</u>. Promptly upon the effective date of termination of this Agreement pursuant to Section 8(a) of this Agreement or the resignation or removal of the Administrator pursuant to Section 8(b) or (c) of this Agreement, the Administrator shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Administrator shall forthwith upon such termination pursuant to Section 8(a) of this Agreement deliver to the Issuer or Grantor Trustee, as appropriate, all property and documents of or relating to the Collateral then in the custody of the Administrator. In the event of the resignation or removal of the Administrator pursuant to Section 8(b) or (c) of this Agreement, the Administrator shall cooperate with the Issuer and the Grantor Trustee and take all reasonable steps requested to assist the Issuer and the Grantor Trustee in making an orderly transfer of the duties of the Administrator.

10.     <u>Notices</u>. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

(a)     If to the Issuer, to:

        The National Collegiate Student Loan Trust 2005-3
        c/o Delaware Trust Company, National Association, as Owner Trustee
        300 Delaware Avenue, 9th Floor
        Wilmington, Delaware 19801
        Attention: Mr. Sterling C. Correia

(b)     If to the Administrator, to:

        First Marblehead Data Services, Inc.
        The Prudential Tower
        800 Boylston Street - 34th Floor
        Boston, MA 02199-8157
        Attention: Ms. Rosalyn Bonaventure

TA162

Filed in Second Judicial District Court
2/18/2006 1:09:15 PM
Ramsey County, MN

with a copy to:

First Marblehead Corporation
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Mr. Richard P. Zermani

(c)      If to the Indenture Trustee, to:

U.S. Bank National Association
Corporate Trust Services-SFS
One Federal Street, 3rd Floor
Boston, Massachusetts 02110
Attention: Ms. Vaneta I. Bernard

(d)      If to the Owner Trustee, to:

Delaware Trust Company, National Association
300 Delaware Avenue, 9th Floor
Wilmington, Delaware 19801
Attention: Mr. Sterling C. Correia

(e)      If to the Grantor Trustee, to:

U.S. Bank National Association
Corporate Trust Services-SFS
One Federal Street, 3rd Floor
Boston, Massachusetts 02110
Attention: Ms. Vaneta I. Bernard

(f)      If to the Depositor, to:

The National Collegiate Funding LLC
c/o First Marblehead Corporation
The Prudential Tower
800 Boylston Street - 34th Floor
Boston, MA 02199-8157
Attention: Mr. Richard P. Zermani

TA163

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, or hand-delivered to the address of such party as provided above.

11.     Amendments.

(a)     This Agreement may be amended from time to time by the parties hereto as specified in this Section, provided that any amendment must be accompanied by the written consent of the Owner Trustee, the Noteholders and the Certificateholders and an Opinion of Counsel to the Indenture Trustee, the Grantor Trustee and the Owner Trustee to the effect that such amendment complies with the provisions of this Section.

(b)     If the purpose of the amendment (as detailed therein) is to correct any mistake, eliminate any inconsistency, cure any ambiguity or deal with any matter not covered (i.e., to give effect to the intent of the parties and, if applicable, to the expectations of the Noteholders and Certificateholders), it shall not be necessary to obtain the consent of the Noteholders or Certificateholders, but the Indenture Trustee and the Grantor Trustee shall be furnished with a letter from each Rating Agency that the amendment will not result in the downgrading or withdrawal of the then-current rating assigned to any Note or Certificate.

(c)     If the purpose of the amendment is to prevent the imposition of any federal or state taxes at any time that any Note is outstanding (i.e., technical in nature), it shall not be necessary to obtain the consent of any Noteholder or Certificateholder, but the Indenture Trustee, the Grantor Trustee, the Owner Trustee and the Administrative shall be furnished with an Opinion of Counsel from counsel to the Issuer that such amendment is necessary or helpful to prevent the imposition of such taxes and is not materially adverse to the Noteholders or Certificateholders.

