(vii) assignment into the queue for sale efforts, and (c) remit within two (2) days of receipt to the Odyssey Collection Account (as hereinafter defined) for the receipt of collections for the benefit of the respective Trusts, as their interests may appear, all cash collected on all Loans Eligible For Sale in the queue for sale until such time as the loan is sold.

(viii) Reporting to the relevant Trust all Loans Eligible For Sale being held in the queue for purchase; soliciting direction from the Trust as to which loans shall be sold pursuant to the terms of Section 2(C) below.

(ix) Conduct the sale of all Loans Eligible For Sale in accordance with the provisions or Section 2(C) below.

(x) Establishing and maintaining an account or accounts (the "Odyssey Collection Account") in the name of the Indenture Trustee (or its agent or custodian), for benefit of the applicable secured parties of the Trusts under the respective Indentures, for the deposit by Servicer and any Subservicer of net collections (including all net proceeds of any sale of Loans Eligible For Sale in accordance with the provisions of 2(C) below) on all Loans Eligible For Sale and Defaulted Loans serviced by Servicer or Subservicer for the respective Trust and in connection therewith, preparing or causing to be prepared such control agreement or agreements as may be necessary or desirable to maintain and preserve the lien and security interest therein of the Indenture Trustee under the respective Indentures;

(xi) Reviewing claim packages prepared by any Servicer or Subservicer with respect to Loans Eligible For Sale and Defaulted Loans to confirm, on the basis of such review, that (a) the Servicer or Subservicer has complied with applicable servicing guidelines and (b) the loan originator has complied with applicable program guidelines;

(xii) Receiving reports from Servicers and Subservicers related to payments with respect to Loans Eligible For Sale and Defaulted Loans and updating records with respect to Financed Student Loans as interest and other charges accrue and amounts are collected;

(xiii) Remitting or causing the Subservicers to remit net collections received on Loans Eligible For Sale and Defaulted Loans to the Odyssey Collection Account;

(xiv) Retaining counsel on behalf of the applicable Trust (whether directly or through collection agencies) to further pursue enforcement and collection of Loans Eligible For Sale and Defaulted Loans, including through litigation and bankruptcy or probate proceedings; and

(xv) Negotiating any settlement or compromise of any claim with respect to a Loans Eligible For Sale or Defaulted Loans, which in the reasonable judgment of the Servicer are more likely to produce greater proceeds of collection than by virtue of a forbearance, payment management or other accommodation with the borrower; and

(xvi) At the sole discretion of the Servicer, identifying, recommending, selling, transferring, exchanging, purchasing or otherwise disposing of Loans Eligible For Sale in accordance with the Basic Documents.

For the avoidance of doubt the parties hereto hereby acknowledge and agree that nothing in this Agreement is intended to nor does it amend the applicable Trust Agreement, Indenture or Administration Agreement for each Trust or limit in any way the Trusts' rights thereunder, including without limitation, the right to direct or restrict the activities of the Servicer.

C. <u>Purchase of Loans Eligible For Sale</u>. The Servicer shall take all such action, as it shall deem reasonably necessary or appropriate to purchase the Loans Eligible For Sale, including without limitation:

CONFIDENTIAL

(i) Entering into custodial agreements either directly or through agents for the purpose of perfecting a security interest in the Loans Eligible For Sale and to provide for the safekeeping of the Loans Eligible For Sale and all documents and information relating to the Loans Eligible For Sale;

(ii) Preparing all necessary sale documentation including, but not limited to, appropriate terms required for each bidder, the loan purchase agreement and other related documentation required to memorialize and accomplish the sale of the Loans Eligible For Sale;

