termination), the Servicer shall identify any Loans Eligible For Sale and Defaulted Loans still being serviced by it hereunder.

   D. Succession. No resignation or removal of the Servicer pursuant to this Section shall be effective until a successor Servicer (which Servicer shall be reasonably acceptable to the Indenture Trustee) shall have agreed in writing to be bound by the terms of this Agreement in the same manner as the Servicer is bound hereunder. The appointment of any successor Servicer shall be effective only after each Rating Agency shall have been given 10 days' prior notice of such proposed appointment and each Rating Agency other than Fitch Ratings (Fitch, Inc.) shall have declared in writing that such appointment will not result in a reduction or withdrawal of the then-current rating of the Notes.

   Section 7.    Action upon Termination. Resignation or Removal.    Promptly upon the effective date of termination of this Agreement pursuant to Section 6(A) of this Agreement or the resignation or removal of the Servicer pursuant to Section 6(B) or Section 6(C) of this Agreement, the Servicer shall be entitled to be paid all fees and reimbursable expenses accruing to it to the date of such termination, resignation or removal. The Servicer shall forthwith upon such termination pursuant to Section 6 of this Agreement deliver to the Trusts as appropriate, all property and documents of or relating to the Financed Student Loans then in the custody of the Servicer pursuant to this Agreement. In the event of the resignation or removal of the Servicer pursuant to Section 6 of this Agreement, the Servicer, for a period of not less than 120 days following notice of such resignation or removal, shall cooperate with the Trusts and take all reasonable steps requested to assist the Trusts in making an orderly transfer of the duties of the Servicer to the successor Servicer, as applicable.

   Section 8.    Representations and Warranties.    The Servicer hereby makes the following representations and warranties to each of the Trusts:

   (i)    Organization and Good Standing. The Servicer is an entity duly organized, validly existing, and in good standing under the laws of its state of incorporation or formation or the laws of the United States, and is in compliance with the laws of each state in which any property is located to the extent necessary to perform its obligations hereunder.

   (ii)    No Violation. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof, will conflict with or result in a breach or violation of, or constitute a default (or an event which, with notice or the lapse of time, or both, would constitute a default) under, the organizational documents (its articles of incorporation or charter or by-laws) of the Servicer, any of the provisions of any judgment, decree, demand, or order of any federal, state, or local court binding on the Servicer, or any of the provisions of any indenture, mortgage, contract, instrument, or other document to which the Servicer is a party or by which it is bound, or result in the creation or imposition of any lien, charge, or encumbrance upon any of its properties pursuant to the terms of any indenture, mortgage, contract, instrument, or other document. Neither the execution and delivery by the Servicer of this Agreement, nor the consummation by it of the transactions contemplated hereby, nor the performance of and compliance by the Servicer with the provisions hereof will, to its knowledge, result in a breach of any law, rule or regulation of any federal, state or local governmental or regulatory authority binding on the Servicer. The Servicer is not otherwise in violation of any law, rule, regulation, judgment, decree, demand, or order (of any federal, state or local governmental or regulatory authority or court), which violation, in the Servicer's good faith and reasonable judgment, is likely to affect materially and adversely either its ability to perform its obligations hereunder, or the financial condition of the Servicer.

   (iii)    Authorization and Enforceability.    The execution and delivery by the Servicer of this Agreement, the consummation of the transactions contemplated hereby, and the performance and compliance by the Servicer with the terms hereof are within the powers of the Servicer

and have been duly authorized by all necessary action on the part of the Servicer. All organizational resolutions and consents necessary for the Servicer to enter into and consummate all transactions contemplated hereby have been obtained, This Agreement has been duly executed and delivered by the Servicer and constitutes the legal, valid and binding obligation of the Servicer enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, reorganization, moratorium, and other similar laws affecting creditors' rights generally, and to general principles of equity, regardless of whether such enforcement is considered in a proceeding in equity or at law. The Servicer has not failed to obtain any consent, approval, authorization, or order of, or failed to cause any registration or qualification with, any court or regulatory authority or other governmental body having jurisdiction over the Servicer, which consent, approval, authorization, order, registration, or qualification is required for, and the absence of which would materially adversely affect, the legal and valid execution, delivery, and performance of this Agreement by the Servicer,

(iv)   <u>Approvals and Permits</u>.   The Servicer possesses such certificates, authorizations, licenses, and permits issued by the appropriate state, federal, and foreign regulatory agencies or bodies necessary to conduct the business now operated by it, and it has not received any notice of proceedings relating to the revocation or modification of any such certificate, authorization, or permit which, singly or in the aggregate, if the subject of an unfavorable decision, ruling, or finding, would materially and adversely affect the ability of the Servicer to perform its obligations hereunder.

