IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **U.S. BANK NATIONAL ASSOCIATION,** as Indenture Trustee,<br><br>**Petitioner**,<br><br>v.<br><br>**NATIONAL COLLEGIATE STUDENT LOAN TRUST 2003-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2004-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-1, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-2, NATIONAL COLLEGIATE STUDENT LOAN TRUST 2005-3**<br><br>**Defendants.** | 1:16CV341<br><br>MEMORANDUM AND ORDER |

This matter is before the court on defendants' motion for summary judgment, D.I. 55; petitioner's motion for summary judgment, D.I. 57; the report and recommendation of the magistrate regarding D.I.'s 57 and 55, D.I. 79; and Transworld Systems Inc.'s (hereinafter "TSI") statement of interest, D.I. 89; petitioner's objections, D.I. 90; objections filed by OWS ABS Fund II, L.P., OWS COF I Master, L.P., OWS Credit Opportunity I, LLC, One William Street Capital Master Fund, Ltd., Waterfall Asset Management, LLC., D.I. 91; Declaration of Andrew D. Cordo in support of interested noteholder's objection, D.I. 92; Letter by petitioner, D.I. 93; response to objections, D.I.'s 97 and 98 and 99 and 107; and petitioner's reply brief, 106. This case involves a "Trust Instructional

1

Proceeding" which is a Minnesota statutory action "initiated for the purpose of seeking instruction concerning trust administration relating to the appointment and payment of a loan servicer for transactions relating to loans held by the trusts." D.I. 79, at 1. The magistrate judge recommends that the court grant the Trusts' motion for summary judgment and deny the Trustee's motion for summary judgment. This court reviews this case de novo.

The case involves six Delaware statutory trusts, known as National Collegiate Student Loan Trusts 2003-1. On May 2, 2017, interested parties, and holders of notes in the trusts that are subject to this action, Waterfall Asset Management, LLC, OWS ABS Fund II, L.P., OWS COF I Master, L.P., OWS Credit Opportunity I, LLC, and One William Street Capital Master Fund, Ltd. informed the court in advance of the May 11, 2017 oral argument that they support the Indenture Trustee's position and motion for summary judgment. (D.I. 69). Case 2003-1, 2004-1, 2004-2, 2005-1, 2005-2, and 2005-3 (the "Issuers" or the "Trusts"), were created between 2003 and 2005 to acquire pools of student loans, facilitate the issuance and sale of notes (the "Notes"). They were backed by private student loans to investors and who serviced the loans. The current trustee is Wilmington Trust Company. The trusts are "owner directed."

Eventually, U.S. Bank became the back-up Special Servicer, and Odyssey Education Resources became the servicer of defaulted loans and loans eligible for sale. Thereafter, as stated by the magistrate judge:

> On February 18, 2016, the Indenture Trustee filed a "Petition for Instructions in the Administration of Trusts Pursuant to Minnesota Statute § 501C.0201" in Minnesota's Second Judicial District Court, in the County of Ramsey. (D.I. 1-1) The Indenture Trustee sought the state court's instruction regarding VCG's "attempt to appoint Odyssey as a servicer or special servicer for

2

each Trust under the Odyssey Agreement." (*Id.* at ¶ 2) Specifically, the Indenture Trustee sought the court's instruction on three issues: (1) whether, under the governing agreements, Odyssey was properly appointed as a servicer or special servicer and whether the Odyssey Agreement was valid and binding, such that the Indenture Trustee should release funds necessary to compensate Odyssey for any future services performed; (2) to the extent Odyssey was properly appointed as servicer or special servicer and the Odyssey Agreement is valid and binding, how to resolve certain conflicts between the Odyssey Agreement and the governing agreements; and (3) to the extent Odyssey was properly appointed, whether to release the funds necessary to pay the Odyssey Invoices. (*Id.* at ¶¶ 5-7)

D.I. 79, at 4-5.

**STANDARD OF REVIEW**

The standard of review is governed by 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b). The district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made" and "may also receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1)(C). Similarly, Rule 72(b)(3) requires de novo review of any recommendation that is dispositive of a claim or defense of a party.