(d)     If the purpose of the amendment is to add or eliminate or change any provision of the Agreement other than as contemplated in (b) and (c) above, the amendment shall require the consent of each Rating Agency, certain Noteholders as required by the Indenture and certain Certificateholders as required by the Grantor Trust Agreement; provided, however, that no such amendment shall reduce in any manner the amount of, or delay the timing of, payments received that are required to be distributed on the Notes without the consent of certain Noteholders as required by the Indenture or on the Certificates without the consent of certain Certificateholders as required by the Grantor Trust Agreement.

(e)     It shall not be necessary to obtain the consent of a Rating Agency to approve the particular form of any proposed amendment, but it shall be sufficient if such consent approves the substance thereof.

(f)     This Section 11 shall not apply to the execution of the Back-up Agreement by the parties thereto.

TA164

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

12. <u>Successors and Assigns</u>. This Agreement may not be assigned by the Administrator unless such assignment is previously consented to in writing by the Issuer, the Owner Trustee, certain Noteholders as required by the Indenture, certain Certificateholders as required by the Grantor Trust Agreement, the Grantor Trustee and the Indenture Trustee and unless each Rating Agency, after having been given 10 days' prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee hereunder in the same manner as the Administrator is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Administrator, without the consent of the Issuer, the Depositor or the Owner Trustee, to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Administrator; provided that such successor organization executes and delivers to the Issuer, the Owner Trustee, the Grantor Trustee and the Indenture Trustee an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Administrator is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

13. <u>Governing Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

14. <u>Headings</u>. The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or effect of this Agreement.

15. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

16. <u>Severability</u>. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

17. <u>Limitation of Liability of Owner Trustee</u>. Notwithstanding anything contained herein to the contrary, this instrument has been executed by Delaware Trust Company, National Association, not in its individual capacity but solely in its capacity as Owner Trustee of the Issuer, and in no event shall Delaware Trust Company, National Association in its individual capacity or any beneficial owner of the Issuer have any liability for the representations, warranties, covenants, agreements or other obligations of the Issuer hereunder, as to all of which recourse shall be had solely to the assets of the Issuer. For all purposes of this Agreement, in the performance of any duties or obligations of the Issuer hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the Trust Agreement.

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

18. <u>Third Party Beneficiary</u>. The Parties hereto acknowledge that the Noteholders and Certificateholders are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

19. <u>No Petition</u>. The parties hereto will not at any time institute against the Issuer any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Issuer under any Transaction Document as defined in the Indenture.

Filed in Second Judicial District Court
2/16/2016 1:09:15 PM
Ramsey County, MN

IN WITNESS WHEREOF, the parties have caused this Agreement to be duly executed and delivered as of the day and year first above written.

THE NATIONAL COLLEGIATE STUDENT LOAN
TRUST 2005-3

By:    Delaware Trust Company, National Association, not
in its individual capacity but solely as Owner Trustee

By:    /s/ Sterling C. Correia
Name: Sterling C. Correia
Title: Vice President

DELAWARE TRUST COMPANY, NATIONAL
ASSOCIATION, not in its individual capacity but solely
as Owner Trustee

By: /s/ Sterling C. Correia
Name: Sterling C. Correia
Title: Vice President

U.S. BANK NATIONAL ASSOCIATION, as Indenture
Trustee

By: /s/ Karen R. Beard
Name: Karen R. Beard
Title: Vice President

U.S. BANK NATIONAL ASSOCIATION, as Grantor
Trustee

By: /s/ Karen R. Beard
Name: Karen R. Beard
Title: Vice President

TA167

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

FIRST MARBLEHEAD DATA SERVICES, INC.

By: /s/ John A. Hupalo
    Name: John A. Hupalo
    Title: Executive Vice President


THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

    By: /s/ Donald R. Peck
        Name: Donald R. Peck
        Title: Treasurer and Secretary

TA168

Filed in Second Judicial District Court
2/18/2008 11:09:15 PM
Ramsey County, MN

EXHIBIT A
POWER OF ATTORNEY

STATE OF DELAWARE )
                             )     ss.:
COUNTY OF NEW CASTLE )