(iii) In its sole discretion, determining the purchase price for each such Loan Eligible For Sale that it determines to purchase pursuant to the terms hereof based on one of the two following methods: (a) 10% less than the highest bid received pursuant to the Servicer marketing the Loans Eligible For Sale for sale to at least three (3) qualified bidders and conducting the sale process in a manner that, in the sole judgment of the Servicer, will yield the highest and best net proceeds to be paid in exchange for the Loans Eligible For Sale, provided however, that with respect to such sale process, Servicer shall, at a minimum: (i) provide an information packet ("Information Packet") applicable to each sale which describes the loans offered for sale and contains such other customary information applicable to such sale; (ii) in a good faith effort to maximize the proceeds to the Trust from the sale of the Loans, invite a sufficient number of qualified bidders under the circumstances to participate in such sale, and in no event shall the Servicer receive less than three (3) bids from qualified bidders; (iii) establish a time period between the distribution of the Information Packet and the acceptance of bids to allow the prospective bidders to research and analyze the Loans Eligible For Sale; and (iv) hold the sale at a convenient time and in a convenient location or (b) 10% less that the average value established pursuant to the Servicer engaging two (2) reputable appraisers, in the business of appraising loans, to appraise the Loans Eligible for Sale which the Servicer intends to purchase;

(iv) Notifying the Relevant Trust and the Administrator that each of the Loans Eligible For Sale sold pursuant to the Loan Sale is a Liquidated Student Loan pursuant to the Basic Documents;

(v) Simultaneous with the Loan Sale, remitting or causing the Subservicers to remit the Liquidation Proceeds and all Recoveries associated with the Liquidated Student Loans to the Odyssey Collection Account.

Section 3.   Incorporation. As of the date hereof, the definition of "Servicing Agreement" in each of the Indentures shall include this Agreement, the definition of "Servicer" in each of the Indentures shall include the Servicer and any Servicing Fee and other fees and expenses payable under this Agreement to the Servicer shall be a "Servicing Fee" for purposes each of the Indentures.

Section 4.   Subservicers. In carrying out its duties under this Agreement with respect to the Loans Eligible For Sale and Defaulted Loans, the Servicer may retain and employ Subservicers to perform any of the Services with respect to the Financed Student Loans owned by any of the Trusts, and to commence any actions or proceedings the Subservicers deem necessary or appropriate in connection with such enforcement or collection efforts on such Loans Eligible For Sale and Defaulted Loans.

Section 5.   Servicing Fee; Reimbursement for Expenses. As compensation for the performance of the Servicer's obligations under this Agreement and as reimbursement for its expenses related thereto, the Servicer shall be entitled to a fee and expense reimbursement (the "Servicing Fee") payable from each Trust in accordance with the related Indenture on each Distribution Date consisting of:

A.   Reimbursement by each Trust for all of the Servicer's expenses incurred in performing its obligations hereunder for such Trust, including all fees and expenses of all Subservicers and other persons appointed as agents of the Servicer pursuant to this Agreement and any other expenses incurred by the

CONFIDENTIAL

Servicer on behalf of each Trust, including costs and expenses incurred by the Servicer in establishing and maintaining the Odyssey Collection Account; provided that the fees and expenses of Subservicers with respect to collections on Loans Eligible For Sale and Defaulted Loans shall be paid from such collections prior to remittance to such Odyssey Collection Account, as described in Section 2(B)(vii), 2(B)(x) and 2(c)(vii) above. The reimbursement described in this Section 5(A) with respect to Default Prevention Services (but not with respect to Early Awareness Services) shall not exceed the dollar amount listed for each Trust on Schedule B, attached hereto, in the aggregate per calendar month per respective Trust. The reimbursement described in this Section 5(A) with respect to Early Awareness Services shall not exceed the dollar amount listed for each Trust on Schedule C attached hereto, in the aggregate for each such Trust until its respective Indenture is discharged.

B. In carrying out the foregoing duties or any of its other obligations under this Agreement, the Servicer may charge a fee for any collection services that it provides and enter into transactions or otherwise deal with any of its affiliates, including, without limitation, collection agency which affiliates may also charge reasonable fees and receive other forms of remuneration, provided however, that the terms of any such transaction or dealings with an affiliate shall be, in the Servicer's opinion, no less favorable to the Trusts than would be available from unaffiliated parties.

Section 6. Term of Agreement: Resignation and Removal of Servicer.

A. Term. This Agreement shall continue in force with respect to each Trust until the dissolution of such Trust and the payment in full of the Notes under the related Indenture, upon which event this Agreement shall automatically terminate with respect to that Trust.

B. Resignation. Subject to Section 6(D) of this Agreement, the Servicer may resign its duties hereunder by providing the Trust, the Administrator and the Indenture Trustee with at least 10 days' prior written notice.