(v)   <u>No Litigation.</u>   No litigation is pending or, to the best of the Servicer's knowledge, threatened against it, which, if determined adversely to the Servicer would prohibit the Servicer from entering into this Agreement or, in the good faith and reasonable judgment of the Servicer, is likely to materially and adversely affect either its ability to perform its obligations hereunder or the financial condition of the Servicer.

(vi)   <u>Standard of Care</u>.   In exercising its duties hereunder, Servicer agrees to use at least the same degree of care that it would use if the Defaulted Loans and Loans Eligible For Sale were Servicer's own property, but no less than a reasonable degree of care.

Section 9.   <u>Indemnification</u>.   The Servicer will indemnify each of the Trusts, the Owner Trustee and the Indenture Trustee and their respective officers, directors, employees and agents for, and hold them harmless against, any losses, liability or expense, including reasonable attorneys' fees and expenses, incurred in the absence of willful misconduct, negligence or bad faith on the part of the Trusts, the Owner Trustee, the Indenture Trustee (as applicable) and any Administrator, Servicer, Sub-Servicer or other agent of or servicer provider to the Trust and any of their agents, arising out of the willful misconduct, gross negligence or bad faith of the Servicer (or its agents) in the performance of the Servicer's duties contemplated by this Agreement; provided that neither the Servicer nor any of its directors, officers, employees or agents shall be liable for any action taken or for refraining from the taking of any action pursuant to instructions or directions from the Trust, the Administrator or the Indenture Trustee or in accordance with this Agreement. To the extent any indemnification amounts are not paid by the Servicer, such amounts shall be paid by each Trust (to the extent permitted under the applicable Indenture as indemnities, fees and expenses of the Servicer paid after the payment of principal and interest) in accordance with the respective Pool Balance of Financed Student Loans then owned by each Trust.

Section 10.   <u>Records: Inspection</u>.   The Servicer shall maintain appropriate books of account and records relating to services performed hereunder, which books of account and records shall be accessible for inspection by the Indenture Trustee at any time during normal business hours. The Servicer hereby grants the Indenture Trustee the right, for so long as any of the Notes remain outstanding, to perform ongoing due diligence review of the Servicer's activities hereunder; provided that, such due diligence be conducted in a reasonable manner, convenient to the Servicer and the Indenture Trustee. All expenses associated with the

performance of the due diligence review shall be paid by the Trusts and shall be subject to the Monthly Reimbursement Limit described in Section 5(A).

Section 11. Reporting; Additional Information to be Furnished. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator, on behalf of the Trusts, an electronically transferred data file containing a monthly collection report regarding the Loans Eligible For Sale and Defaulted Loans in a form satisfactory to the Administrator. On the tenth Business Day after the end of each calendar month, the Servicer shall furnish the Administrator on behalf of the Trusts an electronically transferred data tile containing recovery data for Loans Eligible For Sale and Defaulted Loans owned by each respective Trust and other information as required by Regulation AB, each for investor reporting purposes. The Servicer shall furnish to the Administrator on behalf of the Trusts from time to time such additional information regarding the Loans Eligible For Sale and Defaulted Loans as the Administrator on behalf of the Trusts shall reasonably request.

Section 12. Subservicing Agreement. The Servicer will cause each subservicing agreement with a Subservicer to contain provisions consistent with this Agreement, including provisions requiring the applicable Subservicer to maintain adequate records and procedures with respect to a Financed Student Loan and its performance. Each subservicing agreement shall be terminable by the Servicer upon thirty days written notice, and shall provide that any successor to the Servicer shall succeed to the Servicer thereunder.