The Supreme Court has construed the statutory grant of authority conferred on magistrate judges under 28 U.S.C. § 636 to mean that nondispositive pretrial matters are governed by § 636(b)(1)(A) and dispositive matters are covered by § 636(b)(1)(B). *Gomez v. United States,* 490 U.S. 858, 873-74 (1989); *see also* Fed. R. Civ. P. 72(a). Under subparagraph (B), a district court may refer a dispositive motion to a magistrate judge "to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition." 28 U.S.C. § 636(b)(1)(B); *see EEOC v. City of Long Branch,* 866 F.3d 93, 99–100 (3d Cir. 2017). The product of a magistrate judge, following a referral of a dispositive matter, is often called a "report and

3

recommendation." *Id.* "Parties 'may serve and file specific written objections to the proposed findings and recommendations' within 14 days of being served with a copy of the magistrate judge's report and recommendation." *Id.* (quoting Fed. R. Civ. P. 72(b)(2)). "If a party objects timely to a magistrate judge's report and recommendation, the district court must 'make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.'" *EEOC,* 866 F.3d at 99 (quoting 28 U.S.C. § 636(b)(1)).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that could affect the outcome of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey,* 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986)). Pursuant to Rule 56(c)(1), a party asserting that a fact is genuinely disputed must support its contention either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B).

Courts considering cross-motions for summary judgment will treat each motion independently. *T-Mobile, Ne., LLC v. City of Wilmington,* 2018 WL 1472526, at *2 (D. Del. Mar. 26, 2018) (citing *Rains v. Cascades Industries, Inc.,* 402 F.2d 241,245 (3d Cir. 1968)). The moving party bears the initial burden of proving the absence of a genuinely disputed

material fact.  See *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986).  The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.,* 891 F.2d 458, 460-61 (3d Cir. 1989).  When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  See *Scott v. Harris,* 550 U.S. 372, 380 (2007); *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007).  However, the existence of some evidence in support of the nonmoving party may not be sufficient to deny a motion for summary judgment.  Rather, there must be enough evidence to enable a jury reasonably to find for the nonmoving party on the issue.  See *Anderson*, 477 U.S. at 249.  If the nonmoving party fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, the moving party is entitled to judgment as a matter of law.  See *Celotex Corp.,* 477 U.S. at 322.

**DISCUSSION**

Indenture Trustee first inquired whether Odyssey was validly appointed to act as a Servicer.  The magistrate judge found that "because the Indentures and other Basic Documents do not expressly restrict the rights of the Trusts to hire other servicers, the Trusts retained the right to hire Odyssey."  D.I. 79 at 9-10.  She further determined that "Odyssey's right pursuant to the Odyssey Agreement to purchase Loans does not 'waive, amend, modify, supplement, or terminate' the Special Servicing Agreement or other Basic Documents, triggering Indenture Trustee and Noteholder approval."  *Id.* at 17-18.  She likewise decided that Noteholder consent was not required for Odyssey's appointment as a Servicer.  *Id.* at 19.  She determined that the Odyssey Agreement does not change the provisions of the Special Servicing Agreement.  *Id.* at 20.  She also found the rating agency complied with the condition

in the Special Servicing Agreement § 6E. *Id.* at 21. Last, the magistrate judge determined that the Odyssey Invoices should be paid. She based that finding on her decision that "the Trusts provided the rating agencies with a copy of the Odyssey Agreement, which sets forth the fees Odyssey would receive, such as the 10% commission on sales of loans. (*Id.* at TA619-40)." *Id.* at 24. This was sufficient notice, found the magistrate judge.

Transworld Systems filed a statement of interest. D.I. 89. In it, TSI indicates it is the sub-servicer of defaulted loans for which U.S. Bank is the Indenture Trustee and successor Special Servicer. TSI disagrees with the Magistrate Judge's recommendation granting the Trusts' Motion for Summary Judgment. TSI views the appointment of Odyssey as a "back door" one which is invalid.