KNOW ALL MEN BY THESE PRESENTS, that The National Collegiate Student Loan Trust 2005-3 (the "Issuer"), does hereby make, constitute and appoint First Marblehead Data Services, Inc. as administrator under the Administration Agreement dated as of October 12, 2005 (the "Administration Agreement"), among the Issuer; Delaware Trust Company, National Association, as Owner Trustee; U.S. Bank National Association, as Indenture Trustee and as Grantor Trustee; The National Collegiate Funding LLC; and First Marblehead Data Services, Inc., as Administrator, as the same may be amended from time to time, as well as its agents and attorneys, as Attorney-in-Fact to execute on behalf of the Issuer all such documents, reports, filings, instruments, certificates and opinions as it shall be the duty of the Issuer to prepare, file or deliver pursuant to the Trust Related Agreements, including, without limitation, to appear for and represent the Issuer in connection with the preparation, filing and audit of federal, state and local tax returns pertaining to the Issuer, and with full power to perform any and all acts associated with such returns and audits that the Issuer could perform, including without limitation, the right to distribute and receive confidential information, defend and assert positions in response to audits, initiate and defend litigation, and to execute waivers of restrictions on assessments of deficiencies, consents to the extension of any statutory or regulatory time limit, and settlements.

All powers of attorney for these purposes heretofore filed or executed by the Issuer are hereby revoked.

Capitalized terms that are used and not otherwise defined herein shall have the meanings ascribed thereto in the Administration Agreement.

EXECUTED as of October 12, 2005.

THE NATIONAL COLLEGIATE STUDENT
LOAN TRUST 2005-3

By:  Delaware Trust Company, National
       Association, not in its individual capacity but solely
       as Owner Trustee

By:  _____
       Name:
       Title:

TA169

Filed in Second Judicial District Court
2/16/2006 1:09:15 PM
Ramsey County, MN

**EXHIBIT B**
**POWER OF ATTORNEY**

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | )   ss.: |
| COUNTY OF NEW CASTLE | ) |

KNOW ALL MEN BY THESE PRESENTS, that The National Collegiate Funding LLC (the "Depositor"), does hereby make, constitute and appoint First Marblehead Data Services, Inc., as administrator under the Administration Agreement dated as of October 12, 2005 (the "Administration Agreement"), among The National Collegiate Student Loan Trust 2005-3; Delaware Trust Company, National Association, as Owner Trustee; U.S. Bank National Association, as Indenture Trustee and as Grantor Trustee; the Depositor; and First Marblehead Data Services, Inc., as Administrator, as the same may be amended from time to time, as well as its agents and attorneys, as Attorney-in-Fact to execute on behalf of the Depositor all such documents, reports, filings, instruments, certificates and opinions as it shall be the duty of the Depositor to prepare, file or deliver pursuant to the Grantor Trust Related Agreements, including, without limitation, to appear for and represent the Depositor in connection with the preparation, filing and audit of federal, state and local tax returns pertaining to the NCF Grantor Trust 2005-3, and with full power to perform any and all acts associated with such returns and audits that the Depositor could perform, including without limitation, the right to distribute and receive confidential information, defend and assert positions in response to audits, initiate and defend litigation, and to execute waivers of restrictions on assessments of deficiencies, consents to the extension of any statutory or regulatory time limit, and settlements.

All powers of attorney for these purposes heretofore filed or executed by the Depositor are hereby revoked.

Capitalized terms that are used and not otherwise defined herein shall have the meanings ascribed thereto in the Administration Agreement.

EXECUTED as of October 12, 2005.

THE NATIONAL COLLEGIATE FUNDING LLC

By: GATE Holdings, Inc., Member

By: _____
    Name:
    Title:

TA170

Filed in Second Judicial District Court
2/07/2006 1:08:15 PM
Ramsey County, MN

## SCHEDULE A

### Duties of the Issuer
### Performed by the Administrator under the Trust Agreement

(A)    Filing tax returns, reports and forms under Section 8.04.

(B)    Furnishing documents to the Owners under Section 9.02.

(C)    Filing a Certificate of Termination of the Trust upon termination pursuant to Section 11.01.

(D)    Appointing separate trustees under Section 12.02.

(E)    Obtaining execution by the Owners of any amendment to the Trust Agreement thereunder.