C. Removal for Cause. Subject to Section 6(D) of this Agreement, the Indenture Trustee shall have the right to remove the Servicer with the prior written consent of the Trust, by delivering to the Servicer written notice of termination if any of the following events shall occur:

(i) The Servicer shall default in the performance of any of its duties under this Agreement and, after written notice of such default, shall not cure such default within forty-five days (or such longer period as shall be reasonably satisfactory to the Indenture Trustee);

(ii) A court having jurisdiction in the premises shall enter a decree or order for relief, and such decree or order shall not have been vacated within 60 days, with respect to any involuntary case commenced against the Servicer under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect or shall appoint a receiver, liquidator, assignee, custodian, trustee, sequestrator or similar official for the Servicer or any substantial part of its property or order the winding-up or liquidation of its affairs; or

(iii) The Servicer shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of a receiver, liquidator, assignee, trustee, custodian, sequestrator or similar official for it or any substantial part of its property, shall consent to the taking of possession by any such official of any substantial part of its property, shall make any general assignment for the benefit of its creditors or shall fail generally to pay its debts as they become due.

The Servicer agrees that if any of the events specified in clauses (ii) or (iii) of this Section shall occur, it shall give written notice thereof to the Trust, each of the Rating Agencies and the Indenture Trustee within two Business Days after the happening of such event. Concurrently with the giving of such notice as provided above (and in any event no later than five (5) Business Days after receipt of such notice of

CONFIDENTIAL

termination), the Servicer shall identify any Loans Eligible For Sale and Defaulted Loans still being serviced by it hereunder.

D. Succession. No resignation or removal of the Servicer pursuant to this Section shall be effective until a successor Servicer (which Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Servicer is bound hereunder. The appointment of any successor Servicer shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

Section 7.   Action upon Termination. Resignation or Removal. Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Servicer pursuant to Section 6(B) or Section 6(C) of this Agreement, the Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Financed Student Loans then in the custody of the Servicer pursuant to this Agreement. In the event of the resignation or removal of the Servicer pursuant to Section 6 of this Agreement, the Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and take all reasonable steps requested to assist the Trusts in making an orderly transfer of the duties of the Servicer to the successor Servicer, as applicable.

Section 8.   Representations and Warranties.   The Servicer hereby makes the following representations and warranties to each of the Trusts:

(i) Organization and Good Standing. The Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

(ii) No Violation. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Servicer. The Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Servicer.

(iii) Authorization and Enforceability. The execution and delivery by the Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Servicer with the terms hereof are within the powers of the Servicer

CONFIDENTIAL

and have been duly authorized by all necessary action on the part of the Servicer. All organizational resolutions and consents necessary for the Servicer to enter into and consummate all transactions contemplated hereby have been obtained. This Agreement has been duly executed and delivered by the Servicer and constitutes the legal, valid and binding obligation of the Servicer enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Servicer.

(iv) <u>Approvals and Permits</u>. The Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Servicer to perform its obligations hereunder.

(v) <u>No Litigation</u>. No litigation is pending or, to the best of the Servicer's knowledge, threatened against it, which, if determined adversely to the Servicer would prohibit the Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Servicer.

(vi) <u>Standard of Care</u>. In exercising its duties hereunder, Servicer agrees to use at least the same degree of care that it would use if the Defaulted Loans and Loans Eligible For Sale were Servicer's own property, but no less than a reasonable degree of care.

Section 9. <u>Indemnification</u>. The Servicer will indemnify each of the Trusts, the Owner Trustee and the Indenture Trustee and their respective officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Indenture Trustee (as applicable) and any Administrator, Servicer, Sub-Servicer or other agent of or servicer provider to the Trust and any of their agents, arising out of the willful misconduct, gross negligence or bad faith of the Servicer (or its agents) in the performance of the Servicer's duties contemplated by this Agreement; provided that neither the Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Trust, the Administrator or the Indenture Trustee or in accordance with this Agreement. To the extent any indemnification amounts are not paid by the Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Financed Student Loans then owned by each Trust.