Section 13. Regulation AB. On or before September 15 of each calendar year beginning in 2014, the Servicer shall deliver to the Administrator any reports, Servicer compliance statements and attestations as may be required pursuant to the terms of any Indenture. In the event the Servicer is required to deliver to the Administrator the documents described in this Section 13, the costs associated with delivering such reports, including the fees and expenses of a registered public accounting firm, shall be borne by the Administrator and reimbursed by the Trusts as a Servicer expense; provided however that the obligation of the Servicer to deliver any such reports shall terminate if such reports are no longer required by Regulation AB.

Section 14. Security Interest. Each of the Trusts hereby Grants to the Indenture Trustee as of the date hereof, all of the Trust's right, title and interest in and to this Agreement and all present and future claims, demands, causes and chooses in action in respect of this Agreement and all payments on or under and all proceeds of every kind and nature whatsoever in respect of this Agreement. The foregoing Grant is made in trust to secure the payment of principal of and/or interest on, as applicable, and any other amounts owing in respect to the Notes, all as provided in the Indentures. The Indenture Trustee, as Indenture Trustee on behalf of the holders of the Notes, acknowledges such Grant, and accepts the Grant in accordance with the provisions of the Indentures.

Section 15. Amendments. This Agreement may be amended from time to time by the parties hereto to add additional trusts, provided that any amendment must be accompanied by the written consent of the Trust and upon satisfying the Rating Agency Condition.

Section 16. Independence of the Servicer. For all purposes of this Agreement, the Servicer shall be an independent contractor and shall not be subject to the supervision of the Trusts with respect to the manner in which it accomplishes the performance of its obligations hereunder. Unless expressly authorized by the Trusts, the Servicer shall have no authority to act for or represent the Trusts, respectively, in any way other than as specified hereunder and shall not otherwise be deemed an agent of the Trusts.

Section 17. No Joint Venture. Nothing contained in this Agreement (i) shall constitute the Servicer and any of the Trusts as members of any partnership, joint venture, association, syndicate, unincorporated business or other separate entity, (ii) shall be construed to impose any liability as such on any of them, or (iii) shall be deemed to confer on any of them any express, implied or apparent authority to Incur any obligation or liability on behalf of the others.

Section 18.   Other Activities of the Servicer. Nothing herein shall prevent the Servicer or its Affiliates from engaging in other businesses or, in its or their sole discretion, from acting in a similar capacity as servicer for any other person or entity even though such person or entity may engage in business activities similar to those of the Trusts.

Section 19.   Notices. Any notice, report or other communication given hereunder shall be in writing and addressed as follows:

If to the Servicer, to:

> Odyssey Education Resources LLC
> 800 Corporate Drive,
> Ft. Lauderdale, FL 33334
> Attn: Tom Glanfield

> With a copy to:

> Cook and Sadorf, PL
> 1744 N. Belcher Rd., Suite 150
> Clearwater, FL 33765
> Attn: Rick Sadorf

If to the Trusts, to:

> Wilmington Trust Company
> Rodney Square North
> 1100 North Market Street
> Wilmington, DE 19890-0001
> Attn: Corporate Trust Administration

> With a copy to:

> VCG Securities LLC
> 407 SE 1st Street
> Delray Beach, FL 33483
> Attn: Donald Uderitz

Or to such other address as any party shall have provided to the other parties in writing. Any notice required to be in writing hereunder shall be deemed given if such notice is mailed by certified mail, postage prepaid, sent by overnight courier for next-day delivery or hand-delivered to the address of such party as provided above.

Section 20.   Notice to Noteholders. Promptly upon execution of this Agreement, but in any event no later than 30 days following execution hereof, the Servicer shall deliver to the Indenture Trustee of each of the Trusts an executed copy of this Agreement along with a form of notice to each Noteholder to be distributed to each Noteholder by the Indenture Trustee in accordance with Article XI of each Indenture to the effect that the respective Trust has entered into this Agreement and has appointed Odyssey as Servicer and each Noteholder can request a copy of the Agreement by contacting the Indenture Trustee.

Section 21.   Miscellaneous.

A. Successors and Assigns. This Agreement may not be assigned by the Servicer unless such assignment is previously consented to in writing by the Indenture Trustee and unless each Rating Agency, after having been given 10 days prior notice of such assignment, shall have declared in writing that such assignment will not result in a reduction or withdrawal of the then-current rating of the Notes or Certificates. An assignment with such consent and satisfaction, if accepted by the assignee, shall bind the assignee