Likewise, U.S. Bank objects to part of the report and recommendation of the magistrate's order. D.I. 90. First, U.S. Banks argues that there is no authority for the appointment of Odyssey as a new, additional loan servicer. Next, even if such authority exists, the Odyssey Agreement is an impermissible amendment or modification of the Basic Documents. Third, Odyssey's requested fees are not payable as Odyssey was not correctly appointed.

The Noteholders also filed objections to the magistrate judge's recommendation and order. D.I. 91. The Noteholders contend that the R&R must be rejected, because the agreement is a sham, changing the language and breaching the Basic Documents. The Noteholders contend that "[t]he Trusts were created to acquire, service, and securitize thousands of student loans in five separate billion-dollar transactions." *Id.* at 4. The noteholders argue that the appointment of Odyssey violates crucial provisions of the Basic Agreement, requiring arm's length agreements between trusts and their service providers and permits self-dealing. According to the Noteholders, "Odyssey is staffed by VCG's employees,

6

and VCG stands to receive the payments and reimbursements made under the Odyssey agreement, including the reimbursement of VCG's own employees' salaries and benefits." *Id.* at 12-13.

The Trusts responded arguing first that the Noteholders failed to comply with the standing order that states: "[P]arties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge." *Masimo Corp. v. Philips Elec. N.A. Corp.,* 62 F. Supp. 3d 368, 377 (D. Del. 2014). "[I]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Bukovinsky v. Pennsylvania,* 455 Fed. App'x. 163, 165-66 (3d Cir. 2011) (internal quotation marks omitted). Paragraph 5 of the Standing Order requires that no new arguments are being presented. The language states:

> Any party filing objections…to a Magistrate Judge's … recommended disposition must include, along with the objections, a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and describing the good cause for failing to previously raise the new legal/factual arguments before the Magistrate Judge.

Standing Order ¶ 5, http://www.ded.uscourts.gov. The Trusts argue that the certification was late and the arguments are new to those argued before the magistrate judge. For example, the Trusts argue that "the Odyssey Agreement violates the Indentures' and the Trust Agreements' self-dealing prohibitions," Noteholder Obj. at 7, appears nowhere in the Interested Noteholders' submission to Magistrate Judge Fallon." D.I. 97 at 2. "Similarly, the Interested Noteholders' argument concerning the impact of the Granting Clause in the Indentures is also new." *Id.* at 3. Further, the Trusts argue these assertions

7

are meritless in any event, and this court should adopt the report and recommendation of the magistrate judge.

In addition, the Trusts argue that Noteholders arguments regarding the granting clause are without merit. The Granting Clause does not support the argument made by Odyssey and such an interpretation runs contrary to this clause, contends the Trusts.

The Trusts also object to the arguments of TSI in its Statement of Interest. First, the Trusts note that TSI did not submit any statement of interest prior to when the report and recommendation was issued. Second, the certification was not timely. Third, TSI failed to specify the portions for the objection, supported by legal authority. Generalized objections are not sufficient. *See, e.g., Masimo Corp. v. Philips Elec. N. Am. Corp.,* 62 F. Supp. 3d 368, 375-76 (D. Del. 2014) ("generalized objections" are insufficient). Fourth, the Trusts argue that TSI lacks standing on Odyssey's appointment, because TSI is one of the primary wrongdoers who caused the servicing fiasco, and yet collected tens of millions of dollars in fees. TSI, argues the Trusts, is not a third-party beneficiary or a party to the Indentures. It has no rights, and thus no standing.

The Trust responds to the Indentured Trustees contending: the court should not consider U.S. Bank's new argument that the granting clause in the indentures precludes the trusts from appointing new servicers, as this argument was not presented to the magistrate judge; second the granting clause in the indentures does not preclude the trusts from appointing new servicers; and third, the Odyssey Agreement does not amend, modify, waive, supplement, terminate or surrender any term of the basic documents; and fourth, the Odyssey invoices should be paid.