### Duties of the Administrator under the Trust Agreement

Interpreting and applying the provisions set forth in Articles V, VI, VII and XI regarding application of funds, allocations of Profit and Loss and Distributions of Net Cash Flow, to resolve any ambiguities that may result from such application and to provide the Owner Trustee and the Owners with clarification of any provision as may be necessary or appropriate.

### Duties of the Administrator under the Indenture

Providing the statements to Noteholders required under Section 8.09.

Providing, signing and filing such reports as required by Section 314(a) of the Trust Indenture Act of 1939, as amended, the Sarbanes-Oxley Act of 2002 and any federal and state securities laws.

Preparing and making Servicer filings under Section 10.01 and 10.02.

Providing instructions to the Indenture Trustee as required under Section 8.02.

TA171

Filed in Second Judicial District Court
2/17/2016 1:08:15 PM
Ramsey County, MN

# EXHIBIT 5

February 4, 2015

GSS Data Services, Inc.
402 West Broadway
Suite 2000
San Diego, CA 92101
Attn: Randy Schmidt

Re: Satisfaction of Rating Agency Condition

Dear Sirs:

      Pursuant to each of the Trust Agreements and Indentures of the trusts set forth in Schedule A attached hereto (the "Trusts"), the undersigned hereby certifies that the execution of that certain Servicing Agreement dated as of December 30, 2014 by and between Odyssey Education Resources LLC ("Odyssey") and the Trusts (the "Servicing Agreement") has been duly authorized pursuant to and in accordance with the Trust Agreements of the Trusts, that all conditions precedent provided for in the Trust Agreements and Indentures have been complied with, and that the Rating Agency Condition has been satisfied in full accordance with the requirements of the Indentures of the Trusts.

      The undersigned agrees to indemnify and hold harmless GSS Data Services, Inc., in their capacity as Administrator, and any of the officers, directors, employees and agents of GSS Data Services, Inc. (collectively, the "Indemnified Persons") from and against any and all losses, damages, liabilities, claims, actions, suits, costs, expenses, disbursements (including all reasonable fees and expenses of its counsel, agents and other experts), taxes and penalties of any kind and nature whatsoever (collectively "Expenses"), to the extent that such Expenses arise out of or are imposed upon or asserted at any time against such Indemnified Person in connection with the acknowledgement of the Servicing Agreement by GSS Data Services, Inc. in their capacity as Administrator. The indemnity contained herein shall survive the resignation or removal of GSS Data Services, Inc. as Administrator or the termination of the Administration Agreements.

      Capitalized terms used herein and not otherwise defined are used as defined in the Trust Agreements.

Very truly yours,

NC OWNERS LLC, as Majority Owner

by NC RESIDUALS OWNERS TRUST, as Sole Member

by VCG Securities LLC, as Agent

    by:
    Name: Donald Uderitz
    Title: Authorized Signatory

TA173

Filed in Second Judicial District Court
2/10/2006 1:09:15 PM
Ramsey County, MN

Pursuant to Section 3.07(e) of the Amended and Restated Trust Agreement (the "Declaration") of NC Residuals Owners Trust dated May 14, 2009, the undersigned responsible officer of VCG Securities LLC, as Agent, hereby certifies that all conditions precedent, if any, provided for in the Declaration and any applicable Transaction Document (as defined in the Declaration) relating to this letter have been complied with.

by
Name: Donald Uderitz
Title: Authorized Signatory

TA174

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

## SCHEDULE A

Trusts:
- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2; and
- The National Collegiate Student Loan Trust 2005-3.


Indentures:
Each of the following Indentures, as amended or supplemented, entered into by and between
U.S. Bank National Association, as Indenture Trustee and:
- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005; and
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005;

TA175

Filed in Second Judicial District Court
2/18/2016 1:09:15 PM
Ramsey County, MN

# EXHIBIT 6

TA176

Filed in Second Judicial District Court
Filed in Second Judicial District Court PM
2/18/2016 1:00:01 AM MN
Ramsey County, MN

From: Lance Gotthoffer [mailto:lgotthoffer@chaitmanllp.com]
Sent: Tuesday, December 08, 2015 12:15 PM
To: Lisa Cohen <lcohen@goalsolutions.com>
Cc: Tristan Fleming <tfleming@Goalsolutions.com>; Shawn Leo <sleo@Goalsolutions.com>; Ryan Sadorf <ryan@vcg.cc>; Tad Cook <tad@cooksadorf.com>; Sarah Howell <showell@chaitmanllp.com>
Subject: Fwd: Odyssey Invoices

Lisa:

Transmitted herewith are expense reimbursement invoices from Odyssey Education Resources LLC. If in order, please process and pay.

Of course, let me know if you have any questions or concerns.

Thanks and regards.

Lance

Filed in Second Judicial District Court
Filed in Second Judicial District Court
3/7/2016 1:18:11 PM
2/18/2016 11:56:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1004
**DATE** 01/01/2015
**DUE DATE** 01/31/2015

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| 01/01/2015 | Reimbursement Of Expenses<br>1/1/2015 - 1/31/2015 | 18,769.39 |

BALANCE DUE **$18,769.39**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/16/2016 1:55:11 PM
2/18/2016 1:55:11 PM
Ramsey County, MN
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1008
**DATE** 02/01/2015
**DUE DATE** 03/03/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 02/01/2015 | Reimbursement Of Expenses 2/1/2015 - 2/28/2015 | 14,866.76 |

BALANCE DUE  **$14,866.76**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1014
**DATE** 03/01/2015
**DUE DATE** 03/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 03/01/2015 | Reimbursement Of Expenses<br>3/1/2015 - 3/31/2015 | 17,446.89 |

BALANCE DUE **$17,446.89**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA180

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/18/2016 10:40 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1021
**DATE** 04/01/2015
**DUE DATE** 05/01/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 04/01/2015 | Reimbursement Of Expenses 4/1/2015 - 4/30/2015 | 18,805.71 |

BALANCE DUE **$18,805.71**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA181

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/7/2016 1:9:11 PM
2/18/2016 9:26:46 AM
Ramsey County, MN



Odyssey Education Resources

407 SE 1st St
Delray Beach, FL  33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA  92101
United States

**INVOICE #** 1027
**DATE** 05/01/2015
**DUE DATE** 05/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 05/01/2015 | Reimbursement Of Expenses<br>5/1/2015 - 5/31/2015 | 15,255.55 |

BALANCE DUE **$15,255.55**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA182

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1033
**DATE** 06/01/2015
**DUE DATE** 07/01/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 06/01/2015 | Reimbursement Of Expenses
6/1/2015 - 6/30/2015 | 15,505.42 |

BALANCE DUE **$15,505.42**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA183

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1039
**DATE** 07/01/2015
**DUE DATE** 07/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 07/01/2015 | Reimbursement Of Expenses 7/1/2015 - 7/31/2015 | 18,283.33 |

BALANCE DUE

## $18,283.33

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:19 AM
Ramsey County, MN
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1048
**DATE** 08/01/2015
**DUE DATE** 08/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 08/01/2015 | Reimbursement Of Expenses 8/1/2015 - 8/31/2015 | 17,071.41 |

BALANCE DUE  **$17,071.41**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA185

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:19 AM
Ramsey County, MN

Ramsey County, MN

 **Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1052
**DATE** 09/01/2015
**DUE DATE** 10/01/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 09/01/2015 | Reimbursement Of Expenses 9/1/2015 - 9/30/2015 | 19,023.21 |

BALANCE DUE **$19,023.21**

Payment Instructions:

Electronic funds payment details:

Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA186

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
Ramsey County, MN
2/18/2016 11:08:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

INVOICE # 1057
DATE 10/01/2015
DUE DATE 10/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 10/01/2015 | Reimbursement Of Expenses<br>10/1/2015 - 10/31/2015 | 17,630.30 |

BALANCE DUE **$17,630.30**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA187

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/18/2016 1:19:11 PM
Ramsey County, MN
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA  92101
United States

**INVOICE #** 1068
**DATE** 11/01/2015
**DUE DATE** 12/01/2015

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| 11/01/2015 | Reimbursement Of Expenses 11/1/2015 - 11/30/2015 | 17,630.30 |

BALANCE DUE       **$17,630.30**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA188

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2003-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101
United States

**INVOICE #** 1069
**DATE** 12/01/2015
**DUE DATE** 12/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 12/01/2015 | Reimbursement Of Expenses 12/1/2015 - 12/31/2015 | 17,630.30 |

**BALANCE DUE** **$17,630.30**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:19 AM
Ramsey County, MN



Odyssey Education Resources

407 SE 1st St
Delray Beach, FL 33483
(561) 330-5999

# INVOICE

BILL TO
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

INVOICE # 1002
**DATE** 01/01/2015
**DUE DATE** 01/31/2015

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| 01/01/2015 | Reimbursement Of Expenses<br>1/1/2015 - 1/31/2015 | 18,769.39 |

BALANCE DUE     **$18,769.39**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA190

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
Ramsey County, MN
2/18/2016 11:08:19 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

INVOICE # 1009
**DATE** 02/01/2015
**DUE DATE** 03/03/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 02/01/2015 | Reimbursement Of Expenses<br>2/1/2015 - 2/28/2015 | 14,866.76 |

BALANCE DUE **$14,866.76**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
  Odyssey Education Resources LLC
  407 SE 1st Street
  Delray Beach, FL 33483

TA191

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:15 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**

National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

**INVOICE #** 1015
**DATE** 03/01/2015
**DUE DATE** 03/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 03/01/2015 | Reimbursement Of Expenses<br>3/1/2015 - 3/31/2015 | 17,446.89 |

BALANCE DUE     **$17,446.89**

Payment Instructions:

Electronic funds payment details:

Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA192

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/18/2016 11:58:18 AM
Ramsey County, MN



Odyssey Education Resources

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

**INVOICE #** 1022
**DATE** 04/01/2015
**DUE DATE** 05/01/2015

| DATE | ACTIVITY | AMOUNT |
|---|---|---|
| 04/01/2015 | Reimbursement Of Expenses<br>4/1/2015 - 4/30/2015 | 18,805.71 |

BALANCE DUE      **$18,805.71**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA193

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/18/2016 11:05:49 AM
Ramsey County, MN

 **Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

**INVOICE #** 1028
**DATE** 05/01/2015
**DUE DATE** 05/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 05/01/2015 | Reimbursement Of Expenses 5/1/2015 - 5/31/2015 | 15,255.55 |

BALANCE DUE **$15,255.55**

Payment Instructions:

Electronic funds payment details:

Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA194

Filed in Second Judicial District Court
3/7/2016 1:19:11 PM
Filed in Second Judicial District Court
2/18/2016 11:08:19 AM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

**INVOICE #** 1034
**DATE** 06/01/2015
**DUE DATE** 07/01/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 06/01/2015 | Reimbursement Of Expenses<br>6/1/2015 - 6/30/2015 | 15,505.42 |

BALANCE DUE **$15,505.42**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA195

Filed in Second Judicial District Court
Filed in Second Judicial District Court
2/18/2016 1:11 PM
Ramsey County, MN
2/18/2016 1:11 PM
Ramsey County, MN



**Odyssey Education Resources**

407 SE 1st St
Delray Beach, FL 33483
(561) 330-6999

# INVOICE

**BILL TO**
National Collegiate Student
Loan Trust 2004-1
c/o Goal Structured Solutions
401 West A Street, Suite 1300
San Diego, CA 92101

**INVOICE #** 1040
**DATE** 07/01/2015
**DUE DATE** 07/31/2015

| DATE | ACTIVITY | AMOUNT |
|------|----------|--------|
| 07/01/2015 | Reimbursement Of Expenses 7/1/2015 - 7/31/2015 | 18,283.33 |

**BALANCE DUE** **$18,283.33**

Payment Instructions:

Electronic funds payment details:



Check payment mailing address:
Odyssey Education Resources LLC
407 SE 1st Street
Delray Beach, FL 33483

TA196