Section 10. <u>Records: Inspection</u>. The Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours. The Servicer hereby grants the Indenture Trustee the right, for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Servicer and the Indenture Trustee. All expenses associated with the

CONFIDENTIAL

performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(A).

Section 11.   Reporting; Additional Information to be Furnished. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator, on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Loans Eligible For Sale and Defaulted Loans in a form satisfactory to the Administrator. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator on behalf of the Trusts an electronically transferred data tile containing recovery data for Loans Eligible For Sale and Defaulted Loans owned by each respective Trust and other information as required by Regulation AB, each for investor reporting purposes. The Servicer shall furnish to the Administrator on behalf of the Trusts from time to time such additional information regarding the Loans Eligible For Sale and Defaulted Loans as the Administrator on behalf of the Trusts shall reasonably request.

Section 12.   Subservicing Agreement. The Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Financed Student Loan and its performance. Each subservicing agreement shall be terminable by the Servicer upon thirty days written notice, and shall provide that any successor to the Servicer shall succeed to the Servicer thereunder.

Section 13.   Regulation AB. On or before September 15 of each calendar year beginning in 2014, the Servicer shall deliver to the Administrator any reports, Servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Servicer is required to deliver to the Administrator the documents described in this Section 13, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 14.   Security Interest. Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect to the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 15.   Amendments. This Agreement may be amended from time to time by the parties hereto to add additional trusts, provided that any amendment must be accompanied by the written consent of the Trust and upon satisfying the Rating Agency Condition.

Section 16.   Independence of the Servicer. For all purposes of this Agreement, the Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Trusts, the Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 17.   No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to Incur any obligation or liability on behalf of the others.

CONFIDENTIAL

NCSLT-00001563

TA528

Section 18. Other Activities of the Servicer. Nothing herein shall prevent the Servicer or its Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 19. Notices. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Servicer, to:

Odyssey Education Resources LLC
800 Corporate Drive,
Ft. Lauderdale, FL 33334
Attn: Tom Glanfield

With a copy to:

Cook and Sadorf, PL
1744 N. Belcher Rd., Suite 150
Clearwater, FL 33765
Attn: Rick Sadorf

If to the Trusts, to:

Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001
Attn: Corporate Trust Administration

With a copy to:

VCG Securities LLC
407 SE 1st Street
Delray Beach, FL 33483
Attn: Donald Uderitz

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 20. Notice to Noteholders. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed Odyssey as Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 21. Miscellaneous.

A. Successors and Assigns. This Agreement may not be assigned by the Servicer unless such assignment is previously consented to in writing by the Indenture Trustee and unless each Rating Agency, after having been given 10 days prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee

CONFIDENTIAL

hereunder in the same manner the Servicer is bound hereunder. Notwithstanding the foregoing, this Agreement may be assigned by the Servicer, without the consent of the Indenture Trustee to a corporation or other organization that is a successor (by merger, consolidation or purchase of assets) to the Servicer; provided that such successor organization executes and delivers to the Indenture Trustee and the other parties hereto an agreement in which such corporation or other organization agrees to be bound hereunder in the same manner as the Servicer is bound hereunder. Subject to the foregoing, this Agreement shall bind any such permitted successors or assigns of the parties hereto.

B. Governing Law. This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to conflicts of laws provisions thereof (other than Section 5-1401 of the New York General Obligations Law).

C. Headings. The section headings hereof have been inserted for convenience of reference only and shall not be construed to affect the meaning, construction or intent of this Agreement.

D. Counterparts. This Agreement may be executed in counterparts, each of which when so executed shall together constitute but one and the same agreement.

E. Severability. Any provision of this Agreement that is prohibited or unenforceable in any jurisdiction shall be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

F. Limitation of Liability of Owner Trustee. Notwithstanding anything contained herein to the contrary, this instrument has been executed by Wilmington Trust Company, not in its individual capacity but solely in its capacity as Owner Trustee of each of the Trusts, and in no event shall Wilmington Trust Company in its individual capacity or any beneficial owner of the Trusts have any liability for the representations, warranties, covenants, agreements or other obligations of the Trusts hereunder, as to all of which recourse shall be had solely to the assets of the Trusts. For all purposes of this Agreement, in the performance of any duties or obligations of the Trusts hereunder, the Owner Trustee shall be subject to, and entitled to the benefits of, the terms and provisions of Articles VIII, IX and X of the each Trust Agreement of the Trusts.

G. Third Party Beneficiary. The parties hereto acknowledge that the Noteholders, Certificateholders and the Indenture Trustee are express third party beneficiaries hereof and are entitled to enforce their respective rights hereunder as if actually parties hereto.

H. No Petition. The parties hereto will not at any time institute against the Trusts any bankruptcy proceeding under any United States federal or state bankruptcy or similar law in connection with any obligations of the Trusts under any Basic Documents as defined in the Indenture.

I. Grant. Each Trust hereby acknowledges that this Agreement is a "Servicing Agreement" for all purposes of its applicable Indenture. Each Trust hereby grants to the Indenture Trustee, as trustee under each Indenture for the benefit of the Noteholders and other secured parties as applicable under the applicable Indenture, all of its right, title and interest in and to (i) the Agreement; and (ii) all present and future claims, demands, causes and choses in action in respect of any or all of the foregoing and all payments on or under and all proceeds of every kind and nature whatsoever in respect of any or all of the foregoing, including all proceeds of the conversion, voluntary or involuntary, into cash or other liquid property, all cash proceeds, accounts, accounts receivable, notes, drafts, acceptances, chattel paper, checks, deposit accounts, insurance proceeds, condemnation awards, rights to payment of any and every kind and other forms of obligations and receivables, instruments and other property which at any time constitute all or part of or are included in the proceeds of the foregoing. The Administrator on behalf of each Trust shall take all steps necessary to ensure the perfection and priority of the Indenture Trustee's security interest in the foregoing collateral. By its signature below, the Indenture Trustee on behalf of the Noteholders and other secured parties as applicable, acknowledges such Grant.

[SIGNATURE PAGE FOLLOWS]

CONFIDENTIAL

NCSLT-00001566

TA531

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers hereunto duly authorized, as of the day and year first above written.

ODYSSEY EDUCATION RESOURCES LLC, as the Servicer

By: /s/ Donald Uderitz
Name: Donald Uderitz
Title: Authorized Signatory

Each of the Trusts listed on Schedule A, attached hereto

By: WILMINGTON TRUST COMPANY, not in its individual capacity but solely as Owner Trustee

By: _____
Name:
Title:

ACKNOWLEDGED:

GSS DATA SERVICES, INC., as Administrator

By: _____
Name:
Title:

U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for each of the Indentures listed on Schedule A attached hereto

By: _____
Name:
Title:

CONFIDENTIAL

## SCHEDULE A

Trusts:

- The National Collegiate Student Loan Trust 2003-1;
- The National Collegiate Student Loan Trust 2004-1;
- The National Collegiate Student Loan Trust 2004-2;
- The National Collegiate Student Loan Trust 2005-1;
- The National Collegiate Student Loan Trust 2005-2;
- The National Collegiate Student Loan Trust 2005-3;
- The National Collegiate Student Loan Trust 2006-1;
- The National Collegiate Student Loan Trust 2006-2;
- The National Collegiate Student Loan Trust 2006-3;
- The National Collegiate Student Loan Trust 2006-4;
- The National Collegiate Student Loan Trust 2007-1; and
- The National Collegiate Student Loan Trust 2007-2;

Indentures:

Each of the following Indentures, as amended or supplemented, entered into by and between U.S. Bank National Association, as Indenture Trustee and:

- The National Collegiate Student Loan Trust 2003-1, dated as of December 1, 2003;
- The National Collegiate Student Loan Trust 2004-1, dated as of June 1, 2004;
- The National Collegiate Student Loan Trust 2004-2, dated as of October 1, 2004;
- The National Collegiate Student Loan Trust 2005-1, dated as of February 1, 2005;
- The National Collegiate Student Loan Trust 2005-2, dated as of June 1, 2005;
- The National Collegiate Student Loan Trust 2005-3, dated as of October 1, 2005;
- The National Collegiate Student Loan Trust 2006-1, dated as of March 1, 2006;
- The National Collegiate Student Loan Trust 2006-2, dated as of June 1, 2006;
- The National Collegiate Student Loan Trust 2006-3, dated as of September 1, 2006;
- The National Collegiate Student Loan Trust 2006-4, dated as of December 1, 2006;
- The National Collegiate Student Loan Trust 2007-1, dated as of March 1, 2007; and
- The National Collegiate Student Loan Trust 2007-2, dated as of June 1, 2007;

CONFIDENTIAL

SCHEDULE B

[Schedule of Default Prevention Services Reimbursement Limits per Trust by Calendar Month]

CONFIDENTIAL

NCSLT-00001569

TA534

SCHEDULE B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | NCSLT 2003-1 | NCSLT 2004-1 | NCSLT 2004-2 | NCSLT 2005-1 | NCSLT 2005-2 | NCSLT 2005-3 | NCSLT 2006-1 | NCSLT 2006-2 | NCSLT 2006-3 | NCSLT 2006-4 | NCSLT 2007-1 | NCSLT 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2014 | - | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 12/2014 | - | 6,000.00 | 12,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 01/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 02/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 03/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 04/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 05/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 06/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 07/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 18,000.00 | 12,000.00 | 6,000.00 | 25,000.00 | 12,000.00 | 18,000.00 | 18,000.00 |
| 08/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 09/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 13,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 19,000.00 |
| 10/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 11/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 12/2015 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 01/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 02/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 03/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 04/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 05/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 06/2016 | - | - | 6,000.00 | 6,000.00 | 6,000.00 | 13,000.00 | 6,000.00 | 6,000.00 | 19,000.00 | 13,000.00 | 13,000.00 | 13,000.00 |
| 07/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 08/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 09/2016 | - | - | 7,000.00 | 7,000.00 | - | 13,000.00 | 7,000.00 | 7,000.00 | 20,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 10/2016 | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 11/2016 | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 12/2016 | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 13,000.00 | 7,000.00 |
| 01/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 13,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 11/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 12/2017 | - | - | - | - | - | 7,000.00 | 7,000.00 | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 01/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 02/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 03/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 04/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 05/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 06/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 07/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 08/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 09/2018 | - | - | - | - | - | - | - | - | 7,000.00 | 7,000.00 | 7,000.00 | 7,000.00 |
| 10/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 11/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 12/2018 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 01/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 02/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 03/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |
| 04/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | 7,000.00 | 7,000.00 |

CONFIDENTIAL

NCSLT-00001570

TA535

## SCHEDULE B

Monthly Reimbursement Limit for payments relating to Delinquent Loans

| Date | NCSLT 2003-1 | NCSLT 2004-1 | NCSLT 2004-2 | NCSLT 2005-1 | NCSLT 2005-2 | NCSLT 2005-3 | NCSLT 2006-1 | NCSLT 2006-2 | NCSLT 2006-3 | NCSLT 2006-4 | NCSLT 2007-1 | NCSLT 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 05/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 06/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 07/2019 | - | - | - | - | - | - | - | - | 7,000.00 | - | - | - |
| 08/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 09/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 10/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 11/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 12/2019 | - | - | - | - | - | - | - | - | - | - | - | - |
| 01/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 02/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 03/2020 | - | - | - | - | - | - | - | - | - | - | - | - |
| 04/2020 | - | - | - | - | - | - | - | - | - | - | - | - |

# SCHEDULE C

[Schedule of Early Awareness Services Reimbursement Limits per Trust by Calendar Month]

CONFIDENTIAL

NCSLT-00001572

TA537

CONFIDENTIAL

SCHEDULE C

Early Awareness Remaining Limits
as of 11/30/11

| NCSLT 2003-1 | NCSLT 2004-1 | NCSLT 2004-2 | NCSLT 2005-1 | NCSLT 2005-2 | NCSLT 2005-3 | NCSLT 2006-1 | NCSLT 2006-2 | NCSLT 2006-3 | NCSLT 2006-4 | NCSLT 2007-1 | NCSLT 2007-2 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1,957.60 | 15,502.80 | 80,921.59 | 59,505.39 | 38,990.73 | 90,493.00 | 85,934.33 | 31,475.41 | 12,979.82 | - | 75,059.31 | 18,095.36 |

NCSLT-00001573

TA538