The court has reviewed the record de novo. First, the court agrees that new arguments, absent good cause, that have not been presented to the magistrate judge will be viewed as untimely and waived. "[P]arties objecting to a Magistrate Judge's report or order are required to adhere to the arguments, evidence, and issues they presented first to the Magistrate Judge." *Masimo Corp. v. Philips Elec. N.A. Corp.,* 62 F. Supp. 3d 368, 377 (D. Del. 2014). "[I]ssues raised for the first time in objections to the magistrate judge's recommendations are deemed waived." *Bukovinsky v. Pennsylvania,* 455 Fed. App'x. 163, 165-66 (3d Cir. 2011); *see also* the Standing Order.

Next, the court agrees with the magistrate judge that the granting clause does not preclude the trusts from appointing new servicers. The Trust Agreements requires that the Trusts "provide for … the servicing of the Student Loans" (D.I. 61-13 at TA353, § 2.03(a)(ii)), and "to enter into such agreements that are necessary, suitable or convenient to accomplish the foregoing or are incidental thereto or connected therewith." *Id.* § 2.03(a)(iii). "Indentures are to be read strictly and to the extent they do not expressly restrict the rights of the issuer, the issuer is left with the freedom to act …." *San Antonio Fire & Police Pension Fund v. Amylin Pharm., Inc.,* 983 A.2d 304, 314 (Del. Ch.), *aff'd,* 981 A.2d 1173 (Del. 2009) (applying New York law). There is no language presented to the court that takes away this right to appoint servicers. The court reads the Trust Agreements and the Indentures together, so that one provision does not nullify the other. The granting rights clause does not use the language "sole" or "exclusive holder" when talking about the Indenture Trustee. Yet, when intended, the Indenture uses such words. *See, e.g.,* Indenture § 6.10(b)(i) (D.I. 61-8 at TA93) (describing rights that "shall be

exercised …solely at the direction of the Indenture Trustee"). The court agrees with the magistrate judge that the Trusts retained the right to hire Odyssey.

Further, the court agrees that the Odyssey Agreement does not appear to amend or modify or surrender any term of the basic documents. The magistrate judge analyzed each of these arguments in depth. She specifically found that "the Special Servicing Agreement does not prohibit the sale of non-performing Loans, and instead provides that U.S. Bank will perform its duties in accordance with the terms of the Indentures, which specifically allow the sale of Loans." D.I. 79 at 11. The magistrate judge also found, and this court agrees, that there is no provision in the Indentures or in the Special Servicing Agreement stating that each servicing agreement must mirror the others. *Id.* at 18. After a thorough review of the facts and law, the court finds the magistrate judge is correct in all respects.

U.S. Bank also contends that Boston Portfolio Advisors, Inc.'s resignation as a member of Odyssey should be addressed in terms of Odyssey's ability to continue as a servicer. The Trusts contend that the issue raised by U.S. Bank is irrelevant, as the trust can either appoint a receiver or not. It matters not that U.S. Bank thinks the servicer might be incapable, in terms of this lawsuit. The court finds that this argument is not relevant. The Trusts are correct regarding the basic issue before the court which is whether the Trusts can appoint or not. The court finds, as discussed herein, that the Trusts can appoint under the agreements in question.

Based on the considered reasoning of the magistrate judge and as discussed by the court herein, finding that Odyssey was properly appointed as a servicer, the court also agrees that the Odyssey invoices should be paid. It appears that Odyssey complied with

the relevant agreement, sending invoices to the Administrator with its request for fees. Accordingly, Odyssey is entitled to payment.

THEREFORE, IT IS ORDERED THAT:

1. The report and recommendation of the magistrate judge, D.I. 79, is adopted in its entirety.
2. The objections of U.S. Bank National Association, D.I. 90, are overruled.
3. The statement/objections of U.S. Bank National Association, D.I. 89, are overruled.
4. The objections of OWS ABS Fund II, L.P., OWS COF I Master, L.P., OWS Credit Opportunity I, LLC, One William Street Capital Master Fund, Ltd., Waterfall Asset Management, LLC, D.I. 91, are overruled.
5. The defendants' motion for summary judgment, D.I. 55, is granted.
6. The petitioner's motion for summary judgment, D.I. 57, is denied.
7. The requests for oral argument, D.I.'s. 100 and 101, are denied.

Dated this 17th day of September, 2018.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge